UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Hon. Anne E. Thompson |
| v. | : | |
| | : | Criminal No. 19-029 (AET) |
| GEORGE GILMORE | : | |
| | : | |

**MEMORANDUM OF LAW OF THE UNITED STATES IN
SUPPORT OF ITS MOTION TO INQUIRE INTO DEFENDANT'S COUNSEL'S
POTENTIAL CONFLICTS OF INTEREST**

RACHAEL A. HONIG
ATTORNEY FOR THE UNITED STATES
Acting Under Authority Conferred By
28 U.S.C. § 515
United States Attorney's Office
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Memorandum:

MATTHEW J. SKAHILL
Deputy U.S. Attorney

JIHEE G. SUH
Assistant U.S. Attorney

THOMAS F. KOELBL
Trial Attorney
United States Department of Justice-Tax Division

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES.................................................................................................. ii

BACKGROUND .............................................................................................................. 1

ARGUMENT .................................................................................................................... 5

POTENTIAL CONFLICTS OF INTEREST EXIST DUE TO DEFENSE COUNSEL'S
REPRESENTATION OF GILMORE AND OTHER EMPLOYEES OF GILMORE'S LAW
FIRM AND OTHER ENTITIES............................................................................................ 5

THE COURT MUST CONDUCT AN INQUIRY REGARDING THE
POTENTIAL CONFLICTS OF INTEREST ........................................................................ 9

SECURING WAIVERS MAY SOLVE CONFLICTS ISSUES IN SOME INSTANCES ...... 11

DISQUALIFICATION MAY BE ORDERED EVEN WITH A VALID WAIVER............ 13

CONCLUSION.............................................................................................................. 16

## TABLE OF AUTHORITIES

CASES                                                                              PAGE(S)

Cuyler v. Sullivan,
    446 U.S. 335 (1980) ................................................................................................ 9, 13

Flanagan v. U.S.,
    465 U.S. 259 (1984) ............................................................................................. 11, 15

Gov't of the V.I. v. Zepp,
    748 F.2d 125 (3d Cir. 1984) ...................................................................................... 7

Johnson v. Zerbst,
    304 U.S. 458 (1938) .................................................................................................. 11

Powell v. Alabama,
    287 U.S. 45 (1932) ..................................................................................................... 6

Spearman v. Varano,
    No. 09-2429, 2011 WL 2747319 (M.D. Pa. July 12, 2011) ...................................... 5

Stoia v. United States,
    22 F.3d 766 (7th Cir. 1994) .................................................................................... 14

Strickland v. Washington,
    466 U.S. 668 (1984) ............................................................................................ 5, 13

Sullivan v. Cuyler,
    723 F.2d 1077 (3d Cir. 1983) ................................................................................... 6

United States v. Barbosa,
    No. 85-305, 1988 WL 22580 (W.D.N.Y. Mar. 10, 1988) ................................... 6, 10

United States v. Cronic,
    466 U.S. 648 n.28 (1984) .......................................................................................... 5

United States v. Dolan,
    570 F.2d 1177 (3d Cir. 1978) ................................................................................. 12

United States v. Flanagan,
    679 F.2d 1072 (3d Cir. 1982) ............................................................................ 11, 15

United States v. Gambino,
    864 F.2d 1064 (3d Cir. 1988) ................................................................................ 5, 6

United States v. Garcia,
    517 F.2d 272 (5th Cir. 1975) ................................................................................. 12

*United States v. Infante,*
    404 F.3d 376 (5th Cir. 2005) ................................................................. 10

*United States v. Johnson,*
    131 F. Supp. 2d 1088 (N.D. Iowa 2001)................................................. 9

*United States v. Jones,*
    381 F.3d 114 (2d Cir. 2004)................................................................... 6

*United States v. Jones,*
    No. 11-261, 2011 WL 4923415 (E.D. Pa. Oct. 17, 2011) ................... 14

