# EXHIBIT 6

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA . | | Case No. 3:19-cr-00029-AET-1 |
| . | | |
| . | | |
| v. . | | 402 East State Street |
| . | | Trenton, NJ 08608 |
| GEORGE GILMORE, | | |
| Defendant. . | | |
| . | | January 18, 2019 |
| . . . . . . . . . . . .. | | 11:01 a.m. |

TRANSCRIPT OF INITIAL APPEARANCE AND ARRAIGNMENT
BEFORE HONORABLE ANNE E. THOMPSON
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government:          Office of the United States Attorney
                            By:  JIHEE GILLIAN SUH, AUSA
                            970 Broad Street, Suite 700
                            Newark, NJ 07102

                            Office of the United States Attorney
                            By:  MATTHEW J. SKAHILL, AUSA
                            401 Market Street
                            4th Floor
                            Camden, NJ 08101

For the Defendant:          Marino Tortorella & Boyle, PC
                            By:  KEVIN HARRY MARINO, ESQ.
                            437 Southern Boulevard
                            Chatham, NJ 07928

Audio Operator:             Kimberly Stillman

Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@jjcourt.com

(609)586-2311       Fax No. (609) 587-3599

2

1          COURTROOM DEPUTY:  Remain seated.

2          THE COURT:  All right.  Who have we got here?  On

3  behalf of the United States?

4          MS. SUH:  Good morning, Your Honor.  Assistant U.S.

5  Attorney Jihee Suh on behalf of the Government.

6          MR. SKAHILL:  Good morning, Your Honor.  Assistant

7  U.S. Attorney Matthew Skahill for the United States.

8          THE COURT:  Very well.  And across the aisle?

9          MR. MARINO:  Good morning, Your Honor.  Kevin Marino,

10  Marino, Tortorella & Boyle for the defendant, George Gilmore.

11          THE COURT:  Very well.  And you have the defendant

12  with you?

13          MR. MARINO:  Yes, I do, Your Honor.

14          THE COURT:  All right.  What do we have?  We have an

15  indictment, do we?

16          MS. SUH:  Yes, Your Honor.

17          THE COURT:  All right.  What does it charge and whom

18  does it charge?

19          MS. SUH:  The indictment charges defendant George

20  Gilmore with six counts.  Count 1 charges the defendant with

21  the evasion of payment of taxes in violation of Title 26,

22  United States Code Section 7201 and Title 18, United States

23  Code Section 2.

24          Counts 2 and 3 charges the defendant with filing

25  false tax returns in violation of Title 26, United States Code

3

1   Section 7206, Subsection 1, and Title 18, United States Code

2   Subsection 2.

3          Counts 4 and 5 charge the defendant with failure to

4   collect, account for and pay over payroll taxes in violation of

5   Title 26, United States Code Section 7202 and Title 18, United

6   States Code Section 2.

7          And Count 6 charges the defendant with making false

8   statements in a loan application, in violation of Title 18,

9   United States Code Sections 10, 14, and 2.

10         Your Honor, if I may proceed in advising the maximum

11  penalties for the offenses?

12         THE COURT:  Yes, you may.

13         MS. SUH:  For each of Counts 1, 4, and 5, the

14  defendant faces a maximum term of imprisonment of five years, a

15  maximum fine of $250,000 or the greater -- the greater of

16  $250,000 or twice the pecuniary loss or gain from the offenses,

17  and a supervised release term of three years.

18         For Counts 2 and 3, the defendant faces a maximum

19  term of imprisonment of three years and a maximum fine of

20  $250,000 or twice the gross pecuniary gain or loss from the

21  offenses, and a supervised release term of one year.

22         For Count 6, the defendant faces a maximum term of

23  imprisonment of 30 years and a maximum fine of $1 million.

24         The information that the Government has establishes

25  that Mr. Gilmore is a U.S. citizen.  However, if he were not a

4

1  U.S. citizen, he's advised that conviction on any of the
2  charged offenses would subject him to immigration proceedings
3  and removal from the United States, and that he has the right
4  to confer with the consulate of the country of which he is a
5  citizen.

6          THE COURT:  All right.  Thank you very much.  Now Mr.
7  Marino.

8          MR. MARINO:  Yes, Your Honor?

9          THE COURT:  You've received a copy of the indictment
10 for your client, correct?

11         MR. MARINO:  I have, Your Honor.

12         THE COURT:  And you waive the reading of this
13 indictment, is that correct?

14         MR. MARINO:  That is correct, Your Honor.

15         THE COURT:  And you would wish that I would enter
16 pleas of?

17         MR. MARINO:  Not guilty on all charges, Your Honor.

18         THE COURT:  Very well.  Not guilty pleas will be
19 entered with regard to all counts in the indictment.

20         Now the next matter would be a scheduling order.

21         MR. MARINO:  If I may address that, Your Honor?

22         THE COURT:  All right.

23         MR. MARINO:  I have --

24         THE COURT:  Now we usually sign the scheduling order
25 at the time of an arraignment.  Now --

1           MR. MARINO:  Understood, Your Honor.

2           THE COURT:  And I understand that the two of you have

3   talked and have not agreed on the schedule.

4           MS. SUH:  Yes, Your Honor.

5           MR. MARINO:  That is correct, Your Honor.  I have

6   advised the Government that Mr. Gilmore intends to enforce his

7   rights under the Speedy Trial Act and wishes to be brought to

8   trial by no later than March 29th, 2019 which is 70 days from

9   today.

10          THE COURT:  All right.

11          MS. SUH:  Your Honor, the Government is certainly

12  willing to oblige and conform with the Speedy Trial Act and get

13  to trial in this case as quickly as possible.

14          However, Your Honor, we think that it would be

15  premature and run the risk of setting an artificial trial date

16  if we were to do so today.  So what the Government would

17  propose that we do today is set a schedule for the exchange of

18  discovery and a status conference in short order, perhaps mid-

19  February, and at that time, take up the issue of when the trial

20  should be set.