*United States v. Lacerda,*
    929 F. Supp. 2d 349 (D.N.J. 2013) .............................................. 6, 7, 15

*United States v. Lawriw,*
    568 F.2d 98 (8th Cir. 1977) ................................................................. 12

*United States v. Martel,*
    958 F. Supp. 211 (D.N.J. 1997) .......................................................... 10

*United States v. Morales-Laureno,*
    947 F. Supp. 2d 184 (D.P.R. 2013)..................................................... 10

*United States v. Moscony,*
    927 F.2d 742 (3d Cir. 1991).......................................................*passim*

*United States v. Roland,*
    No. 12-298, 2016 WL 820951 (D.N.J. Mar. 1, 2016) ................ 10, 12, 13

*United States v. Royce,*
    No. 17-158, 2017 WL 4582794 (M.D. Pa. Oct. 13, 2017) ..................... 8

*United States v. Schwarz,*
    283 F.3d 76 (2d Cir. 2002)................................................................... 13

*United States v. Stewart,*
    185 F.3d 112 (3d Cir. 1999)................................................. 6, 10, 13, 15

*United States v. Voigt,*
    89 F.3d 1050 (3d Cir. 1996)............................................................ 9, 15

*Wheat v. United States,*
    486 U.S. 153 (1988)...................................................................*passim*

## **Statutes**

28 U.S.C. § 515 ................................................................................................................. 16

## **Rules**

D.N.J. Civ. R. 103.1(a) .................................................................................................... 7

D.N.J. Crim. R. 1.1 ........................................................................................................... 7

Fed. R. Crim. P. 44 ......................................................................................................... 10

Fed. R. Crim. P. 44(c) ......................................................................................... 1, 9, 10, 13

Fed. R. Crim. P. 44(c)(1) .................................................................................................. 9

Fed. R. Crim. P. 44(c)(2) .................................................................................................. 9

## **State Rules**

N.J. Rules Prof'l Conduct R. 1.6 ...................................................................................... 8

N.J. Rules Prof'l Conduct R. 1.6(a) .................................................................................. 8

N.J. Rules Prof'l Conduct R. 1.7 ...................................................................................... 7

N.J. Rules Prof'l Conduct R. 1.7(a) .................................................................................. 7

N.J. Rules Prof'l Conduct R. 1.7(b) ................................................................................ 11

N.J. Rules Prof'l Conduct R. 1.9 ...................................................................................... 8

N.J. Rules Prof'l Conduct R. 1.9(a) ............................................................................. 7, 11

N.J. Rules Prof'l Conduct R. 1.10 .................................................................................... 8

The United States respectfully submits this Memorandum of Law in support of its motion to inquire into defendant George Gilmore's counsel's potential conflicts of interest.  Such inquiry is necessary because Counsel (and his law firm) have potential conflicts of interest that require the Court to inquire pursuant to United States Supreme Court Sixth Amendment precedent, Federal Rule of Criminal Procedure 44(c), and the precedent interpreting and applying that Rule. In doing so, the Court should determine whether securing waivers both in writing and on the record from Gilmore and the Law Firm witnesses are appropriate safeguards under the circumstances to permit continued representation.  If not, the Court should determine whether disqualification of counsel is necessary.

## BACKGROUND

Defendant George Gilmore is a name partner in the law firm of Gilmore and Monahan P.A. located in Toms River, New Jersey.  On January 10, 2019, a federal grand jury charged Gilmore in an Indictment with (1) evading the payment of approximately $1,500,000 in personal federal income taxes, penalties and interest by (a) using his law firm's bank and credit card accounts to pay for personal expenses and to obtain cash; (b) falsely classifying income received from his law firm as "shareholder loans;" (c) and otherwise making misrepresentations to, and filing false tax returns with, the Internal Revenue Service (the "IRS") (Count 1); (2) making and subscribing to false federal personal income tax returns for calendar years 2013 and 2014 primarily by concealing income that he received from his law firm (Counts 2 and 3); (3) willful failure to pay federal payroll taxes of his law firm for certain quarters in calendar year 2016 (Counts 4 and 5); and (4) making false statements and representations to a bank, including concealing his substantial tax debt to the IRS, in

connection with a loan application (Count 6).  Kevin Marino, Esq. of the law firm, Marino,

Tortorella and Boyle, P.C., appeared at the January 18, 2019 arraignment as counsel of record

for Gilmore.