21          There are a number of considerations, Your Honor,

22  that would weigh in favor of following those procedures rather

23  than setting a trial date now.  First, Your Honor, the

24  discovery in this case is extensive.  Because it is voluminous,

25  we actually proposed designating this case as a complex case,

6

1  but we were ready to prepare all -- prepare and produce all the

2  discovery all at once rather than at stages.  And we propose

3  date of March 1st at first to the defense, but he opposed.  And

4  in light of what the defense has just explained, we're ready to

5  accelerate that and produce it perhaps on February 8th is what

6  we would propose and for the defendant's discovery to be

7  produced a week later with Rule 12 notices.

8          Your Honor, the nature of the discovery, the large

9  chunk of that discovery consists of subpoenaed records.  The

10  electronic size of those subpoenaed records alone is

11  approximately 36 gigabytes.  I'm advised by my IT department

12  that that's at least 12,000 electronic files.  The defendant's

13  going to need some time to review that.

14          In addition, there will certainly be pretrial motions

15  in this case and in limine motions.  At a minimum, the

16  Government will file a Rule 404(b) motion prior to trial.  And

17  shortly, we plan to make an application on the issue of Mr.

18  Marino's simultaneous representation of the defendant and

19  employees of the defendant's law firm.

20          Now that the defendant has been indicted and we're

21  proceeding to trial with employees of the law firm that will be

22  called as witnesses by the Government to testify at trial, we

23  believe there's a conflict of interest that needs to be

24  addressed by the Court and the issue of whether that conflict

25  of interest is in fact waivable, as Mr. Marino asserted prior

7

1    to indictment, we believe that issue needs to be addressed and

2    resolved by the Court prior to trial.

3           Your Honor, in addition, the defendant has raised a

4    hoarding disorder as a possible defense.  Now to the extent

5    that the defendant does proceed with seeking to raise that as a

6    mental condition under Rule 12 that would be relevant to trial,

7    we believe that there would be some motion practice related to

8    that because the Government obviously would consider making a

9    motion to have its own examination of the defendant by its

10   mental health expert.

11          So given these considerations, Your Honor, we believe

12   that today we should set the schedule for discovery and a

13   status conference in short order and then take up the trial

14   date later.  We don't want to set a trial date now and inform

15   civilian witnesses that that's the trial date only for it to be

16   moved later and to do so before we've even exchanged discovery.

17          THE COURT:  Your response, Mr. Marino?

18          MR. MARINO:  Mr. Gilmore has been under investigation

19   by the United States Attorney since August -- at least August

20   of 2016 which is when we became aware of that investigation and

21   when I was retained and began to represent Mr. Gilmore.

22          I much appreciate the Government's thought that I may

23   need more time to prepare for a case that has been under

24   investigation for that length of time, but I do not need it or

25   want it.

. 8

1          Here's what I do want.  George Gilmore is the
2    republican chairman of Ocean County.  He represents nearly
3    every municipality in Ocean County.  Since his indictment was
4    announced, his clients and his colleagues in the Republican
5    party have made it clear that they intend to stand behind him.
6    This is a cloud that's been over his head for literally years,
7    during which time, they have served subpoenas on every single
8    client that the Gilmore & Monahan firm has.

9          They have looked high and low for evidence of
10   political corruption.  They have asked Mr. Gilmore, they've
11   appeared at his home in August of 2016 where Mr. Mahoney of the
12   United States Attorney's Office accompanied by a revenue agent
13   of the Internal Revenue Service attempted to cua (phonetic) Mr.
14   Gilmore into cooperating in some sort of political corruption
15   investigation.  Specifically telling him that there are -- must
16   be folks in Trenton that you know things about and you can help
17   yourself and so forth, and so on.

18         We have had a forensic account review every single
19   book and record in this case.  We have met with the Government
20   representatives on any number of occasions.  I have spoken with
21   representatives of the Department of Justice enforcing our
22   right to be heard before this indictment was handed up.

23         We have absolutely no desire for any extension
24   whatsoever.  Motions in limine, meaning motions at the
25   threshold are considered in every case.  They don't have

9

1  anything to do with upsetting the Speedy Trial schedule.

2          Earlier this week, I received an e-mail from Mr.

3  Skahill and Ms. Suh in which they identified this provision of

4  18 U.S.C. Section 31(c) (sic). And Your Honor will be well

5  familiar with it. Section (h)(8). And they say, first of all,

6  under (h)(7) that they believe this is a case which should be

7  continued. And the factor they identify is Number -- (B)(ii),

8  whether the case is so unusual or so complex due to the number

9  of defendants, the nature of the prosecution, or the existence

10 of novel questions of fact or law that it is unreasonable to

11 expect adequate preparation for pretrial proceedings or for the

12 trial itself within the time limits established by this

13 section.

14         The number of defendants in this case is one. The

15 nature of the prosecution is a straightforward tax case, not --

16 on most of the counts, not for evasion per se but for a willful

17 failure to pay those taxes Mr. Gilmore indicated in his filings

18 that he in fact owes.

19         It is -- and there's a bank fraud count which is not

20 complex or unusual in any way either.

21         The notion that there are novel questions in fact or

22 law? No, there are not. And that it is unreasonable to expect

23 preparation? No, it is not. We've been preparing for this

24 case since August of 2016. They could have brought it at any

25 time they wished. They didn't have to bring it last week.