      In late July 2016, during the grand jury investigation, Gilmore was served with grand

jury subpoenas issued to Gilmore & Monahan P.A.; Gilmore, Rehill, Monahan & Stone d/b/a

G.R.M.S Associates (a real estate partnership); Gilmore & Monahan PTR (a real estate

partnership); and J&G Associates (represented as a consulting business) for records for his law

firm and these other entities that he controlled.  On or about July 29, 2016, Mr. Marino

contacted the U.S. Attorney's Office ("USAO") and advised that he represented Gilmore.  Mr.

Marino requested and was granted several extensions of time to produce records sought by the

grand jury subpoenas.  On or about January 5, 2017, Mr. Marino requested copies of the grand

jury subpoenas from the USAO and asserted that he represented not only Gilmore, but also

Gilmore's law firm (the "Law Firm"), all of its employees, and all of the entities that were the

subjects of the July 2016 subpoenas.

      On January 20, 2017, the USAO provided Mr. Marino with copies of the grand jury

subpoenas and advised him in writing that his representation of all of these individuals and

entities presented multiple conflicts of interest (*see* January 20, 2017 Letter attached as Exhibit

1).  At times following Mr. Marino's assertion regarding his multiple representation, Mr.

Marino and the Assistant U.S. Attorneys ("AUSAs") working on the investigation discussed

the conflicts, and whether they were waive-able, but did not reach a resolution.   This included

telephone conversations in October 2017, prior to serving the Law Firm employees with grand

jury subpoenas for testimony.  During these conversations, Mr. Marino continued to assert that

2

he could represent all of the Law Firm employees, stating that all employees had waived such conflicts.   The USAO reiterated its position that such multiple representation implicated conflicts of interests.

The grand jury subpoenas for testimony of the Law Firm employees subsequently were served on Mr. Marino.  The letter from the USAO accompanying those grand jury subpoenas dated October 18, 2017 (attached as Exhibit 2) stated in relevant part: "[w]e have previously discussed that your representation of Mr. Gilmore on the one hand and your representation of the individual employees of [the Law Firm] named in these subpoenas poses a conflict.  As we communicated to you, by serving these grand jury subpoenas on you, the Government does not concede that a conflict is absent or that such conflict can be waived.  This Office is aware that your position remains that a conflict does not exist or that any conflict that may exist could be waived."

From November 2017 to March 2018, certain employees of the Law Firm testified in the grand jury, and were represented by Mr. Marino or another member of Mr. Marino's firm.[1] Prior to their testimony, the AUSAs advised these Law Firm witnesses that there was a conflict of interest in Mr. Marino's and his firm's representation of Gilmore and the Law Firm employees because Gilmore was a subject of the investigation, and they were witnesses. These Law Firm witnesses all confirmed that they wished to proceed with Mr. Marino's firm representing them in relation to their grand jury appearances.

_____

[1] The identities of the witnesses who appeared before the grand jury, all of whom are known to Mr. Marino, in addition to two grand jury transcripts are attached as Exhibits 3, 4, and 5.