10

1  They could have brought it next month.  They could have brought
2  it next year.  They chose to go now.  They have these
3  documents.
4           Ms. Suh says, without apparent irony, that there are
5  documents from financial institutions and so forth.  They have
6  those documents.  Surely, she's not suggesting that they would
7  employ the grand jury to gather evidence for use at that trial.
8  We know that's improper and that's not something they ever
9  engage in.  I've been doing business with their office for
10 three decades.
11          So what we're talking about is, is Mr. Gilmore going
12 to be ready to go?  Yes, he is.
13          The hoarding disorder that we have raised, I have
14 made my expert report available to them.  I have told them that
15 they could interview my expert if they wish to do so.  They
16 told me that they read the report and they were unimpressed.
17 They believe that it does not negative (sic) any element of the
18 offense.  I quite disagree with them.
19          But if they want to have their witness examine Mr.
20 Gilmore, they should have their witness examine Mr. Gilmore.
21 I'll make him available.
22          I don't intend to move to dismiss any part of their
23 misbegotten indictment because I intend to either get a
24 judgment of acquittal at the conclusion of their case or to get
25 an acquittal outright at the conclusion of the trial.

11

1    They have all the cards until today.  Today, the

2  first appearance, I get to say, put up in 70 days or the case

3  gets dismissed.  If they're not ready to go in 70 days, they

4  should dismiss the case.  If they are ready to go in 70 days,

5  we should go in 70 days.  I'm entitled to that.  So no, I don't

6  want to wait.

7    First of all, the suggestion is three more weeks to

8  get discovery they obviously have in their possession.  What

9  are we waiting for?

10    I don't want to wait to let them decide whether they

11  want to make the typical motions such as a 404(b) motion.  It's

12  a motion in limine, made at the threshold of every trial.  It

13  has never affected the timing of any trial I have ever been

14  involved in in my entire career.

15    So I want to go forward.  Mr. Gilmore wants to go

16  forward.  He should not be made to suffer the pain of this

17  investigation for one day longer than the United States

18  Congress says a person accused by a grand jury ought to be made

19  to suffer.  And that's why we want to go forward.

20    So all that business about heavy duty discovery and

21  all these gigabytes and motions in limine, all meaningless.

22    Now, yes, I have written waivers from each one of the

23  people they hailed before the grand jury over the course of the

24  last two years.  Some of them went -- surely, some of them went

25  in 2017, many of them.  And some in 2018.  I don't perceive any

12

1  difficulty or problem with that whatsoever.  They have written

2  waivers.  If they want to raise that on a motion in limine,

3  they can raise it on a motion in limine.

4          In terms of substantive motions that would -- that

5  this Court would have to have under consideration for some

6  protracted period of time, there will be none.  I will make

7  none.  There indictment states a claim on which relief can be

8  granted.  Their indictment states a crime.  Whether they can

9  prove that crime is a whole other thing.  And I'm ready to go

10  with them.  In fact, I will tell Your Honor, I can be ready to

11  proceed the first week in February.

12          So if they want to wait, they pulled the trigger, now

13  it's time to put up.  Thank you, Your Honor.

14          THE COURT:  Ms. Suh, yes?

15          MS. SUH:  Your Honor, I don't believe that there's

16  much disagreement actually.  I appreciate Mr. Marino's zealous

17  advocacy for his client, but the Government's position is that

18  we'll be ready to proceed.  We're not asking for an extension.

19  All that we're proposing is, let's take this step by step, set

20  the schedule for discovery, have a status conference, and at

21  that time, select a trial date.  That's all we're proposing.

22  We're not asking for an extension.

23          And obviously, we dispute Mr. Marino's position with

24  respect to the conflict issue.  And that's why we believe that

25  we'll need to address that with the Court.  We'll file a motion

13

1   on that.   I'm sure he'll respond.

2          But the scheduling order should allow some time for

3   that.   And we could do that very shortly, this month.   But what

4   we're mainly proposing is that let's set the discovery

5   schedule, set a short status conference in short order, and

6   then take up a trial date instead of setting an artificial one

7   now.

8          We have no opposition to trying this case within 70

9   days.   There's -- however, there's a sensible sequence in

10  getting there.   And that, first for the defendant to review the

11  discovery, to receive it, and then to talk about pretrial

12  motions and set a schedule for them.

13         THE COURT:   Well, here's the problem.   He's asking

14  for what the statute provides, and that's a trial within 70

15  days.   And if that's what he wants, what's that March the --

16         MR. MARINO:   March 29th would be the 70th by my

17  count, Your Honor.

18         THE COURT:   Well, that would be a Friday.

19         MS. SUH:   Friday, Your Honor.

20         THE COURT:   And we could certainly begin jury

21  selection and start the trial on the 29th.

22         MR. MARINO:   That would be my pleasure, Your Honor.

23  And I believe the Court is right about that.

24         THE COURT:   And I have no problem setting that date.

25         MR. MARINO:   Yes.

14

1       THE COURT:  But here's the problem.  Be seated both
2  of you.

3       MR. MARINO:  Thank you, Your Honor.

4       THE COURT:  The problem is that on the one hand, Mr.
5  Marino is asking for that date.  The Speedy Trial Act was
6  enacted to protect the defendant's rights.  The processes which
7  the Government has listed are really provisions to assist the
8  defendant.  The opportunity -- have a seat.  The opportunity to
9  have full discovery, an opportunity to consider pretrial
10 motions, some of them may become more evident as time,
11 preparation elapses.  All of that is really for the benefit.
12 It's not for the benefit of the Government.

13      The Government obviously has gotten the indictment.
14 So they've already got the materials.  It's the defendant who
15 doesn't have everything.  So it's a way of -- in a way, it's
16 handicapping the defendant, not the Government at all.

17      But if the Government -- if the defendant is seeking
18 a date of the 29th of March, I'm quite satisfied the Court
19 would be ready to try the case.  It doesn't matter to the Court
20 as long as we're not in trial with something else.  And I don't
21 anticipate being in trial with something else on the 29th of
22 March.  So that's fine with me.

23      MR. MARINO:  If I may be heard just --

24      THE COURT:  But it's the -- have a seat.  But it's
25 the protections for the defendant that are the concern here,

1  the recusals and the conflict matter that seems to me -- this

2  is January 18th, it seems to me that the Government can be

3  ready with that in two weeks, I would think, to address that.