3

Gilmore's case now is in court pursuant to the above-referenced indictment.  The United States likely will call multiple witnesses from the Law Firm to testify and otherwise present evidence at trial in its direct case to prove the tax counts (Counts 1 to 5) in the Indictment.  For instance, the United States likely will call the other name partner of the Law Firm, who is specifically referenced in paragraph 1 of Count 1 of the Indictment.  He likely will be called to testify about, among other things, the partners' involvement in the Law Firm's financial matters, the partners' receipt of personal income, the assessment and payment of taxes relating to the Law Firm and its operations, and his knowledge of shareholder loans. Additionally, it is possible that another partner at the Law Firm will be called to testify about substantially the same subjects.  At least one of the Law Firm's associates may be called to testify about the nonpayment of payroll taxes and financial matters at the Law Firm.  Mr. Marino or others at his firm represented these individuals in the grand jury.  Additionally, support personnel at the Law Firm who have not testified in the grand jury, including the bookkeeper, also may be called to testify about the bookkeeping at the Law Firm, the receipt, disbursement and classification of Law Firm funds, and the administration of financial matters at the Law Firm.

It further is probable that Gilmore will present a defense based at least in part on a claim that his hoarding disorder negates the contention that he acted "willfully" in carrying out the conduct alleged in Counts 1 to 5 of the Indictment.  Mr. Marino referred to this defense in the colloquy among the Court and the parties at Gilmore's January 18, 2019 arraignment.  *See* Transcript of January 18, 2019 Initial Appearance and Arraignment, at 10, 31 ("Transcript")

4

(attached as Exhibit 6).  If this evidence is presented to the jury, then the United States may call Law Firm witnesses to testify at trial to adduce facts relevant to countering it.

## ARGUMENT

### POTENTIAL CONFLICTS OF INTEREST EXIST DUE TO DEFENSE COUNSEL'S REPRESENTATION OF GILMORE AND OTHER EMPLOYEES OF GILMORE'S LAW FIRM AND OTHER ENTITIES

The Sixth Amendment to the United States Constitution guarantees that a defendant in a criminal case "shall enjoy the right . . . to have assistance of counsel for his defence."  U.S. Const. amend. VI.  "[T]he purpose of providing assistance of counsel 'is simply to ensure that criminal defendants receive a fair trial.'"  *Wheat v. United States*, 486 U.S. 153, 159 (1988) (*quoting Strickland v. Washington*, 466 U.S. 668, 689 (1984)).  Moreover,  "[t]he Sixth Amendment guarantee of effective assistance of counsel includes two correlative rights, the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest."  *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988).  Counsel's function, therefore, "is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest."  *Spearman v. Varano*, Civ. No. 09-2429, 2011 WL 2747319, at *5 (M.D. Pa. July 12, 2011).  As the Third Circuit has noted, "[t]he attorney's undivided loyalty is required because the type of effective 'assistance of counsel' the Sixth Amendment guarantees a criminal defendant is that which puts the government to its proofs in an adversarial manner, and for this counsel free of conflicts of interest is necessary."  *United States v. Moscony*, 927 F.2d 742, 748 (3d Cir. 1991) (*citing United States v. Cronic*, 466 U.S. 648, 656, 656 n.15, 661 n.28 (1984)).  Put simply, a criminal

defendant has a right to conflict-free representation. *United States v. Lacerda*, 929 F. Supp. 2d 349, 356 (D.N.J. 2013).

The Sixth Amendment also guarantees a defendant a fair opportunity to secure counsel of his own choice. *Powell v. Alabama*, 287 U.S. 45, 53 (1932). The United States Supreme Court therefore has recognized a presumption in favor of a defendant's counsel of choice. *Wheat*, 486 U.S. at 159. This presumption, however, "may be overcome not only by a demonstration of actual conflict [of interest] but by a showing of a serious potential for conflict." *Id.* at 164. A potential conflict of interest exists "if the interests of the defendant *could* place the attorney under inconsistent duties in the future." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (emphasis in original). An actual conflict of interest occurs if "'the defendants' interests diverge with respect to a material factual or legal issue or to a course of action'" such that the attorney finds himself in the untenable position of serving two clients with incompatible needs. *Gambino*, 864 F.2d at 1070 (*quoting Sullivan v. Cuyler*, 723 F.2d 1077, 1086 (3d Cir. 1983)). Thus, an actual conflict of interest arises "'whenever an attorney's loyalties are divided.'" *United States v. Stewart*, 185 F.3d 112, 121 (3d Cir. 1999) (quoting *Moscony*, 927 F.2d at 750).