4  And all those other considerations, really, are for the benefit

5  of the defendant, not for the benefit of the Government.

6          So I agree with Ms. Suh that it seems to be a date

7  that is not realistic.  Just looking at the substance of the

8  indictment, it would seem that it would certainly take longer

9  to prepare.  But the Court is quite satisfied to go on March

10  29th if the parties are ready or if the defendant is ready.

11  I'm sure the Government could be ready.  They've admitted that

12  they could go on the 29th.

13          So let's short circuit this.  We'll set the date for

14  the 29th of March which the defendant has requested.

15          MR. MARINO:  May I be heard, Your Honor?  I actually

16  did not request the 29th.  I requested that that be the very

17  last date.  So I'm prepared to go before the 29th.  I just want

18  that to be clear for the record.  And you know --

19          THE COURT:  Well, we have to have a date, Mr. Marino.

20          MR. MARINO:  Yes, I think we have to have a date.

21  And --

22          THE COURT:  Now would you like to give me another

23  date that you would like to -- as your trial date?

24          MR. MARINO:  Your Honor, here's -- it's this simple

25  from my perspective.  I don't have a problem with the 29th if

16

1  that's the date that the Court wishes to set.  I just wanted to

2  point out that I really do want Mr. Gilmore to be tried within

3  the 70 days.

4          THE COURT:  Promptly.  You want him to be tried

5  promptly.

6          MR. MARINO:  I do.  And I'll tell you this --

7          THE COURT:  I understand.  I sensed that.

8          MR. MARINO:  Yes.  And I'll tell you this as well,

9  this issue about the waivers of these other individuals, yes, I

10 represented those individuals pursuant to written waivers.  I

11 also produced each and every one of them to be submitted to the

12 grand jury.  So they've testified in the grand jury.  I'm more

13 than confident that whatever lingering issue they may have

14 about putting some of these witnesses on the stand can be

15 resolved.

16          I'll tell you, I think there also will be many things

17 that can be stipulated to.  I'm not sure they quite understand

18 how we intend to proceed here.  But my guess is as often

19 happens in these cases when you have responsible folks on both

20 sides, they sit down and they say, well -- for example I'm

21 going to want to introduce all of these records.  Is there a

22 need to bring someone into authenticate them?  In my

23 experience, typically no.  If there's something to talk about,

24 we'll talk about it.

25          But other than that, I don't intend, in other words,

1 to put any unreasonable impediment, any impediment at all in

2 their way. If there is documentation from these financial

3 institutions, I don't see any reasons to have a custodian for

4 example come on and authenticate the document. Your Honor has

5 been through this drill many times and I a number of times as

6 well.

7        So the idea that -- I understand and appreciate the

8 Court's indulgence. And of course it's for the defendant's

9 protection. Of course. But my thought is if Your Honor sets a

10 date -- and it can be whichever date within now -- between now

11 and the 29th of March that is workable for the Court. And

12 there comes -- becomes some -- it if becomes clear during the

13 course of that time that there needs to be more time, I assume

14 that they will ask for that. I don't envision asking for it

15 myself, but --

16        THE COURT: Well, you can't --

17        MR. MARINO: You cannot foresee everything that might

18 happen. But I do believe that if you set it for that day and

19 with a resolve to actually go forward on that day, we'll do

20 everything in our power to make certain that that happens.

21        I wouldn't want to be in a situation where Your

22 Honor's on trial with another matter and then it gets kicked

23 for a period of time. And I understand the Court is very busy

24 obviously. And we have this looming business of a government

25 shutdown. I know that the U.S. Courts, at least according to

18

1  its website have made clear that criminal cases will be

2  respected and will go forward and so forth.  But you know

3  that's obviously another thing that's sort of looming in the

4  background.

5           So I just -- if Your Honor wants to set it for the

6  29th, that's fine.  If you want to set it for a date prior to

7  the 29th, that's fine too.  I expect that we will be ready to

8  go in very short order.  And I want to keep the pressure to

9  produce all these things in a timely fashion and to move

10 forward on it.

11          THE COURT:  I think if we say the 29th, Mr. Marino,

12 that will keep the pressure on everybody.

13          MR. MARINO:  That's fine with me, Your Honor.

14          THE COURT:  It takes a long time to get these cases

15 ready.  And you know that better than I.  So --

16          MR. MARINO:  Your Honor, I will tell you that I tried

17 a case in October of 2014 in the United States District Court

18 for the Eastern District of Virginia.  And I will tell you that

19 when I arrived at the arraignment and said the very same things

20 I'm saying to Your Honor in that case, which I will tell you

21 was far more complex than a simple tax case such as this, the

22 Government said, all these things.  It sounds very magnanimous,

23 we want to make sure the defendant is ready to go and so forth.

24 And Judge Liam O'Grady said, you indicted the case, you've got

25 to be ready to go in 70 days.

19

1    And I will tell you, I met my client for the first

2    time on July 14th.  And he was on a plane home, acquitted by

3    order of the Court on October 23rd because we tried that case

4    in accordance with the Speedy Trial Act.

5    They don't like it because in the normal course, they

6    take forever to get the case ready to go.  Then they indict it.

7    And then they take forever to get the trial ready to go.  But

8    that's not what the United States Congress says the defendant

9    is entitled to.  That's what I'm reacting to.

10    So I know it takes a long time.  And I know that the

11    Speedy Trial Act in a sense is honored in the breach because

12    everyone sort of thinks, well, I have of other cases and

13    there's a lot going on and, hey, we all really need time.

14    Well, when your reputation hangs in the balance, you don't want

15    time.

16    THE COURT:  I understand.  I understand.  And it's a

17    serious matter.  And I'll make sure that the Court is ready to

18    receive you on the 29th of March.  So we'll set that as the

19    trial date.