Such conflicts may arise out of multiple representations. This occurs when a lawyer represents more than one defendant "or between a defendant on the one hand and a prosecution witness or witnesses on the other. A single attorney may be involved, or attorneys who are partners or, otherwise share office space. It can be ongoing and prospective or over and done." *United States v. Barbosa*, Crim. No. 85-305, 1988 WL 22580, at *4 (W.D.N.Y. Mar. 10, 1988). While the typical multiple-representation scenario entails an attorney's attempts to represent multiple defendants in the same prosecution, the Third Circuit has recognized that conflicts also

6

arise where a "defendant seeks to waive his right to conflict-free representation in circumstances in which counsel of his choice may have divided loyalties due to concurrent or prior representation of another client who is . . . a government witness." *Moscony*, 927 F.2d at 749.

The Rules of Professional Conduct ("RPCs") governing attorneys assist in identifying conflicts of interest that may pose Sixth Amendment problems. *See Gov't of the V.I. v. Zepp*, 748 F.2d 125, 135 (3d Cir. 1984); *see also Lacerda*, 929 F. Supp. 2d at 355 (courts resort to RPCs to guide them in assessing conflicts of interest). Here, the New Jersey Rules of Professional Conduct (the "NJRPC") governing the practice of attorneys are instructive.[2] For instance, NJRPC 1.7 (a) provides:

> except as provided in paragraph (b) [setting forth the elements of client waiver of a conflict of interest], a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

Additionally, NJRPC 1.9(a) provides similar protection where the representations are successive: "A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent in writing."

When applied to the facts here, these NJRPCs reveal that there are at least potential conflicts of interest arising from Mr. Marino's and his firm's multiple representation. First, the Law Firm witnesses likely will testify to matters that will be relevant to proving that Gilmore

---

[2]   *See* U.S. District Court for the District of New Jersey Local Civil Rule 103.1(a) and Local Criminal Rule 1.1 (the RPCs apply to members of the bar admitted to practice in the federal district courts in New Jersey).

engaged in the conduct charged in at least the first five counts of the Indictment. They will likely face cross-examination by Mr. Marino or other members of his Firm.  As Mr. Marino advised the Court at the arraignment: "And certainly if I were to represent Mr. Gilmore at trial, which I well intend to do, I would be cross examining these people based upon what statements they have" (Transcript at 35).   These witnesses therefore likely will be directly adverse to Gilmore. *See United States v. Royce*, Crim. No. 17-158, 2017 WL 4582794, at *4 (M.D. Pa. Oct. 13, 2017) (under similar Pennsylvania version of RPC 1.7, direct adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client); RPC 1.7 cmt. 6.

Second, there is a risk that the representation of one or more of these clients, to include Gilmore, will be materially limited by Mr. Marino's and his firm's responsibilities to the remaining Law Firm witnesses.[3]  For instance, Mr. Marino and his firm could be placed in a position where it will be necessary to cross-examine one of the Law Firm witnesses with confidential information learned from that witness and protected by NJRPC 1.6 (protecting a client's confidential communications with the client's attorney).[4]  If they did so, then they would violate NJRPC 1.6.  If they did not, and passed on the opportunity to impeach the witness, they would violate their Sixth Amendment obligation to provide effective assistance to Gilmore, not

---

[3]  Such conflicts would be imputed to other attorneys at Mr. Marino's firm. *See* NJRPC 1.10 ("[w]hen lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by RPC 1.7 or RPC 1.9. . . .").