20    MR. MARINO:  Thank you very much, Your Honor.

21    MS. SUH:  And that's fine with the Government, Your

22    Honor.

23    THE COURT:  All right.  Now in dividing up the time

24    between January 18th and March 29th, shall we set dates which

25    would be realistic for discovery -- for motions if there are to

20

1  be any and so on?

2          MR. MARINO:  That would be the defendant's pleasure,

3  Your Honor.

4          THE COURT:  All right.  Let's see if we can do that

5  right now.  Can you make a proposal?  You've got your list of

6  things that are anticipated.  Maybe I'll give you five minutes

7  so I don't have to be here for that.  You can take five minutes

8  and see if you can work out a realistic schedule between now

9  and March 29th.  And I'll be back in five minutes and we'll

10 order them.

11         MS. SUH:  Thank you, Your Honor.

12         MR. MARINO:  Thank you, Your Honor.

13         COURTROOM DEPUTY:  All rise.

14                      (Off the record)

15         COURTROOM DEPUTY:  Remain seated.

16         THE COURT:  All right.  What do we have?  Any

17 agreement as to chopping up the time period between now and

18 March 29th?

19         MR. MARINO:  We have spoken, Your Honor.  And we

20 haven't reached --

21         MR. SKAHILL:  Your Honor, if I could -- if I --

22         THE COURT:  Everybody's talking at the same time.

23 All right.  I should decide who I'm going to listen to.

24         MR. SKAHILL:  Your Honor, if I could be heard?

25         THE COURT:  All right.  Let me hear from the

21

1  Government, then I'll hear from you, Mr. Marino.

2           MR. SKAHILL:  So Judge, we do not have an agreement.

3  And what we proposed and what we think is eminently reasonable

4  in this case is to provide discovery by February 8th.  And so

5  we can be clear on this.  And Mr. Marino referenced a

6  continuance order and a scheduling order that we sent over.

7  Judge, the --

8           THE COURT:  Wait a minute.  Wait a minute.  Let me

9  see if I understand what's going on.

10          MR. SKAHILL:  Yes.

11          THE COURT:  You providing discovery on your part --

12          MR. SKAHILL:  Yes, Your Honor.

13          THE COURT:  -- entails what?

14          MR. SKAHILL:  So what we intend to do, Your Honor,

15 there is --

16          THE COURT:  I mean it's not a matter of just opening

17 a door to a room and letting them come in?

18          MR. SKAHILL:  It is not, Judge.  There is a

19 tremendous amount of discovery in this case.

20          THE COURT:  Okay.

21          MR. SKAHILL:  And as Ms. Suh put on the record,

22 approximately 36 gigabytes.  We're going to provide the

23 discovery electronically.  It includes hundreds of responses

24 from subpoenas.

25          THE COURT:  So what does that require you to do?

22

1 That's what I want to know.

2          MR. SKAHILL:  Three weeks of time, Your Honor, to

3 Bate stamp stuff, organize it, catalogue it and put it on a

4 hard drive to send over.  We think that's reasonable, Judge.

5          And to be clear, when we had initially talked about

6 designating this case as complex, we never forced it on Mr.

7 Marino.  We sent him a proposed continuance order for

8 consideration due to the volume of material in this case.

9          He doesn't think it's complex.  That's fine.  But we

10 have a considerable amount of stuff to turn over, Judge.  And I

11 understand his -- he has stood up and said, this case has been

12 going on for years --

13          THE COURT:  Well, you see, maybe he doesn't want all

14 that.  I mean he's entitled, if he wants, to go to trial with

15 less than what you -- with less that a perusal of what you have

16 if that's his choice.

17          MR. SKAHILL:  Understood, Judge.  But we want to make

18 sure we're complying with the Rule 16.  If he doesn't want the

19 discovery, we won't give him the discovery, but we want to

20 comply with the rule and provide it.  To comply with that rule

21 and ensure it's turned over in a fulsome way, we think for a

22 case with these counts, with this nature, that three weeks is

23 reasonable.

24          MR. MARINO:  If I may be heard very briefly, Your

25 Honor?

23

1        THE COURT:  Just not yet.  Not yet.  I have to
2   understand what counsel for the Government is saying.  You have
3   to Bate stamp and organize evidence now?
4        MR. SKAHILL:  Judge, I should --
5        MR. MARINO:  Thank you.
6        MR. SKAHILL:  Judge, evidence is organized, but we
7   want to make sure it's provided in a way that's usable for Mr.
8   Marino.  We don't want to just take files and stick them on a
9   disk and just turn them over.  If he wants it that way, we
10  could do it faster.  But we want to make sure that it's in a
11  format that's usable to him.  We want to make sure -- we want
12  to do a check of things to make sure that you know proper
13  redactions are done.  We can provide this in a quick
14  turnaround, but for the amount of stuff here, we don't think
15  three weeks is an unreasonable amount of time.
16       THE COURT:  You mean three weeks before you would
17  invite him, is that what you're saying?
18       MR. SKAHILL:  We could invite him in earlier, Judge,
19  but we want to provide the stuff on a disk to him so he can
20  just have it.
21       MR. MARINO:  I don't understand what's going on.  I
22  just want to be heard.
23       THE COURT:  Mr. Marino, now let's go step by step.
24  Let the Judge try to understand first, then you can understand.
25       MR. MARINO:  Fair enough, Your Honor.

24

1        THE COURT:  So you're saying that you won't be ready

2   to turn over discovery 'til when?  Now this is January 18th.

3        MR. SKAHILL:  Judge, we propose February 8th.  The

4   Court asked -- we can move faster than that, Judge.  We thought

5   that was a reasonable date.  We could do it --

6        THE COURT:  All right.  Well, he wants a fast track.

7        MR. SKAHILL:  Yes, he does.

8        THE COURT:  All right.  So how soon can you provide

9   the open door for him with whatever it is that you would

10  consider he's entitled to have if he wishes to look at?