[4]  NJRPC 1.6(a) provides that "[a] lawyer shall not reveal information relating to the representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except [for other matters not at issue in this particular case]."

to mention their NJRPC duty of zealous advocacy. *See United States v. Johnson*, 131 F. Supp. 2d 1088, 1095 (N.D. Iowa 2001) (with respect to the concern over confidential information, such information from one client may be used to cross examine another client, thus impacting advocacy in one of two ways: (1) the attorney may be tempted to use that confidential information to impeach the former client, or (2) the attorney may fail to conduct rigorous cross-examination for fear of misusing such information); *see also United States v. Voigt*, 89 F.3d 1050, 1078 (3d Cir. 1996) (affirming pre-trial order disqualifying counsel of choice because there was a strong possibility "that [the witness] might face cross-examination by a former attorney, there was a serious potential for conflict of interest. . . ."); *Moscony*, 927 F.2d at 750 ("an attorney who cross-examines former clients inherently encounters divided loyalties."). Potential conflicts therefore exist here.

## THE COURT MUST CONDUCT AN INQUIRY REGARDING THE POTENTIAL CONFLICTS OF INTEREST

Where, as here, defendant's choice of counsel implicates conflict-of-interest issues, the Court must investigate the nature of the conflict. *Wheat*, 486 U.S. at 161; *Cuyler v. Sullivan*, 446 U.S. 335, 346-48 (1980). Federal Rule of Criminal Procedure 44(c)(2) requires a judge to make a prompt inquiry into these issues and personally advise the defendant of the right to the effective assistance of counsel, including separate representation. Per Rule 44(c)(2) "[u]nless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel." Although Rule 44(c) explicitly applies to defendants joined in the same case who are represented by the same or associated counsel, *see* Fed. R. Crim. P. 44(c)(1), court inquiries under this Rule have been conducted in circumstances like those present here. For example, Rule 44(c) was used where a defendant's counsel had

represented a former client who was a potential witness for the government.  *United States v. Morales-Laureno*, 947 F. Supp. 2d 184, 186 (D.P.R. 2013); *see Barbosa*, 1988 WL 22580, at *3 (Rule 44(c) provides "a procedural mandate for certain alleged conflicts of interest and guidance for others"); *see also United States v. Roland*, Crim. No. 12-298, 2016 WL 820951, at *8 (D.N.J. Mar. 1, 2016) ("Courts have applied Rule 44(c) for conflict-of-interest issues involving former clients.").

District courts have broad discretion in assessing such alleged conflicts and taking remedial measures.  *See, e.g.*, Fed. R. Crim. P. 44, 1979 advisory committee notes ("Rule 44(c) does not specify what particular measures must be taken.  It is appropriate to leave this within the court's discretion, for the measures which will best protect each defendant's right to counsel may well vary from case to case").  A number of factors may help the court determine whether a conflict of interest exists, and whether it is benign or potentially or actually harmful, to include: (1) whether the attorney has confidential information that is helpful to one client but harmful to another; (2) whether and how closely the subject matter of the multiple representations are related; (3) how close in time the multiple representations are related; and (4) whether a prior representation has been unambiguously terminated.  *United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005).  The character and extent of the multiple representations also are factors.  All factors must be evaluated, not in the concrete context of a completely concluded record, but in the setting of fluid and unfolding events pretrial and at trial.  *See Stewart*, 185 F.3d at 122; *United States v. Martel*, 958 F. Supp. 211, 215 (D.N.J. 1997); *see also Moscony*, 927 F.2d at 747 (examining disqualification motion filed pretrial after indictment, and after government warned

counsel several times during the grand jury investigation that the multiple representation might pose a conflict of interest).

## SECURING WAIVERS MAY SOLVE CONFLICTS ISSUES IN SOME INSTANCES

As with other constitutional rights, the right to conflict-free counsel can be waived under certain circumstances.  As the United States Supreme Court observed in *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938): "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.  The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."  If a valid waiver is obtained, the defendant cannot at a later date attack his conviction based on the assertion of the conflict.  "A truly knowing and intelligent waiver accepted by the court will insulate a conviction from later attack." *United States v. Flanagan*, 679 F.2d 1072, 1076 (3d Cir. 1982), *rev'd on other grounds*, 465 U.S. 259 (1984).