11       MR. SKAHILL:  Judge, I think we could start rolling

12  stuff out to him next week, if we did things on a rolling

13  basis.  I think we could --

14       THE COURT:  So you could conclude by when?

15       MR. SKAHILL:  I think we conclude everything by

16  February 8th, Judge, but we could probably -- if I could look

17  at my calendar, Your Honor?  February 1st will be two weeks

18  from today.  I think we could be concluded by February 1st.

19  That's 14 days, Your Honor.

20       THE COURT:  All right.  So you can make everything

21  available for him that he's required to -- that he's entitled

22  to by February 1st.  That's two weeks from today.

23       MR. SKAHILL:  I believe we could do that, Judge.

24       THE COURT:  Now what other milestones do we have?

25       MR. SKAHILL:  In terms of --

25

1      THE COURT:  -- defense motions.  But he's not
2  concerned.
3      MR. SKAHILL:  No, Judge.  What we had proposed, there
4  is a conflict issue.
5      THE COURT:  Oh, there's some motions that you wanted
6  to make?
7      MR. SKAHILL:  Yes, Judge.  We raised a conflict
8  issue.  We proposed to file that motion.  Your Honor said in
9  two weeks we could do that.  That would also be February 1st,
10  Judge.
11      THE COURT:  All right.  February 1st for the
12  Government's motions, conflict motions.
13      MR. SKAHILL:  Yes, with a response by February 8th
14  and a reply by February 15th.
15      THE COURT:  Fine.
16      MR. SKAHILL:  And we had proposed any other pretrial
17  motions that Mr. Marino wishes to file by March 1st.
18      THE COURT:  Well, we'll let him take a date for that
19  because we won't -- well, no.  All right.  We'll give March 1st
20  for Mr. Marino.
21      MR. SKAHILL:  And Judge, I should also say there
22  would be obviously any reciprocal discovery that Mr. Marino
23  has, if we're providing by February 1st, we'd ask that he
24  provide by February 1st as well.  As well as any Rule 12
25  notices that he may have.

26

1      THE COURT:  Two weeks.

2      MR. SKAHILL:  Two weeks from today.

3      MR. MARINO:  Judge, whenever Your Honor is --

4 convenient for Your Honor --

5      THE COURT:  Yes, when I get to you, yes.  All right.

6 Fine.

7      MR. MARINO:  I just want to make certain these dates

8 aren't being set in stone yet.

9      THE COURT:  Right.

10      MR. MARINO:  Thank you.

11      THE COURT:  All right.  Anything else that you would

12 need?  This 404(b), what was that?  You think you're going to

13 have 404(b) material that --

14      MR. SKAHILL:  I think we will, Your Honor.  We'd ask

15 them ten days before trial.

16      THE COURT:  Well, you've allowed yourself plenty of

17 time for that.  Okay.  Ten days before trial.  All right.  What

18 else?  What other milestones do we have?

19      MR. SKAHILL:  We would also, Your Honor, need to set

20 a pretrial conference.  I don't know if it's premature at this

21 point to pick a date for that.  Obviously, if there's motions

22 filed, we will be back in front of Your Honor.  But if we're

23 going to have that March 29th trial date, we will need a

24 pretrial conference before then to address trial related

25 issues, Judge.

1      THE COURT:  Well, what about March 15th, two weeks

2  before trial starts?

3      MR. SKAHILL:  Thank you, Your Honor.

4      THE COURT:  Is there anything else that the

5  Government needs?

6      MR. SKAHILL:  I don't believe so, Your Honor.  I

7  think that addresses the issues.

8      THE COURT:  All right.  All right.  Mr. Marino.

9      MR. MARINO:  Thank you very much, Your Honor.

10      THE COURT:  Now what would be workable for you, given

11  today to March 29th?

12      MR. MARINO:  In the first place, I can't imagine why

13  20 percent of the time that the United States Congress says a

14  defendant has before he will be brought to trial at most, I

15  can't understand why 20 percent of the outside number would be

16  devoted to work that could have, and should have, and perhaps

17  was going forth?

18      THE COURT:  Yes, and it's too late for that.  And I

19  can't --

20      MR. MARINO:  I want to come in and look at the room

21  full of documents today or Monday.  I don't need them to put a

22  bow around it for me.  I don't need them to do any of this.

23      THE COURT:  Well, they want to Bate stamp it.  They

24  want to put it on disks.  So they want to make it so that you

25  can take it with you.

1          MR. MARINO:  And that would be great, but --

2          THE COURT:  And you don't have to sit in the room and

3    absorb it all at once.

4          MR. MARINO:  The problem is --

5          THE COURT:  Yes?

6          MR. MARINO:  -- if they were going to make it

7    available to me electronically right now, that would make

8    sense.  But they're going to eat 20 percent of my time.

9          THE COURT:  That would be preferable.

10          MR. MARINO:  I just want to go -- they can do that.

11   They can give it to me.  I don't need it electronically until

12   February 8th or 1st or whatever it is.  That's fine.  But I'd

13   like to be there looking at their documents as soon as humanly

14   possible.  I'd like to go there this afternoon and begin to

15   look at them for example.

16          I don't -- you know these are bank records.  I can

17   tell you they're -- 36 gigabytes and so I can look at those

18   documents and satisfy myself without perusing them as to what

19   they are and what they could possibly contain that would

20   inimical to my defense and my client's interest.

21          So yeah, it's great that they want to give it to me

22   in a bow and do all of that.  That's wonderful.  And they can

23   do it, and I'll take it on February 1st.  Great.  What I'd like

24   to do is, I'd like the opportunity to go to the United States

25   Attorney's Office at some time next week at the Court's

29

1    direction, whatever you think makes sense, and look at the room

2    for just -- you can see, okay, this stack of documents, for

3    example, these are all bank records for Mr. Gilmore from this

4    account.  Great.  Okay.  Put those to one side.  You know and

5    get through it all.