Here, waivers would be needed from Gilmore and the Law Firm witnesses. *See* N.J. Rule Prof. Conduct 1.7(b), 1.9(a).  Mr. Marino told the Court during the arraignment that he has written waivers from each one of the Law Firm witnesses who testified in the grand jury in 2017 and 2018 (Transcript at 11-12, 16).  NJ RPC 1.7(b) provides detail regarding the elements of a proper waiver: "Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if: (1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation. . . .  When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved; (2) the lawyer reasonably believes that the

11

lawyer will be able to provide competent and diligent representation to each affected client; (3)

the representation is not prohibited by law; and (4) the representation does not involve the

assertion of a claim by one client against another client represented by the same lawyer in the

same litigation or other proceeding before a tribunal."   Additionally, in *United States v. Dolan*,

570 F.2d 1177 (3d Cir. 1978), the Third Circuit suggested the following form of inquiry with

respect to waiver:

> [T]he district court should address each defendant personally and forthrightly advise him
> of the potential dangers of representation by counsel with a conflict of interest. The
> defendant must be at liberty to question the district court as to the nature and
> consequences of his legal representation. Most significantly, the court should seek to
> elicit a narrative response from each defendant that he has been advised of his right to
> effective representation, that he understands the details of his attorney's possible conflict
> of interest and the potential perils of such a conflict, that he has discussed the matter with
> his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth
> Amendment protections. It is, of course, vital that the waiver be established by "clear,
> unequivocal, and unambiguous language."

*Id.* at 1181 (*quoting United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975)); *see United*

*States v. Lawriw*, 568 F.2d 98, 104 (8th Cir. 1977) ("Because the conflicts are often subtle it is

not enough to rely upon counsel, who may not be totally disinterested, to make sure that each of

his joint clients has made an effective waiver.").   Should the Court deem it necessary to inquire

whether a waiver would protect the defendant's rights, others' rights, and the record here, the

United States would request the opportunity (1) to review these written waivers and (2) to

provide suggested questions for the Court to pose during its inquiry and would request the same

opportunity be afforded to Gilmore's counsel and any other interested counsel.   This Court may

even wish to appoint separate conflicts counsel to advise Gilmore and the law firm witnesses

regarding the propriety of waiving any conflict, as Judge Salas did in *Roland*, 2016 WL 820951,

12

at *4 (noting that "the Court appointed Mr. Richard Levitt, Esq., to represent Roland as independent conflict counsel for the Rule 44(c) hearing").

## DISQUALIFICATION MAY BE ORDERED EVEN WITH A VALID WAIVER

Even if Gilmore and the Law Firm witnesses agree to waive any conflict, and even if the Court creates a clear record that the waivers are knowing and voluntary, the Court retains the discretion to reject the waiver. *See Stewart*, 185 F.3d at 122 (citing *Wheat*, 486 U.S. at 164, and stating "a district court has discretion to disqualify counsel if a potential conflict exists . . . even where the represented parties have waived the conflict"). The Third Circuit has made clear that district courts have a substantial institutional concern when evaluating conflicts of interest and any waivers of conflict-free representation:

> the trial court has an institutional interest in protecting the truth-seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless of any proffered waiver.[] Moreover, to protect the critically important candor that must exist between client and attorney, and to engender respect for the court in general, the trial court may enforce the ethical rules governing the legal profession with respect both to client-attorney communications and to conflict-free representation, again regardless of any purported waiver. Finally, the court has an independent interest in protecting a fairly-rendered verdict from trial tactics that may be designed to generate issues on appeal.