6           So that's -- that actually enables me to prepare my

7    defense.  That's what's in my mind.  Not waiting 20 percent of

8    my time so they can send me 36 gigabytes and I can begin wading

9    through it then.  That's why that's a problem.  And so you know

10   --

11          THE COURT:  Okay.  Okay.  All right.  Mr. Marino, I'm

12   not going to set times or even discuss with you what afternoons

13   or mornings you're going to go to the U.S. Attorney's Office.

14   I'm going to set a date.  And I agree with you that the

15   Government has had everything all the time.  But I will give

16   them two weeks, February 1, I don't consider that unreasonable,

17   as their time for providing discovery to you.  That's just two

18   weeks.  So we've moved -- we'll move beyond that.  Now --

19          MR. MARINO:  On the conflicts motion.

20          THE COURT:  Yes?

21          MR. MARINO:  What I tried to do with the break was

22   obviate the motion practice all together.  So just to bring

23   Your Honor quickly up to speed, I told them --

24          THE COURT:  But they want to do something in motion

25   practice with regard to conflict.

30

1          MR. MARINO:  I asked them what they wanted.

2          THE COURT:  And so -- well, whatever it is --

3          MR. MARINO:  Well, because they --

4          THE COURT:  I'll see it when it's in writing.  And

5  I'm not going to argue with you now --

6          MR. MARINO:  They intimated that --

7          THE COURT:  -- as to whether they can -- the merits

8  of it.

9          MR. MARINO:  They intimated that they may seek my

10  disqualification as Mr. Gilmore's counsel.  I told them what --

11  let's -- what is the conflict that needs curing?  You could

12  have gone, at the time you signed the waivers and I represented

13  these people when they went to the grand jury, you could easily

14  have made an application at that point if you felt that there

15  was a disqualifiable or unwaivable conflict.  They made no such

16  application.  I've been representing the man literally for more

17  than a year since then.

18          But I have said to them, if you think it's somehow

19  going to advantage Mr. Gilmore or what have you to have me

20  represent those people, I will today seek to have another

21  lawyer represent them.

22          I'm not -- I'm trying to clear away the underbrush

23  because I think -- maybe I'm wrong about this, but I think and

24  always thought when the case goes to the grand jury and you get

25  that indictment, that's when you, the Government, are ready to

31

1  go.

2         THE COURT:  All right.  Just a minute.  Mr. Marino,

3  when do you want as a date?  Did we nail down the date for this

4  conflicts issue?

5         MR. SKAHILL:  February --

6         THE COURT:  All --

7         MR. SKAHILL:  February 1st, Your Honor.

8         THE COURT:  Yes.  All right.

9         MR. SKAHILL:  And I'd appreciate if we could file the

10  motion, not have Mr. Marino try to litigate now.  We've raised

11  this issue with him.  He's indicated he thinks it's a waivable

12  conflict.  We would like to file the motion, Your Honor.  It

13  may be waivable,  but we think it needs to go before the Court.

14  It is --

15         THE COURT:  You'll be able to file your papers by

16  February 1st?

17         MR. SKAHILL:  Absolutely.

18         THE COURT:  All right.  Fine.  Conflicts, February 1.

19  Now what about defense discovery?  Do you think you will have

20  anything to provide, Mr. Marino?

21         MR. MARINO:  I have provided them with discovery

22  before they went to get the indictment.  I gave them all the

23  photographs of Mr. Gilmore's hoard of property.  And I gave

24  them Dr. Simring's (phonetic) report.  And they're well

25  familiar with Dr. Simring since he testifies for them.

1        THE COURT:  All right.  So you don't think you have

2  anything --

3        MR. MARINO:  Not that I'm aware of.

4        THE COURT:  Okay.  All right.

5        MR. MARINO:  But the moment one -- a piece of

6  discovery becomes available that they're entitled to in the way

7  of reciprocal discovery, I'm very familiar with Rule 16 and

8  with my obligations.  And I will comply to a --

9        THE COURT:  By what date?

10        MR. MARINO:  Well, I don't think there's anything

11  right now, but if Your Honor sets a date of the 8th of

12  February, that's fine.

13        THE COURT:  All right.  Fine.  February 8th for

14  defense discovery under the rule.  All right.  Now what about

15  motions that you might want to file, Mr. Marino?  Give me a

16  date.  Pretrial motions that you might want to file.

17        MR. MARINO:  I think our pretrial motions can be

18  filed by -- well, I should ask the Court, I don't want to --

19  let me just say, other than motions in limine, I don't believe

20  I have a motion to file, other than motion in limine.  And

21  motions in limine, I would expect to be filed in the few days

22  before trial.

23        But in terms of pretrial motions, I'd like to know

24  what Your Honor -- Your Honor's pleasure is because I don't

25  want the pendency of the motions to affect the trial date.

33

1          THE COURT:  It won't affect --

2          MR. MARINO:  So I want to do it in a way that's

3     convenient for the Court.

4          THE COURT:  I will probably decide them when I hear

5     them.

6          MR. MARINO:  Okay.  Then if -- given that, Your

7     Honor, then March 1st is fine.

8          THE COURT:  All right.  March 1st.  And --

9          MR. MARINO:  With a response on the 8th and a reply

10    on the 15th if that is workable.

11          And I do have one question for the Court back on the

12    conflicts motion when it's convenient for Your Honor to hear.

13          THE COURT:  March 1st, defense motions.  March 8th,

14    the Government's response.  And that's one, two, three weeks

15    before trial.  So that should work.

16          MR. SKAHILL:  Yes, Your Honor.

17          THE COURT:  All right.  And then pretrial conference

18    on the 15th.

19          MR. MARINO:  I'll reply on that date as well, Your

20    Honor.

21          THE COURT:  I don't think a reply as being part of

22    the --

23          MR. MARINO:  -- schedule.  I understand.

24          THE COURT:  So when will the Government provide the

25    jury charge requests?