*Moscony*, 927 F.2d at 749 (footnote omitted). This is particularly so given the standard of review applied to post-conviction claims of ineffective assistance based on the existence of an actual conflict of interest. Ordinarily, under *Strickland*, 466 U.S. at 693, a defendant is required to demonstrate prejudice to prevail on a claim of ineffectiveness. But this is not so when counsel is burdened by an actual conflict of interest, because prejudice is presumed where such a conflict adversely affects counsel's performance. *Cuyler*, 446 U.S. at 345-50; *see also United States v.*

13

*Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002); *Stoia v. United States*, 22 F.3d 766, 770-71 (7th Cir. 1994).

As a result, the Supreme Court has observed that a district court "must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163. Indeed, the Supreme Court has acknowledged the significant difficulty of attempting to predict all of the hypothetical pitfalls that the conflict of interest could create as trial progresses:

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics.

*Wheat*, 486 U.S. at 162-63; *see United States v. Jones*, Crim. No. 11-261, 2011 WL 4923415, at *3 (E.D. Pa. Oct. 17, 2011) ("Today's waiver can easily turn into tomorrow's argument for an ineffective assistance of counsel claim. . . . Promising not to lament the decision to waive conflict-free representation is much more palatable prior to a conviction. This Court prefers one trial conducted fairly and with counsel free of conflicts rather than one trial with a defendant preferred lawyer followed by the possibility of motions and litigation aimed at undoing her choice of counsel.").

14

In assessing whether to disqualify counsel under these circumstances, the Court must balance the defendant's choice of counsel against the fair and proper administration of justice. *Voigt*, 89 F.3d at 1074. The defendant's choice of counsel should not be upset where the potential conflicts are highly speculative. *Flanagan*, 679 F.2d at 1076. But the actual or potential conflict of interest may so undermine the administration of justice that the defendant's choice must fall. Here, the Court may balance issues of substantial hardship to the defendant against the interests of the Law Firm witnesses, the United States and the Court's substantial interest in insulating from collateral attack any judgment it may enter. *See*, *e.g.*, *Lacerda*, 929 F. Supp. 2d at 360.

The Third Circuit, relying in part on *Wheat*, has repeatedly affirmed district court orders disqualifying attorneys, even where waivers were proffered or obtained. *See, e.g., Stewart*, 185 F.3d 112 at 120 (upholding district court's disqualification of counsel despite signed waivers by the defendant and former clients, where attorney had previously represented cooperating government witnesses in related civil matter); *Voigt*, 89 F.3d at 1079 (3d Cir. 1996) (upholding district court's disqualification of counsel where counsel had represented two of defendant's co-defendants in the past, and was a possible trial witness, where waivers were obtained from two of the three former clients). As long as the Court makes a reasoned determination on the basis of a fully prepared record, its decision will not be deemed arbitrary. *Voigt*, 89 F.3d at 1074; *accord Stewart*, 185 F.3d at 120.[5]

---

[5] Moreover, the Supreme Court has held that the pretrial disqualification of defense counsel in a criminal prosecution is not immediately appealable and therefore can only be raised on appeal from a judgment of conviction and sentence. *Flanagan v. U.S.*, 465 U.S. 259, 260, 270 (1984).

15

## **CONCLUSION**

The Court must conduct an inquiry regarding the potential conflicts of interest arising from Mr. Marino's and his firm's simultaneous representation of Gilmore, the Law Firm witnesses and other entities.  The Court also should determine whether securing waivers both in writing and on the record from Gilmore and the Law Firm witnesses suffice to permit continued representation under the circumstances.  If not, the Court should determine whether disqualification of counsel is necessary.

Respectfully submitted,

RACHAEL A. HONIG
Attorney for the United States
Acting Under Authority Conferred
by 28 U.S.C. § 515

By:      */s/ Matthew J. Skahill*
          */s/ Jihee G. Suh*
         MATTHEW J. SKAHILL
         JIHEE G. SUH
         Assistant United States Attorneys

          */s/ Thomas F. Koelbl*
         THOMAS F. KOELBL
         Trial Attorney
         U.S. Department of Justice – Tax Division

Dated:  February 1, 2019
Camden, New Jersey

16