34

1          MR. SKAHILL:  Would Your Honor -- we'd obviously

2     accommodate whatever Your Honor's preference is in that regard,

3     Judge.

4          THE COURT:  Well, a couple of days before trial.

5          MR. SKAHILL:  Very good.

6          THE COURT:  So maybe the 25th or the 26th?

7          MR. SKAHILL:  Yes, Your Honor.

8          THE COURT:  And I think that's what both of you

9     should -- so let's say the 26th, both sides provide request to

10    charge.

11         All right.  Other mile posts?  You can't think of

12    anything else?

13         MR. SKAHILL:  Your Honor, we would, I suppose, submit

14    proposed voir dire questions at the same time as the jury

15    charge?

16         THE COURT:  Well, yes, either there or the first day

17    of jury selection, right, the 29th.

18         MR. SKAHILL:  Okay.

19         THE COURT:  I don't need to have that in advance.

20         Now, Mr. Marino, you were elucidating about this

21    conflict issue.

22         MR. MARINO:  I was, Your Honor.

23         THE COURT:  All right.  Let me hear you.

24         MR. MARINO:  So in my experience, before a motion is

25    made to the Court, it's -- I know this is part of our local

35

1  rules here and certainly it's been part of my practice forever,

2  to try to resolve the motion if it can be resolved before

3  putting it to the Court.  So I'd like to try to resolve

4  whatever issue they have with respect to conflict.  And it

5  would be certainly in Mr. Gilmore's interest, and I believe in

6  the interest of the Court and the Government as well for that

7  issue to be resolved as quickly as possible.

8       Obviously, all the people we're referring to

9  testified in the grand jury to my understanding.  And so we

10 have grand jury transcripts.  I'm told, I'll get this

11 transcripts.  And certainly if I were to represent Mr. Gilmore

12 at trial, which I well intend to do, I would be cross examining

13 these people based upon what statements they have.

14      Other than that, and Mr. Skahill has observed that he

15 certainly doesn't expect me to deviate from the rules of

16 professional conduct.  And I wouldn't think this Court would

17 expect that either.  So I don't know if they are serious about

18 wanting to try to disqualify me from the case, I would suggest

19 they ought to do that right now because if that's what's going

20 to happen and he's going to have his Speedy Trial rights, he

21 should get another lawyer today, okay?

22      If they're not going to do that and they don't want

23 me represent these people, they think it's unseemly or what

24 have you, if they're going to be witnesses, I'm happy to refer

25 them to another lawyer.  Their -- my representation of them

36

1  consisted in presenting them at Mr. Skahill's behest to testify
2  in the grand jury and debriefing them after that testimony.
3          So I suspect when I receive the grand jury testimony,
4  I will have probably a better account of what occurred than I
5  was able to get in my debriefing interviews right after they
6  came out of the grand jury room.  But I'd like to resolve this
7  issue.
8          I'd like obviously to have -- to avoid the motion.
9  And the reason to avoid the motion is really because, honestly,
10 undue work for everybody.
11         THE COURT:  I understand.  I understand.
12         MR. MARINO:  Thank you, Your Honor.
13         THE COURT:  Obviously, if lawyers can resolve an
14 issue that is a dispute, a fundamental dispute such as this,
15 without the Court being involved, that's fine.  And judges only
16 expect to be consulted when the parties are not able to resolve
17 it themselves.
18         If there's to be a motion to disqualify Mr. Marino,
19 understandably, that should be resolved as quickly as possible.
20 Will you be able to prepare and -- can we stick with the March
21 1st date for that, if it's to be in writing?
22         MR. SKAHILL:  February 1st, Your Honor.  Yes.
23         THE COURT:  I'm sorry.
24         MR. SKAHILL:  Yes, February 1st.
25         THE COURT:  The February 1st date.

37

1        MR. SKAHILL:  We will adhere to that date, Judge.

2        THE COURT:  All right.  If it can be resolved before

3  then, fine.  If it's to be on paper, then the due date is

4  February 1st, two weeks from today.  That's fine.

5        MR. MARINO:  Thank you.

6        THE COURT:  All right.  Anything else that the Court

7  -- bail.

8        MS. SUH:  Yes, Your Honor.

9        THE COURT:  What's the bail issue?

10       MS. SUH:  Consistent with pretrial services'

11  recommendation, the Government's position is that the defendant

12  be released pending trial on an unsecured bond amount of

13  $250,000 and the standard conditions of pretrial release as set

14  forth in their report.

15       MR. MARINO:  We've reviewed the report, Your Honor,

16  and have no objection to those conditions.

17       THE COURT:  Very well.  So ordered.  What about the

18  passport?

19       MR. MARINO:  It has already been provided to pretrial

20  services, Your Honor.

21       THE COURT:  Very well.

22       MR. MARINO:  And Mr. Gilmore has also agreed to an

23  reporting arrangement with pretrial services.

24       THE COURT:  Very well.  Thank you.  Anything else to

25  be taken up in this matter?

**WWW.JJCOURT.COM**

38

1          MS. SUH:  Nothing further from the Government, Your
2    Honor.

3          THE COURT:  Mr. Marino?

4          MR. MARINO:  Not for the defense, Your Honor.  Thank
5    you very much for your time this morning.  I guess it's late
6    for breakfast.

7          THE COURT:  All right.

8          COURTROOM DEPUTY:  All rise.

9                          * * * * *

10

11              **C E R T I F I C A T I O N**

12          I, VIDHYA VEERAPPAN, court approved transcriber,
13    certify that the foregoing is a correct transcript from the
14    official electronic sound recording of the proceedings in the
15    above-entitled matter, and to the best of my ability.

16

17

18    /s/ Vidhya Veerappan .

19    VIDHYA VEERAPPAN

20    J&J COURT TRANSCRIBERS, INC.        DATE:  January 23, 2019

21

22

23

24

25

**WWW.JJCOURT.COM**