# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| |
|---|
| **UNITED STATES OF AMERICA,** |
| **vs.** |
| **GEORGE GILMORE,** |
| **Defendant.** |

**Case No. 3:19-cr-00029-AET**

<u>**Oral Argument Requested**</u>

---

**MEMORANDUM OF LAW (1) IN SUPPORT OF DEFENDANT'S
CROSS-MOTION TO EXCLUDE EVIDENCE OF THE DETAILS OF HIS
PERSONAL EXPENDITURES OR, IF SUCH EVIDENCE IS PERMITTED,
(2) IN OPPOSITION TO THE GOVERNMENT'S MOTION TO EXCLUDE
THE EXPERT TESTIMONY OF STEVEN SIMRING, M.D.**

---

**MARINO, TORTORELLA & BOYLE, P.C.**
**437 Southern Boulevard**
**Chatham, New Jersey 07928-1488**
**(973) 824-9300**
*Attorneys for Defendant George Gilmore*

**On the Brief:**

    Kevin H. Marino, Esq.
    John D. Tortorella, Esq.
    John A. Boyle, Esq.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT .............................................................................1

LEGAL ARGUMENT ...........................................................................................5

I.      THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM
        INTRODUCING EVIDENCE OF THE DETAILS OF GILMORE'S PERSONAL
        EXPENDITURES. ........................................................................................5

    A.  Evidence Regarding The Details Of Gilmore's Personal Expenditures Is Not
        Relevant Under Federal Rule Of Evidence 401. ....................................6

    B.  The Court Should Exclude Evidence Regarding The Details Of Gilmore's
        Personal Expenditures Under Federal Rule Of Evidence 403.................9

II.     IF THE COURT DEEMS EVIDENCE OF THE DETAILS OF GILMORE'S
        PERSONAL EXPENSES ADMISSIBLE, DR. SIMRING'S TESTIMONY IS
        LIKEWISE ADMISSIBLE BECAUSE IT IS PROBATIVE TO NEGATE THE
        *MENS REA* ELEMENT OF A SPECIFIC INTENT CRIME. ...........................10

    A.  Expert Psychiatric Testimony Of A Defendant's Mental Disorder Is Admissible If
        It Is Probative To Negate The *Mens Rea* Element Of A Specific Intent Crime.................10

    B.  Dr. Simring's Testimony Is Probative To Negate The *Mens Rea* Element Of
        Willful Evasion Of Payment Of Taxes Because It Tends To Show That Gilmore
        Did Not Intend To Evade Payment Of Taxes Or Willfully Engage In Affirmative
        Acts To Further That Intent. ...............................................................13

        1.  The Mens Rea Element For Willful Evasion Of Payment Of Taxes Requires More
            Than Simply An Intent Not To Pay One's Taxes. .................................. 13

        2.  Dr. Simring's Testimony Will Tend To Show That Gilmore Did Not Intend To
            Evade Taxes Or Willfully Engage In Acts To Further That Intent.......................... 15

    C.  The Court Should Reject The Government's Secondary Attacks On Dr. Simring's
        Proposed Testimony. .........................................................................20

        1.  To Be Admissible, Dr. Simring's Testimony Need Only Be Relevant To Negating
            Mens Rea As To One Of The Specific Intent Crimes With Which Gilmore Is
            Charge. .............................................................................. 20

        2.  Dr. Simring's Opinions Are Not Based On Incorrect Factual Assumptions. ........... 21

3.  The Government's Belief That Dr. Simring's Expert Opinion Is Wrong Is Not A Basis To Preclude His Testimony. ........................................................................... 23

4.  Dr. Simring's Purported Reliance On Hearsay Is Not A Basis To Exclude His Testimony. ................................................................................................................ 23

CONCLUSION ........................................................................................................................24

## TABLE OF AUTHORITIES

**Cases**

Carter v. Hewitt,
   617 F.2d 961 (3d Cir. 1980) .......................................................................................... 9

Daubert v. Merrill Dow Pharmaceuticals, Inc.,
   509 U.S. 579 (1993)..................................................................................................... 22

John McShain, Inc. v. Cessna Aircraft Co.,
   563 F.2d 632 (3d Cir. 1977) .......................................................................................... 9

Johnson v. Duffy,
   855 F. Supp. 2d 311 (M.D. Pa. 2012)........................................................................ 22

Krys v. Aaron,
   112 F. Supp. 3d 181 (D.N.J. 2015) ............................................................................ 22

Sansone v. United States,
   380 U.S. 343 1004 (1965)............................................................................................. 3

Spies v. United States,
   317 U.S. 492 (1943)................................................................................................. 7, 21

Stecyk v. Bell Helicopter Textron, Inc.,
   295 F.3d 408 (3d Cir. 2002) ...................................................................................... 22

United States v. Baxt,
   74 F. Supp. 2d 436 (D.N.J. 1999) .................................................................. 11, 13, 21

United States v. LiButti,
   No. 92-611, 1994 U.S. Dist. LEXIS 19913 (D.N.J. Feb. 8, 1994) .................................. passim

United States v. McGill,
   964 F. 2d 222 (3d Cir. 1992) ............................................................................. 3, 6, 14

United States v. Mister,
   553 F. Supp. 2d 377 (D.N.J. 2008) ................................................................ 11, 13, 21

United States v. Pohlot,
   827 F.2d 889 (3d Cir. 1987) ........................................................................... 10, 11, 21

United States v. Scholl,
   166 F.3d 964 (9th Cir. 1999) ...................................................................................... 18

United States v. Shorter,
   618 F. Supp. 255 (D.D.C.1985) ................................................................................ 18

## Statutes

26 U.S.C. § 7201 ................................................................................ passim

26 U.S.C. § 7203 ................................................................................ 11, 19

Insanity Defense Reform Act,
  18 U.S.C. § 17 ................................................................................ 10, 11

## Rules

Fed. R. Evid. 401 ................................................................................ passim

Fed. R. Evid. 403 ................................................................................ passim

Fed. R. Evid. 702 ................................................................................ 13, 21

Fed. R. Evid. 703 ................................................................................ 24

## Other Authorities

1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 403(03) (1978) ......................................... 9

3d Cir. Model Jury Instructions, § 6.26.7201-3 ........................................................... 15

## PRELIMINARY STATEMENT

Defendant, George Gilmore ("Gilmore"), respectfully submits this memorandum of law in support of his cross-motion to exclude evidence of the details of his personal expenditures or, if that cross-motion is denied, in opposition to the Government's motion to exclude the testimony of Steven Simring, M.D.

Taken in tandem with its trial exhibit list and the evidence it placed before the grand jury, the Government's motion to exclude Dr. Simring's testimony reveals its intention to convince the jury to convict Gilmore of willfully evading payment of his taxes by simultaneously (1) painting him as a greedy materialist who accumulated and retained a hoard of frivolous items while failing to meet his tax obligations; and (2) preventing him from introducing the expert testimony of a noted psychiatrist that his accumulation and retention of that hoard are attributable to a diagnosed hoarding disorder rather than an attempt to evade payment of his taxes. The Government can't have it both ways. If (a) the details of Gilmore's personal spending—hundreds of thousands of dollars on Lionel model trains, vintage Coca-Cola machines, a slate roof, copper drains, ivory tusks and the like—are relevant to his alleged intent to evade payment of his income taxes under Fed. R. Evid. 401 (which they are not); and (b) the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice, confusing the issues or misleading the jury under Fed. R. Evid. 403 (which it undeniably is); then (c) expert testimony explaining that conduct as a symptom of his mental illness rather than willfulness is similarly relevant evidence of his intent, and also not unfairly prejudicial, confusing or misleading.

It is well settled that expert psychiatric testimony regarding a criminal defendant's mental disorder is admissible if it tends to show the absence of—and thus is probative to negate—the *mens rea* element of a specific intent crime. Here, one of the specific intent crimes with which Gilmore is charged is willful evasion of the payment of income taxes in violation of 26 U.S.C. §

1

7201.  The specific intent required for that offense is two-fold; the Government must prove both that Gilmore intended to evade payment of his income taxes and that he willfully performed affirmative acts designed to accomplish that evasion by misleading the Government or concealing his income.  Ignoring that requirement, the Superseding Indictment (the "Indictment") alleges that one of Gilmore's affirmative acts of tax evasion consisted, in whole or in part, of using funds available to him to make personal purchases and expenditures of the type described above rather than paying his taxes.  To underscore the point, the Indictment highlights some of the expenses the Government deems particularly egregious, including $380,000 on luxury fixtures for Gilmore's home and $520,000 on antiques, artwork and other collectibles, all of which the Government contends is probative of Gilmore's intent to evade payment of his taxes.  And as its trial exhibit list confirms, the Government intends to introduce voluminous documentary evidence regarding such expenditures, undoubtedly on the theory that those documents, and the lengthy testimony that is sure to accompany them, somehow demonstrate Gilmore's intent to evade payment of his taxes.

But if, as the Government contends, evidence detailing Gilmore's frivolous personal expenditures is relevant to demonstrating that he intended to evade payment of his income taxes, Dr. Simring's expert testimony is relevant to rebut that inference.  If the Government is permitted to execute its plan—to parade a host of witnesses before the jury not only to testify that Gilmore bought personal items rather than pay his taxes when due, but also to describe the unnecessary and expensive personal items he purchased and retained—Dr. Simring should in turn be permitted to explain how Gilmore's hoarding disorder compelled him to obsessively purchase such artifacts, artwork and other collectibles; to refuse to part with any of those items, even as his tax obligations mounted; and to make other expenditures to accommodate his collection mania even as the Government's investigation of him unfolded.  In that event, Dr. Simring's expert testimony would

2

rebut the Government's purported evidence of criminal intent by explaining why, to a reasonable degree of medical certainty, Gilmore's impulsion to make such frivolous purchases was a symptom of his mental disorder, not evidence of his intent to evade payment of his taxes.  In that scenario, Dr. Simring's testimony would be probative to negate the Government's purported proof of Gilmore's *mens rea*, and would thus be admissible.

But it should not come to that.  Expert testimony of Gilmore's hoarding disorder would be wholly unnecessary if the Government were precluded, as it should be, from introducing evidence of the details of his personal purchases—chosen selectively from among his many expenditures in the relevant tax years—to paint him as an irresponsible scoundrel.  The Government and a jury might find Gilmore's purchasing choices unpalatable, but wasting money rather than paying one's taxes on time is not a crime.  By definition, every taxpayer who fails to pay his taxes on time chose to spend his money on something other than taxes.  Yet not all such individuals are guilty of willful evasion of payment under 26 U.S.C. § 7201.  To convict one of that offense the Government must prove three elements: "1) the existence of a tax deficiency, 2) an affirmative act constituting an attempt to evade or defeat payment of the tax, and 3) willfulness."  United States v. McGill, 964 F.2d 222, 229 (3d Cir. 1992) (citing Sansone v. United States, 380 U.S. 343, 351 (1965)).  The Government is obviously aware of this, and of the weakness of its proofs—in this "rare" evasion of payment case—of "[a]ffirmative acts of evasion of payment," which traditionally consist of conduct such as "placing assets in the name of others, dealing in currency, causing receipts to be paid through and in the name of other or causing debts to be paid through and in the name of others."  McGill, 964 F. 2d at 230.  In place of such proofs, the Government hopes to substitute evidence of Gilmore's frivolous spending.

That should not be permitted, which is why Gilmore's cross-motion asks the Court to preclude the Government from introducing the *details* of his personal expenditures (as opposed to the *amount* of such expenditures, to which he will stipulate) under Rule 403.  Unexplained evidence that Gilmore's personal expenses included a host of costly items used in the construction of his home and large quantities of expensive collectibles, beyond being completely irrelevant to whether he intended to evade the payment of his taxes, would cast him as an irresponsible spendthrift.  Without an expert's opinion to offer the jury an alternative explanation for Gilmore's conduct, that irrelevant evidence would unfairly prejudice him, creating a risk that the jury would convict not because the Government proved its case, but because the jurors disdained Gilmore's unattractive and unexplained spending habits.

Permitting evidence of the details of Gilmore's profligate spending and inscrutable failure to part with his many possessions or suspend his home construction project would also risk confusing the issues and misleading the jury by improperly suggesting that it *is* a crime merely to spend one's money on costly personal items rather than to pay one's taxes, *which it is not*.  Finally, evidence regarding Gilmore's personal expenses would create undue delay, waste time, and be needlessly cumulative, as the Government intends to call numerous witnesses (including a vendor from California) and introduce thousands of pages of records regarding innumerable expenditures, none of which Gilmore disputes was personal in nature.

For the reasons outlined above and amplified below, the Court should grant Gilmore's cross-motion to exclude evidence regarding the details of his personal expenditures.  In the event the Court permits the introduction of such irrelevant (and in all events unduly prejudicial, confusing and misleading) evidence, the Court should deny the Government's motion to exclude Dr. Simring's testimony.

4

## LEGAL ARGUMENT

I.    **THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM INTRODUCING EVIDENCE OF THE DETAILS OF GILMORE'S PERSONAL EXPENDITURES.**

On March 7, 2019, the Government served its list of pre-marked trial exhibits (the "Exhibit List") (Exhibit A), together with copies of those exhibits.  That Exhibit List, particularly in light of the testimony presented to the grand jury that indicted Gilmore, reveals the Government's intention to devote a large portion of the trial—likely multiple days—to introducing evidence of specific personal expenditures Gilmore made rather than paying his taxes on time.  For example, the Government's proposed exhibits include thirty-one photographs of various luxury features Gilmore installed in his home during its construction, (Ex. A at 5-6 (GX100-GX130)), nearly 700 pages of the records of Paul O'Rorke, the project manager for the construction of Gilmore's home, (id. at 6-7 (GX200-GX213)), and various other records relating to expensive materials and furnishings for Gilmore's home, (id. at 7 (GX300-GX306)).   Similarly, the Government intends to introduce dozens of exhibits, totaling hundreds of pages, documenting Gilmore's many purchases of expensive antiques, artwork and collectibles, and his payment of other personal expenses, (id. at 7-9 (GX306A-GX333)), as well as numerous credit card statements detailing myriad personal expenses incurred by Gilmore and his wife, (id. at 18-21 (GX1200A-GX2600)).  The Government's Exhibit List also includes many summary charts and demonstratives further detailing and categorizing Gilmore's personal expenditures during the relevant time period.  (Id. at 25-26 (GX5001-GX5014A).)[1]  Finally, the Government advised Gilmore during the March 8,

---

[1] Attached hereto as Exhibit B is an annotated version of the Government's Exhibit List indicating those proposed exhibits that, on their face, relate only to the details of Gilmore's specific personal expenses; those exhibits are identified with X's in the columns bearings the headings "Identified" and "Admitted."

2019 pretrial conference in this matter that it intends to call multiple witnesses—including a vendor it will fly in from California—to testify about these documents and Gilmore's specific personal purchase and expenditures.

### A.  Evidence Regarding The Details Of Gilmore's Personal Expenditures Is Not Relevant Under Federal Rule Of Evidence 401.

The Government's trial strategy notwithstanding, evidence regarding the details of Gilmore's specific personal expenditures during the relevant time period has no tendency to make any fact of consequence to any of the crimes with which he is charged more or less likely to be true.  As a result, that evidence is not relevant under Rule 401 and must be excluded.

As a threshold matter, Gilmore's personal expenses have nothing to do with Counts 2 and 3 of the Indictment alleging that Gilmore filed false tax returns for calendar years 2013 and 2014, Counts 4 and 5 alleging that Gilmore failed to pay payroll taxes, and Count 6 alleging that Gilmore made false statements on a loan application.  No aspect of Gilmore's personal expenditures— either the total amount of those expenditures or the details of the specific expenditures—has any bearing on whether Gilmore (a) mischaracterized income as shareholder loans and thus filed false tax returns; (b) intentionally evaded payment of his law firm's payroll taxes; or (c) failed to disclose on a loan application that he had outstanding federal tax liabilities and loans from his law firm and others.

The only Count of the Indictment to which Gilmore's personal expenditures have any connection is Count 1, which charges him with willfully evading payment of income taxes in violation of 26 U.S.C. § 7201.  As demonstrated below, the *mens rea* element of that offense has two components: that Gilmore (a) intended to evade payment of his income taxes; and (b) willfully engaged in affirmative acts designed to further that intent by misleading the Government or concealing his income.  As the Third Circuit noted in McGill, typical acts of evasion of payment

6

include "placing assets in the name of others; dealing in currency; causing receipts to be paid through and in the name of others; and causing debts to be paid through and in the name of others." 964 F.2d at 230.  The Supreme Court elaborated on what type of conduct constitutes an affirmative act of evasion in <u>Spies v. United States</u>, 317 U.S. 492 (1943), explaining that an "affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal." <u>Id.</u> at 499.

Here, the Indictment does not allege that Gilmore engaged in any of these traditional acts of evasion, which involve hiding assets or placing them beyond the reach of the Government. Instead, the Government attempts to ground Gilmore's evasion of payment in his excessive spending on expensive and frivolous items.  To that end, the Indictment contends that Gilmore's significant personal expenditures between 2013 and 2015 are, at the least, a component of one alleged act of tax evasion:

> From at least in or about January 1, 2014 to in or about December 31, 2016, . . . [Gilmore] did willfully attempt to evade and defeat the payment of the substantial income tax . . . due and owing by him and his spouse to the IRS for calendar years 2013, 2014, and 2015, by committing the affirmative acts of tax evasion set forth below, among others:
>
> a.  concealing his income and the existence of funds available to pay his outstanding tax liabilities ***by using his law firm bank and credit card accounts to pay for personal expenses*** and by using his law firm bank accounts to obtain cash;

(Ex. C, Indictment, Count One, ¶ 5(a).)  Elaborating on that allegation, the Indictment further alleges that "[r]ather than making tax payments to the IRS for these calendar years [2013, 2014 and 2015], from in or about January 2014 to in or about December 2016, defendant GILMORE

spent over $2,500,000 on personal expenses," including "over $440,000 in antiques, artwork, furnishing and collectibles, including animal tusks," and "over $80,000 in collectible model trains." (*Id.*, ¶ 4.)

Thus, while the Government wishes to inflame the jury with a detailed recitation of Gilmore's luxury purchases, the only aspects of his personal expenditures that are relevant to any issue in this case are (a) his use of law firm credit cards and bank accounts to pay personal expenses; and (b) the total amount of those personal expenses. The details of any specific expense would only have relevance if Gilmore challenged the Government's characterization of it as personal. But Gilmore does not dispute that he routinely used his law firm's credit cards and bank accounts to pay personal expenses, or intend to challenge any specific expense the Government characterizes as personal or the total amount of those personal expenses. Ultimately, all that matters for the Government's theory of intent as to willful evasion of payment is that Gilmore used law firm accounts for personal expenses (a fact he does not dispute) and the total amount of those personal expenses (a sum he and the Government could likely agree upon). As a result, the details of any specific personal purchases he made have no tendency to make any fact of consequence more or less likely to be true. It would make no difference to any issue provable in this case if, rather than pay his taxes on time, Gilmore spent $80,000 on hospital bills instead of model trains.

Yet the Government apparently believes that the fact that a delinquent taxpayer spent his money on something it deems frivolous or opulent is somehow probative of an intent to evade payment of taxes. But the fact that an individual uses available funds on luxury home features or expensive artwork and collectibles, as opposed to something the Government might deem more worthy (such as a child's college tuition or a relative's medical bills), does not make it more or less likely that the individual had the specific intent to evade payment of taxes. As a result,

evidence detailing the specifics of Gilmore's personal expenses is irrelevant under Rule 401 and hence inadmissible.

### B. The Court Should Exclude Evidence Regarding The Details Of Gilmore's Personal Expenditures Under Federal Rule Of Evidence 403.

Even if the details of Gilmore's specific personal expenditures had some minimal relevance to any of the charged offenses, the probative value of such evidence would be substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and the needless presentation of cumulative evidence. The Court should thus exclude that evidence pursuant to Rule 403.

As the Third Circuit explained nearly forty years ago, evidence is unfairly prejudicial "if it has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir. 1980) (quoting Advisory Committee's Note, F.R.E.403).) Thus, evidence "is unfairly prejudicial if it 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish,' or otherwise 'may cause a jury to base its decision on something other than the established propositions in the case.'" Id. (quoting 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 403(03), at 403-15 to 403-17 (1978)). Determining whether evidence should be excluded as unfairly prejudicial under Rule 403 requires "[a] sensitive analysis of the need for the evidence as proof on a contested factual issue, of the prejudice which may eventuate from admission, and of the public policies involved." John McShain, Inc. v. Cessna Aircraft Co., 563 F.2d 632, 635 (3d Cir. 1977).

Here, allowing the Government to introduce voluminous evidence detailing the myriad luxury and other expensive items on which Gilmore spent money during the years he failed to pay his taxes would create significant risk of provoking the jury's instinct to punish him for doing so, thus leading to a verdict on an improper basis. Extensive evidence—including entirely

9

unnecessary and inflammatory photographs—that Gilmore spent significant sums on high-end features for his house and expensive artwork and collectibles while delinquent on his taxes would surely cast him in a negative light with the jury, painting him as a self-indulgent spendthrift who, instead of meeting his tax obligations, callously spent hundreds of thousands of dollars on exorbitant frivolities well beyond the means of the average person.  For obvious reasons, placing that evidence before the jury risks the possibility that it will convict Gilmore not because the evidence proves he committed any of the charged offenses, but rather to punish him for his extravagant lifestyle.  Moreover, the Government's presentation of voluminous evidence detailing Gilmore's personal expenditures is likely to confuse the issues and mislead the jury to conclude that he committed a crime by spending money on extravagant personal expenses rather than meeting his tax obligations.  Gilmore does not dispute that he made the expenditures at issue or that they were personal in nature, and would enter into a stipulation with the Government as to the total amount of his personal expenses.  That Gilmore spent money on personal expenses while not paying his taxes is relevant and undisputed.  But any relevance of his specific expenditures is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and the needless presentation of cumulative evidence.  The Court should therefore exclude that evidence pursuant to Rule 403.

II.   **IF THE COURT DEEMS EVIDENCE OF THE DETAILS OF GILMORE'S PERSONAL EXPENSES ADMISSIBLE, DR. SIMRING'S TESTIMONY IS LIKEWISE ADMISSIBLE BECAUSE IT IS PROBATIVE TO NEGATE THE *MENS REA* ELEMENT OF A SPECIFIC INTENT CRIME.**

   A.  **Expert Psychiatric Testimony Of A Defendant's Mental Disorder Is Admissible If It Is Probative To Negate The *Mens Rea* Element Of A Specific Intent Crime.**

   In United States v. Pohlot, 827 F.2d 889 (3d Cir. 1987), the Third Circuit held that the Insanity Defense Reform Act, 18 U.S.C. § 17, does not "bar all evidence of mental abnormality from the jury's consideration of mens rea," id. at 906, and "[d]istrict courts should admit evidence

10

of mental abnormality on the issue of mens rea only when, if believed, it would support a legally acceptable theory of lack of mens rea," id. at 905.   Accordingly, "[u]nder appropriate circumstances, expert psychiatric testimony of a defendant's mental abnormality may be admitted if it is probative to negate the defendant's criminal intent and to disprove an element of the specific intent crime itself." United States v. LiButti, No. 92-611, 1994 U.S. Dist. LEXIS 19913, *9 (D.N.J. Feb. 8, 1994) (citing Pohlot).  In other words, while the Insanity Defense Reform Act bars evidence of mental incapacity proffered merely to excuse or justify charged conduct, "[e]xpert testimony concerning a criminal defendant's alleged mental illness is admissible . . . if it is offered . . . to negate the mens rea element of an offense." United States v. Baxt, 74 F. Supp. 2d 436, 440 (D.N.J. 1999) (citing Pohlot).

Based on that settled law, the court in United States v. Mister, 553 F. Supp. 2d 377 (D.N.J. 2008), allowed the defendant to introduce "evidence of his mental condition, impaired intellectual functioning and suggestibility, to negate an element of the crimes charged by showing that he did not know the money he received was a bribe." Id.  In so ruling, the court explained that "the crimes charged . . . require not just proof of purposeful conduct, but also specific knowledge that the payments Defendant received on behalf of another were corrupt payments or bribes," id. at 384, and "[t]he evidence that Defendant has proffered that tends to show he has low intelligence and problems with perception is relevant to whether he gleaned from the circumstances that the payments were corrupt or bribes," id. at 385.

Similarly, the court in LiButti permitted the defendant to present limited expert psychiatric testimony regarding the effect of his pathological gambling disorder on his ability to form the requisite intent for the offense of willful failure to pay income taxes in violation of 26 U.S.C. § 7203.  1994 U.S. Dist. LEXIS 19913, at *6.  The defendant in LiButti sought to present, inter alia,

11

expert testimony that due to his compulsive gambling disorder, he mistakenly believed he had to pay the full tax amount due in one lump sum and could not make a partial payment:

> [T]he experts will testify that although Mr. LiButti understood his obligation to pay his taxes, he was not willful in failing to pay because he believed that he had to pay the full amount due, rather than a partial payment. The experts' opinion would be that LiButti, as a compulsive gambler, had the characteristic of the defective thought process common to pathological gamblers, namely that such a debt must be paid in full and that if the gambler had only enough funds to make a partial payment he would gamble those funds in the attempt to make full payment, always intending to repay. . . . Since LiButti never had sufficient cash or assets to pay his enormous federal income tax liability in one lump sum, this theory goes, he continued to gamble to win sufficient additional money to make payment in full, which never occurred.

Id. at *6. As the proposed psychiatrist expert explained, "[t]he mental disorder impacted on defendant's willfulness to not pay taxes due to the malignancy of the disorder; . . . if LiButti had $500,000 to pay IRS, he'd run to the casino trying to win the full $3 million tax liability, because he understood that part payment was unacceptable to the IRS." Id. at *32. The court permitted the psychiatrist to testify regarding that narrow "full payment" issue because there was a clear nexus between that testimony and the existence of the requisite *mens rea* for the offense of willful failure to pay taxes:

> Dr. Latimer has identified a relevant characteristic of the pathological thought process which may be helpful in assisting the jury to understand this one element of defendant's evidence negating willful failure to pay taxes: that a pathological gambler will not make partial payment upon a debt because he has the delusion that he must gamble to win a full amount to discharge the debt in a lump sum. . . . There is, in short, a "fit" between the expert's opinion on this narrow issue and the relevant disputed fact of defendant's intent to willfully fail to pay. If believed, these facts and opinions would support a valid legal theory negating intent to commit the crime of failure to pay his 1987 and 1988 taxes, because the defendant mistakenly believed that a partial payment was unacceptable to the IRS and he never had resources to make a full payment.

Id. at *32-33.

The <u>Mister</u> court made clear that the proffered mental-capacity evidence itself does not have to prove the absence of *mens rea* with certainty in order to be admissible:

> [T]he intelligence, perception and processing evidence are relevant to a fact at issue in the case, whether Defendant knew, at the time of the offense conduct, whether the payments were bribes.  The expert testimony is admissible, subject to Rules 702 and 403, because it is relevant.  ***Evidence does not have to prove a fact at issue with certainty to be relevant to that fact under Federal Rule of Evidence 401.  Nor does <u>Pohlot</u> require such a heightened standard for evidence of mental condition.***

553 F. Supp. 2d at 389 (emphasis added).  <u>Baxt</u> reinforces that principle, explaining that expert testimony adequately negates *mens rea* as long as it "tend[s] to prove" that the defendant did not act with the necessary specific intent.  74 F. Supp. 2d at 442.

In sum, under well-settled Third Circuit law, expert psychiatric testimony of a criminal defendant's mental disorder is admissible if it is relevant to negate the *mens rea* of a charged specific intent crime.  The expert testimony standing alone need not prove the absence of specific intent; rather, it is admissible as long as it tends to show that the defendant lacked the necessary *mens rea*.  Here, Dr. Simring's proposed testimony regarding Gilmore's hoarding disorder is relevant to whether he had the intent to evade payment of his income taxes and willfully engaged in affirmative acts designed to further that intent.

**B. Dr. Simring's Testimony Is Probative To Negate The *Mens Rea* Element Of Willful Evasion Of Payment Of Taxes Because It Tends To Show That Gilmore Did Not Intend To Evade Payment Of Taxes Or Willfully Engage In Affirmative Acts To Further That Intent.**

**1. *The Mens Rea Element For Willful Evasion Of Payment Of Taxes Requires More Than Simply An Intent Not To Pay One's Taxes.***

As summarized in his report dated November 30, 2018 (the "Simring Report"),[2] Dr. Simring's proposed testimony will demonstrate that the effects of Gilmore's hoarding disorder are

---

[2] The Simring Report is attached as Exhibit 1 to the Government's Moving Brief.

relevant to negating the requisite specific intent for the offense of willful evasion of payment of income tax under 26 U.S.C. § 7201.  As a result, tracing the contours of the *mens rea* element of that offense is critical to determining the admissibility of Dr. Simring's testimony.

As a threshold matter, the Government mischaracterizes the specific intent required for willful evasion of payment of income tax, suggesting that it need only prove that Gilmore intended not to pay his taxes:

> But nowhere does [Dr. Simring] explain how a hoarding disorder precludes a hoarder from forming ***the requisite "intent[]" to elect not to pay his tax bill.*** Nor does he explain how his hoarding diagnosis leads to his conclusion that Gilmore's failure to pay a tax debt was not "entirely" a willful act.  He offers no explanation at all of how a supposed difficulty in discarding possessions ***negates the otherwise intentional decision not to pay his federal taxes as opposed to other bills and financial obligations,*** then lie about his tax obligations and other, related issues.

(Br. at 13 (emphasis added).)  Thus, the Government reasons, Dr. Simring's proposed testimony is irrelevant because it "says nothing about [Gilmore's] intent not to pay federal income taxes," (id.), and does not explain "how a hoarding diagnosis . . . connects in any logical way to an inability to pay a single bill: federal taxes," (id. at 3).

The problem with that argument is that the specific intent the Government must prove to secure a conviction for willful evasion of payment of income tax under 26 U.S.C. § 7201 is *not* merely that Gilmore intended not to pay his taxes, or even that he intended to use his available funds to pay personal expenses other than his taxes.  As the Third Circuit made clear in McGill, "[m]erely failing to pay assessed taxes, without more, . . . does not constitute evasion of payment" because "[o]nly affirmatively evasive acts—acts intending to conceal—are punishable under § 7201."  964 F.2d at 231.  The Third Circuit's Model Jury Instructions on willful evasion of payment make the same point:

> The second element that the government must prove beyond a reasonable doubt is that (name) made an affirmative attempt to evade or defeat a tax.

14

The phrase "attempt to evade or defeat any tax" involves two things: ***first, the formation of an intent to evade or defeat a tax; and, second, willfully performing some act to accomplish the intent to evade or defeat that tax***.

The government must first prove beyond a reasonable doubt that (name) knew and understood that during the calendar year(s) (specify year(s)), (he)(she) had a tax deficiency. ***The government then must prove beyond a reasonable doubt that (name) intended to evade or defeat the tax due and that (name) also willfully did some affirmative act to try to accomplish this intent to evade or defeat that tax.***

***An affirmative act is an act done to mislead the government with respect to the amount of taxes due and owing for the year(s) in question or to conceal income to avoid the assessment or payment of a tax.***

(Ex. D, 3d Cir. Model Jury Instructions, § 6.26.7201-3 (emphasis added).)   Thus, (a) the Government must prove that Gilmore intended to evade payment of his taxes and willfully engaged in affirmative acts to accomplish that intent by misleading the Government or concealing income; (b) one of Gilmore's alleged affirmative acts of evasion consists, in whole or in part, of using available funds to purchase expensive artwork, artifacts and collectibles instead of to pay his taxes; and (c) Dr. Simring's testimony will explain that those purchases were the result of Gilmore's hoarding disorder and not willful acts in furtherance of an intent to evade payment of his taxes. As a result, if the Court denies Gilmore's cross-motion and permits the Government to introduce evidence regarding the details of Gilmore's personal expenses, Dr. Simring must also be permitted to rebut any inference that those expenses are evidence of an intent to evade payment of taxes.

### 2. Dr. Simring's Testimony Will Tend To Show That Gilmore Did Not Intend To Evade Taxes Or Willfully Engage In Acts To Further That Intent.

Like the psychiatrist in LiButti, Dr. Simring will provide narrowly-tailored expert testimony explaining why the defendant's mental abnormality tends to demonstrate that he did not have the requisite *mens rea* to commit the specific intent crime charged—here, willfully evading payment of income taxes under 26 U.S.C. § 7201.  As demonstrated above, the Indictment

15

ccc

expressly contends that one of the affirmative acts of tax evasion in which Gilmore knowingly engaged was using the funds available to him not to satisfy his tax obligations but instead to pay personal expenses.  (Ex. C, Indictment, Count One, ¶ 5(a) (alleging that one of Gilmore's affirmative acts of tax evasion was "concealing his income and the existence of funds available to pay his outstanding tax liabilities by using his law firm bank and credit card accounts to pay for personal expenses and by using his law firm bank accounts to obtain cash").)

As the Moving Brief makes clear, the Government believes that Gilmore's decision to use available funds for personal purchases instead of to pay his taxes itself constitutes an affirmative act of tax evasion, regardless of the accounts he used for those purchases.  In that regard, the Government argues that Dr. Simring's report does not negate the *mens rea* element of willfully evading payment of taxes because it does not "explain how a hoarding disorder precludes a hoarder from forming the requisite 'intent[]' to elect not to pay his tax bill" or "how a supposed difficulty in discarding possessions negates the otherwise intentional decision not to pay his federal taxes as opposed to other bills and financial obligations."  (Br. at 13.)  To the Government's thinking, "Gilmore may have been motivated to spend money that otherwise would have been available to pay his federal tax bill on expensive items he had a passion to collect," but that "says nothing about his intent not to pay federal taxes."  (Id.)

Dr. Simring's testimony will explain why Gilmore's decision to purchase unnecessary collectibles and spend money on other personal expenses to feed his collection mania was not entirely voluntary, and certainly not done with the intent to evade payment of his income taxes.[3] To the contrary, as Dr. Simring will testify, Gilmore felt compelled to make those personal

---

[3] Dr. Simring will also testify that Gilmore's hoarding disorder prevented him from selling the items he had collected, even as his tax debt and exposure to serious adverse consequences increased.

expenditures—despite intending to satisfy his tax obligations and knowing his failure to do so placed him at enormous risk—by his hoarding disorder.  Dr. Simring's report makes this clear:

> I believe that an understanding of Mr. Gilmore's compulsive hoarding goes a long way to explaining his otherwise irrational behavior of declaring taxes but not paying them, at the same time spending money to add to his collections and to complete construction of a luxury home. Instead of working off his debt, he kept accumulating piles of expensive junk, items that are of no value to him other than to look at them.  To make things worse, he is trying to complete the construction of a big, expensive home, in large part to have a place to house his possessions.

(Simring Report at 7 (Br., Ex. 1).)   As Dr. Simring explains, "[f]or George Gilmore, . . . collecting has taken on a life of its own.  Collecting has long ago overwhelmed his good judgment, and has taken over a large portion of his life."  (Id.)  Thus, Dr. Simring's expert testimony will adequately negate *mens rea* because it tends to prove that Gilmore did not act with the necessary specific intent to commit affirmative acts of tax evasion.

The Government argues that Dr. Simring's proposed testimony is no different from the "pathological gambling lifestyle" testimony Judge Simandle deemed inadmissible in LiButti.  (Br. at 8-9, 14-16.)  The Government reasons that just as the LiButti court did not permit broad expert testimony that the defendant's nonpayment of taxes was not willful because his gambling disorder caused him to place taxes at the bottom of his debt-repayment hierarchy, this Court should preclude Dr. Simring from testifying that Gilmore's use of funds to fuel his collection mania rather than to pay his taxes was a product of his hoarding disorder.  (Br. at 8-9, 14-16.)  The Government is mistaken for the simple reason that, in LiButti, unlike here, there was no nexus between the defendant's mental disorder and the alleged affirmative acts of tax evasion.

In LiButti, the defendant intended to have his expert psychiatrist testify that he "did not willfully fail to pay his taxes, despite having sizable income and resources, because as a compulsive gambler he had the mental disorder of assigning a pathological hierarchy to repayment

of debts," in which "no priority [was] assigned to the payment of taxes."  1994 U.S. Dist. LEXIS

19913, at *36-37.  The district court refused to allow that testimony because, inter alia, it simply

offered the defendant's gambling disorder as an excuse for his non-payment of taxes:

> the pathological gambling lifestyle issue does not relate to the issue of
> intent to avoid tax obligations as much as it is offered as an excuse or
> justification for failing to meet tax obligations.  Under this thesis, Mr.
> LiButti's negative hierarchy placing taxpaying last on the list would be the
> reflection of some mental defect rather than what it is: the product of a
> decision motivated by the compulsion to gamble. . . .
>
> Many people suffer from addictive disorders similar to compulsive
> gambling, such as drug addiction.  There is no more of a negation of mens
> rea to evade payment of taxes or to fail to pay taxes for the compulsive
> gambler who feels compelled to lose his money at the gaming tables than
> there is for the drug addict who feels compelled to lose his money at the
> crack house.  In either case, the lifestyle associated with the addiction
> cannot excuse non-payment.

Id. at *40-41.  Thus, the court held that the expert was "precluded from testifying about the alleged

pathological gambling lifestyle . . . and the compulsive gambler's decisionmaking process in

deciding to pay debts other than taxes, because such characteristics of compulsive gamblers speak

only to the issue of inappropriate behavior, and not the negation of criminal intent."  Id. at *41-42.

In LiButti, the defendant's use of funds to gamble rather than to pay his taxes was not part

of or connected to his alleged affirmative acts of tax evasion.[4]  LiButti, 1994 U.S. Dist. LEXIS

19913, at *33 n.14 (the acts of evasion were converting four Rolls Royces to cash and hiding the

defendant's ownership of two residences and a horse through straw owners).  Because there was

---

[4] The other cases on which the Government relies on this point are equally inapplicable.  In United
States v. Shorter, 618 F. Supp. 255 (D.D.C.1985), the proposed testimony was similar to that
rejected in LiButti, as well as "vague and contradictory."  Id. at 260-61.  In United States v. Scholl,
166 F.3d 964 (9th Cir. 1999), there was no suggestion that the expert's opinion, which "would
have been that compulsive gambling disorder makes one believe that he has lost more money than
he has won," id. at 971, explained why the defendant lacked the *mens rea* for the charged crime of
filing false returns.

no link between the defendant's gambling addiction and the acts of tax evasion, his expert's proffered testimony about his compulsive gambling lifestyle would have done nothing more than use his mental condition as an excuse for the nonpayment of his taxes.

Here, by contrast, the Government alleges that one of Gilmore's affirmative acts of tax evasion consisted, in whole or in part,[5] of his decision to use the funds available to him to purchase myriad collectible items and to make other expenditures related to those purchases rather than to pay his income taxes.  As a result, Dr. Simring's testimony regarding the effect of Gilmore's hoarding disorder on those very purchases and expenditures is linked directly to Gilmore's alleged affirmative acts of tax evasion and thus to the *mens rea* element of willful evasion of payment of taxes, contrary to the Government's assertion.  Dr. Simring's testimony will help explain why some of Gilmore's conduct that allegedly constitutes an affirmative act of evasion was not willful, and why Gilmore did not engage in it with the intent to evade payment of his income taxes.

Dr. Simring's testimony therefore will not offer Gilmore's hoarding disorder as an excuse for his nonpayment of taxes—unlike the gambling addiction testimony in LiButti—but will instead explain how that disorder tends to show that he lacked the *mens rea* necessary for the offense of willful evasion of payment of income taxes under 26 U.S.C. § 7201.[6]  As a result, there is most definitely a "fit" between Dr. Simring's expert opinion and a relevant issue of disputed fact:

---

[5] Whether the Government contends that Gilmore's use of funds for personal expenditures is itself an affirmative act of evasion or part of a larger act involving the use of firm credit cards and bank accounts for personal expenses is irrelevant.  Either way, Gilmore's expenditure of $520,000 on antiques, artwork and collectibles is alleged in the Indictment to be a critical component of his purported efforts to evade payment of taxes.

[6] For the same reasons, Dr. Simring's testimony would also be probative to negate the *mens rea* for the misdemeanor of willful failure to pay taxes under 26 U.S.C. § 7203, to the extent the Government argues that it is a lesser included offense of willful evasion of payment of taxes.

whether Gilmore engaged in certain of his alleged affirmative acts willfully and with the intent to evade payment of his income taxes.  See LiButti, 1994 U.S. Dist. LEXIS 19913, at *13.

Thus, if the Court finds evidence detailing the specifics of Gilmore's personal expenses to be relevant and otherwise admissible, it should also admit Dr. Simring's testimony to rebut any inference that those expenses are evidence of Gilmore's intent to evade payment of taxes.

### C.  The Court Should Reject The Government's Secondary Attacks On Dr. Simring's Proposed Testimony.

In addition to claiming that Dr. Simring's testimony is not probative to negate the *mens rea* element of willful evasion of payment of income tax, the Government advances various secondary arguments in an effort to bar his testimony.  For the reasons set forth below, those arguments are equally unavailing.

#### 1.  *To Be Admissible, Dr. Simring's Testimony Need Only Be Relevant To Negating Mens Rea As To One Of The Specific Intent Crimes With Which Gilmore Is Charge.*

The Government argues that Dr. Simring's opinions are incomplete and he should thus be precluded from testifying because the Simring Report addresses only the offense of willful evasion of payment of income tax in violation of 26 U.S.C. § 7201 (Count 1), and makes no attempt to negate the *mens rea* element of the Indictment's other counts.  (Br. at 3-4, 16-17.)  Moreover, the Government contends that the Court should preclude Dr. Simring's testimony because it does not, standing alone, prove that Gilmore lacked the requisite specific intent for each offense with which he is charged.  (Id. at 17 ("It in no way explains—let alone excuses—willfully filing false tax returns, willfully failing to pay federal payroll taxes, or knowingly making false statements on a loan application.").)  But mental-disorder evidence need not negate the *mens rea* element of every specific intent crime with which the defendant is charged in order to be admissible.  In LiButti, for example, the district court found mental-disorder expert testimony admissible as to one specific

20

intent crime (willful failure to pay taxes) despite finding it inadmissible as to another (willful evasion of payment of taxes).  1994 U.S. Dist. LEXIS 19913, at *33-35.

Further, the proffered evidence does not have to prove the absence of *mens rea* to be admissible.  Rather, it need only tend to show that the defendant did not act with the necessary specific intent.[7]  See Mister, 553 F. Supp. 2d at 389 ("The expert testimony is admissible, subject to Rules 702 and 403, because it is relevant.  Evidence does not have to prove a fact at issue with certainty to be relevant to that fact under Federal Rule of Evidence 401.  Nor does Pohlot require such a heightened standard for evidence of mental condition."); see also Baxt, 74 F. Supp. 2d at 442 (explaining that expert testimony adequately negates *mens rea* "by tending to prove" its absence).

### 2. *Dr. Simring's Opinions Are Not Based On Incorrect Factual Assumptions.*

The Government argues that "Dr. Simring's proposed opinions fail Rule 702's reliability test . . . . [b]ecause his conclusions rest on certain incorrect factual assumptions central to this case." (Br. at 10.)  Specifically, the Government points to Dr. Simring's factual assumptions that Gilmore (a) "'always reported [his taxes] accurately;'" (b) did not "'engage[] in any fraudulent practices'"; and (c) has never "'failed to acknowledge his tax obligation.'"  (Id. (quoting Simring

---

[7] The Government argues that Dr. Simring's proposed testimony is also defective because (a) his opinion "does not exclude tax evasion as one of Gilmore's motives;" and (b) the Government "does not [] have to show that the defendant's affirmative acts were carried out for no other purpose besides tax evasion." (Br. at 15 (quoting Spies, 317 U.S. at 500).)  In fact, the Government claims that Dr. Simring admits that Gilmore's hoarding disorder is, at best, a partial motive for his conduct, as "he concludes that Gilmore's failure to pay his tax bill was '*not* . . . *entirely* intentional and voluntary' and that his purported hoarding disorder '*goes a long way*' to explaining his behavior."  (Id. at 15-16 (quoting Simring Report at 6-7) (emphasis and alteration in original).)  But Dr. Simring's testimony that Gilmore's hoarding disorder tends to disprove *mens rea* is not defective simply because he does not suggest that the disorder entirely disproves *mens rea*.  His opinion is relevant on the subject and is for that reason admissible.

Report at 2).)[8]  The Government argues that "[t]hese assumptions are wrong," and the evidence they are wrong is that the Indictment alleges that Gilmore did, in fact, file false returns and engage in fraudulent practices, consisting of falsely classifying income as shareholder loans and making false statements to the IRS and a bank.  (Id.)

That argument goes to weight, not admissibility.  Dr. Simring's opinion is based on certain assumptions the Government claims are erroneous, and it will have the opportunity to make that point on cross examination.  Gilmore is confident that Dr. Simring's assumptions will be borne out at trial just as the Government is confident that they will not.  But it is elemental that an expert's opinion does not become inadmissible because it is based on assumptions that can be challenged at trial.  See, e.g., Krys v. Aaron, 112 F. Supp. 3d 181, 195 n.15 (D.N.J. 2015) (explaining that "an expert may 'base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion' rests with the jury, and presents 'proper subject for cross-examination'") (quoting Johnson v. Duffy, 855 F. Supp. 2d 311, 320 (M.D. Pa. 2012)).  Indeed, the Third Circuit has explained that "Rule 705, together with Rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross examination."  Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002).  And as the Supreme Court noted in Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the

---

[8] The Government also finds important that Dr. Simring's Report, which was written before the Indictment was returned, states, "Significantly, the IRS has not suggested that [Gilmore] failed to report any income."  (Br. at 10 (quoting Simring Report at 2).)  That Gilmore is now alleged to have engaged in other misconduct has no bearing on Dr. Simring's core opinion that Gilmore's hoarding disorder tends to show that he did not possess the requisite specific intent to commit certain of the alleged affirmative acts of evasion of payment.

burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. at 596.

### 3. The Government's Belief That Dr. Simring's Expert Opinion Is Wrong Is Not A Basis To Preclude His Testimony.

At one point in its Moving Brief, the Government expresses disagreement with Dr. Simring's opinion that Gilmore suffers from a hoarding disorder, stating "[h]oarders usually do not compulsively acquire solely expensive, collectible items, then spend even more on separate storage facilities for those items. That's not hoarding—that's collecting." (Br. at 12.) Later, the Government offers its opinion that "[n]one of the diagnostic criteria [for hoarding disorder] relied on by Dr. Simring suggests that hoarders are unable to pay for things as a result of their condition." (Id. at 14.) Clearly, the Government believes that Dr. Simring should be precluded from testifying simply because it does not agree with his expert opinion. But the Government cites no authority, because none exists, for the proposition that an expert's testimony should be barred because the opposing party disagrees with his opinion. To the contrary, the proper course is for the adversary to engage its own expert to provide a competing opinion, as the government did in LiButti.

### 4. Dr. Simring's Purported Reliance On Hearsay Is Not A Basis To Exclude His Testimony.

As its final argument, the Government contends that the Court should preclude Dr. Simring from testifying because "[h]is report includes numerous otherwise inadmissible hearsay assertions unrelated to his analysis," (Br. at 17), pointing to those portions of the Simring Report that discuss Gilmore's statements that he never filed false tax returns, always accurately reports his income on his returns, would not hide income or evade paying his taxes, and had resolved prior IRS debts civilly but was unable to secure such a resolution in this instance, (id. at 18-19 (quoting Simring Report at 2, 5)). The Government is mistaken. The Federal Rules of Evidence expressly permit an expert to base his opinion on otherwise inadmissible evidence if (a) experts in the field would

23

reasonably rely on that type of information in forming an opinion; and (b) the information's probative value substantially outweighs any prejudicial effect.  Specifically, Rule 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Federal Rule of Evidence 703.  Here, psychiatrists routinely rely on a patient's statements in forming an opinion as to whether that person suffers from a mental disorder that affects his decisions and conduct.  If the Government has a basis to dispute Gilmore's statements on which Dr. Simring relied, it will be able to challenge Dr. Simring's opinion on cross examination.

## CONCLUSION

For the reasons set forth above, the Court should grant Defendant George Gilmore's cross-motion to exclude evidence regarding the details of his personal expenses and, if it does not, should deny the Government's motion to exclude Dr. Simring's expert testimony.

Dated: March 14, 2019                    Respectfully submitted,

                                         MARINO, TORTORELLA & BOYLE, P.C.
                                         *Attorneys for Defendant George Gilmore*

                                   By:   _____
                                         KEVIN H. MARINO

# EXHIBIT A



U.S. Department of Justice
*United States Attorney*
*District of New Jersey*

| | |
|---|---|
| *CAMDEN FEDERAL BUILDING & U.S. COURTHOUSE* | *856/757-5026* |
| *401 Market Street, 4th Floor* | *Fax: 856/968-4917* |
| *Post Office Box 2098* | *Direct Dial: 856/968-4929* |
| *Camden NJ  08101-2098* | |

March 7, 2019

**<u>Via Courier</u>**
Kevin H. Marino, Esq.
John A. Boyle, Esq.
John D. Tortorella, Esq.
Marino, Tortorella & Boyle, P.C.
437 Southern Boulevard
Chatham, New Jersey 07928-1488

        Re:    <u>United States v. George Gilmore, Cr. 19-029 (AET)</u>

Dear Messrs. Marino, Boyle, and Tortorella:

        Enclosed please find a flash drive containing the Government's exhibits for trial and the Government's draft exhibit list.  This includes the following additional disclosures by the Government: exhibits 100, 101, 314, 327-A, 327-B, and 327-C.  The password for the flash drive will be sent by email.  The Government reserves the right to supplement its draft exhibit list and exhibits prior to trial.

        Please be further advised that: (1) IRS certified versions of Exhibits 10-45 will be produced prior to trial and used at trial; (2) exhibit 3100 is a color version of previously produced records with three additional pages; and (3) exhibit 11 is a version of previously produced records that had a missing page (page 15).  The exhibit list also contains summary charts (with backup documentation), which have been marked draft.  The Government reserves its right to amend and supplement the draft summary chart exhibits prior to trial.

        Very truly yours,

        RACHAEL A. HONIG
        Attorney for the United States
        Acting Under Authority Conferred by <u>28 U.S.C. § 515</u>

By:                      
        MATTHEW J. SKAHILL
        JIHEE G. SUH
        Assistant United States Attorneys

Enc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA | : | Hon. Anne E. Thompson |
| | : | |
| v. | : | Crim. No. 19-029 |
| | : | |
| GEORGE GILMORE | : | **GOVERNMENT EXHIBIT LIST** |

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| | **Stipulations** | | |
| 1 | [Stipulations] | | |
| | **IRS Records** | | |
| 10 | Form 1040 for George and Joanne Gilmore - 2013 | | |
| 11 | Form 1040 for George and Joanne Gilmore - 2014 | | |
| 12 | Form 1040 for George and Joanne Gilmore - 2015 | | |
| 13 | Literal Transcript for Form 1040 for George and Joanne Gilmore - 2013 | | |
| 14 | Literal Transcript for Form 1040 for George and Joanne Gilmore - 2014 | | |
| 15 | Literal Transcript for Form 1040 for George and Joanne Gilmore - 2015 | | |
| 16 | IRS TXMODA Form - 2013 | | |
| 17 | IRS TXMODA Form - 2014 | | |
| 18 | IRS TXMODA Form - 2015 | | |
| 19 | INTST Transcript for Form 1040 for George and Joanne Gilmore - 2013 as of Dec. 31, 2016 | | |
| 20 | INTST Transcript for Form 1040 for George and Joanne Gilmore - 2014 as of Dec. 31, 2016 | | |

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 21 | INTST Transcript for Form 1040 for George and Joanne Gilmore - 2015 as of December 31, 2016 | | |
| 22 | Notice of Federal Tax Lien (NFTL) for Form 1040 for George and Joanne Gilmore - 2013 filed in Ocean County, NJ | | |
| 23 | Notice of Federal Tax Lien (NFTL) for Form 1040 for George and Joanne Gilmore - 2014  filed in Ocean County, NJ | | |
| 24 | Notice of Federal Tax Lien (NFTL) for Form 1040 for George and Joanne Gilmore - 2015  filed in Ocean County, NJ | | |
| 25 | Notice of Federal Tax Lien (NFTL) for Form 1040 for George and Joanne Gilmore - 2013 & 2014  filed in Stroudsburg, PA | | |
| 26 | AMS View Detail Information for Form 1040 for George and Joanne Gilmore dated 11/19/2014 & 11/21/2014 | | |
| 27 | ICS History Transcript for George and Joanne Gilmore | | |
| 28 | Archive History Transcript for George and Joanne Gilmore | | |
| 29 | Form 1120 for Gilmore & Monahan, P.A. - 2013 | | |
| 30 | Form 1120 for Gilmore & Monahan, P.A. - 2014 | | |
| 31 | Form 1120 for Gilmore & Monahan, P.A. - 2015 | | |
| 32 | Literal Transcript for Form 1120 for Gilmore & Monahan, P.A. - 2013 | | |
| 33 | Literal Transcript for Form 1120 for Gilmore & Monahan, P.A. - 2014 | | |

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---|---|---|---|
| 34 | Literal Transcript for Form 1120 for Gilmore & Monahan, P.A. - 2015 | | |
| 35 | Form 941 for Gilmore & Monahan, P.A. - First Quarter, 2016 | | |
| 36 | Form 941 for Gilmore & Monahan, P.A. - Second Quarter, 2016 | | |
| 37 | Literal Transcript for Form 941 for Gilmore & Monahan, P.A. - First Quarter, 2016 | | |
| 38 | Literal Transcript for Form 941 for Gilmore & Monahan, P.A. - Second Quarter, 2016 | | |
| 39 | Notice of Federal Tax Lien (NFTL) for Form 941 for Gilmore & Monahan, P.A. - First Quarter, 2016 | | |
| 40 | Notice of Federal Tax Lien (NFTL) for Form 941 for Gilmore & Monahan, P.A. - Second Quarter, 2016 | | |
| 41 | ICS History Transcript for Gilmore & Monahan, P.A. | | |
| 42 | Archive History Transcript for Gilmore & Monahan, P.A. | | |
| 43 | Form 1065 for George Gilmore & Thomas Monahan PTR - 2013 | | |
| 44 | Form 1065 for George Gilmore & Thomas Monahan PTR - 2014 | | |
| 45 | Form 1065 for George Gilmore & Thomas Monahan PTR - 2015 | | |
| 46 | Form 4549-A Income Tax Examination Changes | | |
| 60-A | IRS letter dated 5/23/11 to Gilmore & Monahan, P.A. signed for by George Gilmore with Notice 931 | | |
| 60-B | Publication 966 | | |

3

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 60-C | Publication 3151 | | |
| 61 | IRS letter dated 6/21/11 to Gilmore & Monahan, P.A. | | |
| 62-A | Summary of Taxpayer Contact 8/11/2011 | | |
| 62-B | Form 2481 | | |
| 62-C | Form 941-M | | |
| 63-A | IRs letter dated July 8, 2013 letter to George Gilmore and signed by Gilmore | | |
| 63-B | Publication 1 | | |
| 63-C | Publication 954 | | |
| 63-D | Publication 1660 | | |
| 64 | Summary of Taxpayer Contact | | |
| 65 | Summary of Taxpayer Contact dated 9/19/2014 | | |
| 66 | Summary of Taxpayer Contact dated 4/7/2015 | | |
| 67 | Letter from IRS to George and Joanne Gilmore dated 7/30/2015 | | |
| 68 | Summary of Taxpayer Contact dated 8/11/2015 | | |
| 69 | Summary of Taxpayer Contact dated 8/13/2015 | | |
| 70 | Summary of Taxpayer Contact dated 10/1/2015 | | |
| 71 | 4 page fax dated 10/19/15 with attachments | | |
| 72 | 1 page of notes | | |
| 73 | IRS Form 2287 | | |
| 74 | IRS Form 433-A | | |
| 75 | IRS Form 433-B | | |

4

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| | **Other Tax Records** | | |
| 90 | Township of Toms River property tax records | | |
| | **Photographs** | | |
| 100 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 101 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 102 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 103 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 104 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 105 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 106 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 107 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 108 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 109 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 110 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 111 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 112 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 113 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 114 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 115 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 116 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 117 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 118 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 119 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 120 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 121 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 122 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 123 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 124 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 125 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 126 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 127 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 128 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 129 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| 130 | Photograph of 15 Cranmoor Drive, Toms River, NJ | | |
| | **Business records related to expenses** | | |
| 200 | March 10, 2009 Contract between O'Rorke and George Gilmore | | |
| 201 | O'Rorke Invoices for Gilmore | | |
| 202 | O'Rorke Payment Ledger 2011 | | |
| 203 | O'Rorke Payment Ledger 2012 | | |
| 204 | O'Rorke Payment Ledger 2014 | | |
| 205 | O'Rorke Payment Ledger 2015 | | |
| 206 | O'Rorke Payment Ledger 2016 | | |
| 207 | O'Rorke's 2010 Day Planner | | |

6

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 208 | O'Rorke's 2011 Day Planner | | |
| 209 | O'Rorke's 2012 Day Planner | | |
| 210 | O'Rorke's 2013 Day Planner | | |
| 211 | O'Rorke's 2014 Day Planner | | |
| 212 | O'Rorke's 2015 Day Planner | | |
| 213 | O'Rorke's 2016 Day Planner | | |
| 300 | ACD Custom Granite records | | |
| 301 | All-Star Electric records | | |
| 301-A | All-Star Electric - invoices payments (2014-2016) | | |
| 302 | Alpen Antiques records | | |
| 303 | ASAP Pools records | | |
| 304 | Atlantic Plumbing records | | |
| 305 | Blue Water Pool records | | |
| 306 | Bradford's Antiques records | | |
| 306-A | Bradford's Antiques - invoices and list of transactions | | |
| 307 | By Nature Gallery records | | |
| 307-A | By Nature Gallery - invoices | | |
| 308 | Cerami Lawns records | | |
| 309 | Compass Ironworks records | | |
| 310 | Eagle Ridge Golf Club records | | |
| 311 | Erickson Woodworking records | | |

7

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 312 | G Keener & Co. records | | |
| 313 | Global Care Services Inc. records | | |
| 314 | Greenstone Slate records | | |
| 315 | Hamari Design records | | |
| 315-A | Hamari Design - invoice dated July 9, 2014 | | |
| 315-B | Hamari Design - photo | | |
| 315-C | Hamari Design - photo | | |
| 315-D | Hamari Design - photo | | |
| 315-E | Hamari Design - photo | | |
| 315-F | Hamari Design - photo | | |
| 315-G | Hamari Design - photo | | |
| 316 | Hi-Fi Sales records | | |
| 317 | International Stone records | | |
| 317-A | International Stone - contract, sales records, payment | | |
| 318 | Katonah Architecture records | | |
| 318-A | Katonah Architecture - invoices | | |
| 319 | Mark Sauer Contracting records | | |
| 320 | Martin Visnick/Clickety Clack Toys records | | |
| 321 | Matthew Hatala records | | |
| 322 | Olde Good Things records | | |
| 323 | Owen Henry Records records | | |
| 324 | Piece Art Gallery records | | |

8

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 325 | Riverton Custom Pool records | | |
| 325-A | Riverton Custom Pool – account report, receipts, contract dated Nov. 13, 2014 | | |
| 325-B | Riverton Custom Pool – contract emailed Jan. 31, 2014 | | |
| 326 | Scrimshaw Gallery records | | |
| 327 | Solaris Residence/Gemini Solaris records | | |
| 327-A | Solaris Residence Inn website records | | |
| 327-B | Solaris Residence Inn photographs | | |
| 327-C | Solaris Residence Inn video | | |
| 328 | Solinglass records | | |
| 329 | The Knox Galleries records | | |
| 330 | The Piano Exchange records | | |
| 331 | The Village at Camelback records | | |
| 332 | Toms River Heating records | | |
| 333 | Wallace & Sons records | | |
| | **Gilmore & Monahan, P.A. Records** | | |
| 400 | Gilmore & Monahan, P.A. General Ledger 2013 | | |
| 401 | Gilmore & Monahan, P.A. General Ledger 2014 | | |
| 402 | Gilmore & Monahan, P.A. General Ledger 2015 | | |
| 403 | Gilmore & Monahan, P.A. General Ledger through July 31, 2016 | | |
| 404 | Gilmore & Monahan, P.A. Trial Balance 2013 | | |

9

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 405 | Gilmore & Monahan, P.A. Trial Balance 2014 | | |
| 406 | Gilmore & Monahan, P.A. Trial Balance 2015 | | |
| 407 | Gilmore & Monahan, P.A. Trial Balance through July 31, 2016 | | |
| 408 | Gilmore & Monahan, P.A. Balance Sheet 2012 | | |
| 409 | Gilmore & Monahan, P.A. Balance Sheet 2013 | | |
| 410 | Gilmore & Monahan, P.A. Balance Sheet 2014 | | |
| 411 | Gilmore & Monahan, P.A. Balance Sheet 2015 | | |
| 412 | Gilmore & Monahan, P.A. Balance Sheet 2016 | | |
| 413 | 1240 GRG General Ledger | | |
| 414 | 1245 GRG General Ledger | | |
| 415 | 1250 TEM General Ledger | | |
| 416 | American Express credit card records related to account ending in 5-36007 (2013) | | |
| 417 | American Express credit card records related to account ending 5-36007 (2014) | | |
| 418 | American Express credit card records related to account ending 5-36007 (2015) | | |
| 419 | American Express credit card records related to account ending 5-36007 (2016 through July) | | |
| 420 | Gilmore & Monahan, P.A Income Statement period ending Dec. 31, 2013 | | |
| 421 | Gilmore & Monahan, P.A Income Statement period ending Dec. 31, 2014 | | |

DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 422 | Gilmore & Monahan, P.A Income Statement period ending Dec. 31, 2015 | | |
| 423 | Gilmore & Monahan, P.A Income Statement period ending July 31, 2016 | | |
| | **Koerner & Koerner Records** | | |
| 500 | Dec. 28, 2000 Letter to George Gilmore and Thomas Monahan | | |
| 501 | Oct. 3, 2002 Letter to George Gilmore | | |
| 502 | Dec. 9, 2002 Letter to George Gilmore | | |
| 503 | Letter to George Gilmore and Thomas Monahan dated September 15, 2003 | | |
| 504 | Letter to George Gilmore and Thomas Monahan with post it note (hand delivered July 28, 2004) | | |
| 505 | Letter to George Gilmore and Thomas Monahan dated Sep. 16, 2004 | | |
| 506 | Invoices | | |
| | **Withum Smith & Brown Records** | | |
| 600 | 2013 Gilmore & Monahan Trial Balance with AJE | | |
| 601 | 2014 Gilmore & Monahan Trial Balance with AJE | | |
| 602-A | 2015 Gilmore & Monahan Trial Balance with AJE | | |
| 602-B | 2015 Gilmore & Monahan Trial Balance with AJE | | |
| 603 | 2015 Gilmore & Monahan Trial Balance Combined Detail | | |
| 604 | 2013 Gilmore & Monahan Balance Sheet | | |
| 605 | 2014 Gilmore & Monahan Balance Sheet | | |

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 606 | 2015 Gilmore & Monahan Balance Sheet | | |
| 607 | Gilmore & Monahan General Ledger 2013 | | |
| 608 | Gilmore & Monahan General Ledger 2014 | | |
| 609 | Gilmore & Monahan General Ledger 2015 | | |
| 610 | Form 941 Materials 2016, First Quarter | | |
| 611 | Form 941 Materials 2016, Second Quarter | | |
| 612 | Email dated September 11, 2013 | | |
| 613 | Subpoena to Hutchins, Farrell, Meyer & Allison, P.A., and Withum Smith & Brown, PC and related emails confirming receipt | | |
| 614 | Withum Smith & Brown workpapers and IRS Internal Revenue Bulletin | | |
| **Business Records (bank)** | | | |
| 700 | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2013: signature card and monthly statements | | |
| 700-A | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2013: checks | | |
| 700-B | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2013: deposits | | |
| 700-C | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2013: wires | | |
| 701 | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2014: monthly statements | | |

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 701-A | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2014: checks | | |
| 701-B | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2014: deposits | | |
| 701-C | Check no. 1901 dated October 15, 2014 for $493,526 made payable to United States Treasury | | |
| 701-D | Ocean First Bank records related to George and Joanne Gilmore personal account ending -9574: checks from late November 2014 through January 2015 | | |
| 702 | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2015: monthly statements | | |
| 702-A | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2015: checks | | |
| 702-B | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2015: deposits | | |
| 702-C | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2016: monthly statements (with checks) | | |
| 702-D | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2016: deposits | | |
| | | | |
| 703 | Ocean First Bank records related to Gilmore & Monahan, P.A. business account ending -3906 for 2013: signature card and monthly statements | | |

13

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 703-A | Ocean First Bank records related to Gilmore & Monahan, P.A. business account ending -3906 for 2013: checks | | |
| 703-B | Ocean First Bank records related to Gilmore & Monahan, P.A. business account ending -3906 for 2013: deposits | | |
| 703-C | Ocean First Bank records related to Gilmore & Monahan, P.A. business account ending -3906 for 2013: wires | | |
| 704 | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending -3906 for 2014: monthly statements | | |
| 704-A | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending -3906 for 2014: checks | | |
| 704-B | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending -3906 for 2014: deposits | | |
| 705 | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending -3906 for 2015: monthly statements and checks | | |
| 705-A | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending -3906 for 2015: checks only | | |
| 705-B | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending -3906 for 2015: bank checks | | |
| 705-C | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending -3906 for 2015: deposits | | |

14

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---|---|---|---|
| 705-D | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending - 3906 for 2015: wires | | |
| 706 | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3906 for 2016: monthly statements and checks | | |
| 706-A | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3906 for 2016: bank check | | |
| 706-B | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3906 for 2016: deposits | | |

| | | | |
|---|---|---|---|
| 707 | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2013: signature card and statements | | |
| 707-A | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2013: signature card, monthly statements, checks | | |
| 707-B | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2013: deposits | | |
| 708 | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2014: monthly statements | | |
| 708-A | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2014: checks | | |
| 708-B | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2014: deposits | | |

15

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 708-C | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2014: wire | | |
| 709 | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2015: monthly statements with checks | | |
| 709-A | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2015: checks | | |
| 709-B | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2015: deposits | | |
| 710 | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2016: monthly statements with checks | | |
| 710-A | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2016: deposits | | |
| | | | |
| 711 | Ocean First Bank records related to JG Associates account ending -2809 for 2014 | | |
| 711-A | Ocean First Bank records related to JG Associates account ending -2809 for 2015 | | |
| 711-B | Ocean First Bank records related to JG Associates account ending -2809 for 2016 | | |
| | | | |
| 712 | Uniform Residential Loan Application Nov. 2014 | | |
| 713 | Uniform Residential Loan Application Jan. 2015 | | |
| 714 | Refinance Purpose Letter | | |

16

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 715 | HUD-1 Settlement Statement | | |
| 716 | Underwriter Summary | | |
| | | | |
| 800 | Bank of America account records relating to George Gilmore account ending -7614 for 2014-2016: monthly statements and checks | | |
| | | | |
| 900-A | JP Morgan Chase Bank account records relating to George Gilmore and Joanne Gilmore account ending -4426 for 2014-2016: signature card, account statements, checks, and deposits | | |
| 900-B | JP Morgan Chase Bank account records relating to JG Associates account ending -5620 for 2013-2014: signature card, account statements, checks, and deposits | | |
| | | | |
| 1000 | TD Bank records related to Gilmore & Monahan, P.A. account ending -0044: monthly statements | | |
| | | | |
| 1100 | Harmony Bank/Lakeland Bank records related to Gilmore & Monahan, P.A. account ending -6277 | | |
| 1100-A | Harmony Bank/Lakeland Bank records related to GRMS Associates account ending -1830 | | |
| 1100-B | Harmony Bank/Lakeland Bank records related to Gilmore & Monahan, P.A., account ending -0613 | | |
| 1100-C | Harmony Bank/Lakeland Bank records related to George and Joanne Gilmore account ending -0465 | | |
| | **Business Records (credit cards)** | | |

17

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 1200-A | American Express credit card records relating to George Gilmore account ending 8-01003 for 2013 | | |
| 1200-B | American Express credit card records relating to George Gilmore account ending 8-01003 for 2014 | | |
| 1200-C | American Express credit card records relating to George Gilmore account ending 8-01003 for 2015 | | |
| 1200-D | American Express credit card records relating to George Gilmore account ending 8-01003 for 2016 | | |
| 1300-A | American Express credit card records relating to George Gilmore account ending 3-31005 for 2013 | | |
| 1300-B | American Express credit card records relating to George Gilmore account ending 3-31005 for 2014 | | |
| 1300-C | American Express credit card records relating to George Gilmore account ending 3-31005 for 2015 | | |
| 1300-D | American Express credit card records relating to George Gilmore account ending 3-31005 for 2016 | | |
| 1400-A | American Express credit card records relating to George Gilmore account ending 3-62008 for 2013 | | |
| 1400-B | American Express credit card records relating to George Gilmore account ending 3-62008 for 2014 | | |
| 1400-C | American Express credit card records relating to George Gilmore account ending 3-62008 for 2015 | | |
| 1400-D | American Express credit card records relating to George Gilmore account ending 3-62008 for 2016 | | |
| 1500-A | American Express credit card records relating to Joanne Gilmore et al. accounts ending in 6-61000 and 6-62008 for 2013 | | |

18

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 1500-B | American Express credit card records relating to Joanne Gilmore et al. accounts ending in 6-62008 and 6-63006 for 2014 | | |
| 1500-C | American Express credit card records relating to Joanne Gilmore et al. accounts ending in 6-63006 for 2015 | | |
| 1500-D | American Express credit card records relating to Joanne Gilmore et al. accounts ending in 6-63006 for 2016 | | |
| 1600-A | American Express credit card records relating to George Gilmore and Gilmore & Monahan accounts ending in 5-36007 for 2013 | | |
| 1600-B | American Express credit card records relating to George Gilmore and Gilmore & Monahan accounts ending in 5-36007 for 2014 | | |
| 1600-C | American Express credit card records relating to George Gilmore and Gilmore & Monahan accounts ending in 5-36007 for 2015 | | |
| 1600-D | American Express credit card records relating to George Gilmore and Gilmore & Monahan accounts ending in 5-36007 for 2016 | | |
| 1700 | Diners Club credit card records relating to George Gilmore account ending -1825/-4440 for 2014-2016 | | |
| 1701 | Diners Club credit card records relating to George Gilmore account ending in -5760 for 2014-2016 | | |
| 1800 | Bank of America credit card records relating to George Gilmore account ending -4048/-8722 for 2014-2016 | | |
| 1801 | Bank of America credit card records relating to George Gilmore account ending -8731 for 2014-2016 | | |

19

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 1802 | Bank of America credit card records relating to George Gilmore and Denise Gilmore account ending -9797 for Nov. 2014-Dec. 2016 | | |
| 1900 | Chase (Slate) credit card records relating to George Gilmore account ending -8088 for 2014-2016 | | |
| 1901 | Chase (Slate) credit cards records relating to George Gilmore and Denise account ending -9846 for 2014-2016 | | |
| 1902 | Chase (Mileage Plus United) credit card records relating to Joanne Gilmore account ending -8532 for 2014-2016 | | |
| 1903 | Chase (Mileage Plus United) credit card records relating to Joanne Gilmore account ending -1514/-5039/ -7562 for 2014-2016 | | |
| 1904 | Chase credit card records relating to Joanne Gilmore account ending -7788 for 2014-Apr. 2015 | | |
| 2000 | Paypal records relating to George Gilmore account ending -4803 for 2014-2016 (includes screens) | | |
| 2100 | Banana Republic credit card records relating to Joanne Gilmore account ending -3922 for Dec 2014-Dec 2016 | | |
| 2200-A | Bloomingdales American Express credit card records relating to Joanne Gilmore account ending -0772 from 2014-2016 | | |
| 2200-B | Bloomingdales credit card records relating to Joanne Gilmore account ending -8821 from 2014-2016 | | |
| 2300-A | Macy's credit card records relating to Joanne Gilmore account ending -7483 from 2014-2016 | | |

20

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 2300-B | Macys credit card records relating to Joanne Gilmore account ending -3290 for 2014-2016 | | |
| 2400 | Nordstroms credit card records relating to Joanne Gilmore account ending -9583 for 2014-2016 | | |
| 2500 | Toys R Us credit card records relating to Joanne Gilmore account ending -3857 for 2014-2016 | | |
| 2600 | Williams Sonoma credit card records relating to Joanne Gilmore from 2014-2016 | | |
| **Other Business Records** | | | |
| 3000-A | Mortgage note Lyndon Enterprises | | |
| 3000-B | Mortgage dated October 27, 2013 | | |
| 3000-C | Documents produced by Lyndon Enterprises | | |
| 3000-D | Checks to Lyndon Enterprises (2014 and 2015) | | |
| 3000-E | Records related to loan from Joseph Giardina | | |
| 3001-A | Mortgage note between George and Joanne Gilmore and Lohman Associates (Oct. 2012) | | |
| 3001-B | Subordination agreement (Jan. 2015) and Mortgage related to Lohman Associates Pension Plan (Oct. 2012) | | |
| 3001-C | Mortgage note between George Gilmore and Thomas Monahan and Lohman Associates Pension Plan (July 2014) and mortgage note between George Gilmore and Joanne Gilmore and Lohman Associates Pension Plan (Sep. 2013) | | |
| 3001-D | Subordination agreement and mortgage (Jan. 2015) and mortgage related to Lohman Associates Pension Plan (Sep. 2013) | | |

21

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 3001-E | Mortgage notes relating to Lohman Associates Pension Plan (multiple) | | |
| 3001-F | Checks to Lohman Pension Plan | | |
| 3001-G | Ocean First bank record related to wire from Lohman Associates Pension Plan 10/18/12 | | |
| 3001-H | Ocean First bank record related to wire from Lohman Associates Pension Plan 10/4/13 | | |
| 3001-I | Ocean First bank record related to wire from Lohman Associates Pension Plan 12/27/13 | | |
| 3001-J | Records related to loan from Lohman Associates Pension Plan: expenditures | | |
| 3002-A | Checks from James Loundy and White Whale, LLC | | |
| 3002-B | $50,000 cashier's check | | |
| 3002-C | Check no. 139 from James Loundy for $150,000 dated Sep. 13, 2011 | | |
| 3002-D | Promissory note for $215,000 signed by George Gilmore relating to loan received on Sep. 13, 2011 | | |
| 3002-E | Promissory note for $220,000 signed by George Gilmore relating to loan received on Oct. 31, 2011 | | |
| 3002-F | Promissory note for $110,000 signed by George Gilmore relating to loan received on Jan. 31, 2012 | | |
| 3002-G | Check stubs relating to loan repayments to John Camera (2012) | | |
| 3002-H | Promissory note signed by George Gilmore as of March 15, 2012 | | |
| 3002-I | Checks to John Camera (interest payments) | | |

22

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 3002-J | Checks to John Camera (principal payments) - 2015 and 2016 | | |
| 3002-K | Checks to Joyce Camera (interest payments) | | |
| 3002-L | Check no. 4647 to Michael Loundy for $26,000 dated Apr. 30, 2012 | | |
| 3002-M | Check stubs and check relating to loan repayments to Michael Loundy | | |
| 3002-N | Note relating to assignment by John Camera of loan by George Gilmore to Michael Loundy | | |
| 3002-O | Check stubs and check relating to loan repayments to Michael Loundy (2014-2015) | | |
| 3002-P | Records related to loan from Loundy/Camera: expenditures | | |
| 3003-A | Check No. 10704 from Orlovsky, Grasso, Bolger, Mensching & Daley for $400,000 dated Aug. 14, 2007 | | |
| 3003-B | Checks to Dale and Carole Orlovsky | | |
| 3003-C | Promissory note between George and Joanne Gilmore and Dale and Carol Orlovksy | | |
| 3003-D | Records related to loan from Orlovsky: expenditures | | |
| 3004-A | Helensburg Ventures promissory note and mortgage | | |
| 3004-B | Helensburg Ventures records | | |
| 3004-C | Holly Christine Caruso Trust records | | |
| 3004-D | Intellisante Corp. records | | |
| 3004-E | Kerri Lyn Hutchins Trust records | | |
| 3004-F | Jean Marie Hutchins Trust records | | |

23

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 3005 | Checks from Robert Young to George Gilmore | | |
| 3006 | Records related to loan from Robert Stone | | |
| 3100 | Asset Appraisal Group appraisal records | | |
| 3200 | Weichert Financial Services records related to mortgage for 8 Grand Avenue, Toms River, NJ | | |
| 3300 | Chase Bank records related to mortgage for 490 Clinton Ave., Toms River, NJ | | |
| 3400 | Ocean First bank records related to mortgage for 15 Cranmoor Drive, Toms River, NJ | | |
| 3500 | Records related to payments to Robin Pucci for sale of 130 Cranmoor Drive, Toms River, NJ | | |
| 3600 | Bank of America records related to mortgage for Unit 160, Cluster 5, Tannersville PA | | |
| 3700 | John Hancock 401k retirement account records related to George and Joanne Gilmore | | |
| 3800 | Mass Mutual Financial Group records related to George Gilmore County of Ocean deferred compensation plan account | | |
| 3800-A | Audio recording call between Mass Mutual and George Gilmore | | |
| | **Other Business Records (telephone records)** | | |
| 3900 | Verizon Wireless records related to George Gilmore | | |
| 3900-A | Verizon Wireless historical call detail explanation form | | |
| | **Recordings** | | |
| 4000 | Recorded telephone call between Sean Waldron and George Gilmore (July 24, 2014) | | |

24

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| | **Text Messages** | | |
| 4100 | Chart of text messages between Sean Waldron and George Gilmore | | |
| | **Summary Charts** | | |
| 5000-A | Total Taxes, Interest and Penalties Due and Owing by Defendant as of December 31, 2016 | | |
| 5000-B | Form 941s – Employer's Quarterly Federal Tax Return Information | | |
| 5000-C | Form 941 – Quarterly Trust Funds Due and Owing | | |
| 5001 | Categories of Defendant's Expenditures 2014 to 2016 (pie chart) | | |
| 5002 | Expenditures from 2014 to 2016: Construction and House Remodeling | | |
| 5002-A | Bank and credit card records related to Exhibit 5002 | | |
| 5003 | Expenditures from 2014 to 2016: Mortgages/Payments for Homes | | |
| 5003-A | Bank and credit card records related to Exhibit 5003 | | |
| 5004 | Expenditures from 2014 to 2016: Antiques/Artwork/Furnishings/Collectibles | | |
| 5004-A | Bank and credit card records related to Exhibit 5004 | | |
| 5005 | Expenditures from 2014 to 2016: Trains | | |
| 5005-A | Bank and credit card records related to Exhibit 5005 | | |
| 5006 | Expenditures from 2014 to 2016: Steinway piano | | |
| 5006-A | Bank records related to Ex. 5006 | | |
| 5007 | Expenditures from 2014 to 2016: Solaris Inn | | |

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 5007-A | Credit card statements related to Ex. 5007 | | |
| 5008 | Expenditures After Withdrawing Monies from 401(k) Accounts | | |
| 5009 | Debits Reflected on Law Firm's 1240 and 1245 Ledgers (by year) | | |
| 5010 | Law Firm's 1240 and 1245 Ledgers Combined with Running Balance (Jan. 2010 - July 2016) | | |
| 5010-A | 1240 Ledger (Loans-GRG) with Running Balance (Jan. 2010-July 2016) | | |
| 5010-B | 1245 Ledger (Loans – GRG (short term) with Running Balance (Jan. 2010-July 2016) | | |
| 5010-C | 1250 Ledger (Loans – TEM) with Running Balance (Jan. 2010-July 2016) | | |
| 5011 | Disbursements from Law Firm's Ocean First Bank Accounts Ending -3906 and -3922 for Mortgage Payments - 2014 to 2016 | | |
| 5011-A | Bank records related to Exhibit 5011 | | |
| 5012 | Payments from Law Firm's Bank Accounts to Pay Personal American Express Credit Card Bills – 2014 to 2016 | | |
| 5012-A | Bank and credit card records related to Exhibit 5012 | | |
| 5013 | Payments from Law Firm's Bank Accounts to Pay Personal Diners Club Credit Card Bills – 2014 to 2016 | | |
| 5013-A | Bank and credit card records related to Exhibit 5013 | | |
| 5014 | Payments from Law Firm's Bank Accounts to Pay Other Personal Credit Card Bills – 2014 to 2016 | | |
| 5014-A | Bank and credit card records related to Exhibit 5014 | | |

26

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 5015 | Computation of Additional Total Income Forms 1040 for Calendar Years 2013 and 2014<br><br>Computation of Additional Tax Due and Owing Forms 1040 for Calendar Years 2013 and 2014 | | |
| 5016 | Payments from Law Firm Bank Account ending - 3906 for Personal Credit Cards - January 1, 2016 to July 31, 2016 | | |
| 5016-A | Bank and credit card records related to Exhibit 5016 | | |
| 5017 | Expenditures related to Homes, Antiques, Art, Furnishings, Collectibles from Late Nov. 2014 through Jan. 2015 | | |
| 5017-A | Bank and credit card records related to Exhibit 5017 | | |
| 5018 | Earnings & Profits Computation | | |

27

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Anne E. Thompson |
| v. | : | Crim. No. 19-029 |
| GEORGE GILMORE | : | **GOVERNMENT EXHIBIT LIST** |

| Exhibit | Description | Identified | Admitted |
|---|---|---|---|
| | **Stipulations** | | |
| 1 | [Stipulations] | | |
| | **IRS Records** | | |
| 10 | Form 1040 for George and Joanne Gilmore - 2013 | | |
| 11 | Form 1040 for George and Joanne Gilmore - 2014 | | |
| 12 | Form 1040 for George and Joanne Gilmore - 2015 | | |
| 13 | Literal Transcript for Form 1040 for George and Joanne Gilmore - 2013 | | |
| 14 | Literal Transcript for Form 1040 for George and Joanne Gilmore - 2014 | | |
| 15 | Literal Transcript for Form 1040 for George and Joanne Gilmore - 2015 | | |
| 16 | IRS TXMODA Form - 2013 | | |
| 17 | IRS TXMODA Form - 2014 | | |
| 18 | IRS TXMODA Form - 2015 | | |
| 19 | INTST Transcript for Form 1040 for George and Joanne Gilmore - 2013 as of Dec. 31, 2016 | | |
| 20 | INTST Transcript for Form 1040 for George and Joanne Gilmore - 2014 as of Dec. 31, 2016 | | |

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 21 | INTST Transcript for Form 1040 for George and Joanne Gilmore - 2015 as of December 31, 2016 | | |
| 22 | Notice of Federal Tax Lien (NFTL) for Form 1040 for George and Joanne Gilmore - 2013 filed in Ocean County, NJ | | |
| 23 | Notice of Federal Tax Lien (NFTL) for Form 1040 for George and Joanne Gilmore - 2014  filed in Ocean County, NJ | | |
| 24 | Notice of Federal Tax Lien (NFTL) for Form 1040 for George and Joanne Gilmore - 2015  filed in Ocean County, NJ | | |
| 25 | Notice of Federal Tax Lien (NFTL) for Form 1040 for George and Joanne Gilmore - 2013 & 2014  filed in Stroudsburg, PA | | |
| 26 | AMS View Detail Information for Form 1040 for George and Joanne Gilmore dated 11/19/2014 & 11/21/2014 | | |
| 27 | ICS History Transcript for George and Joanne Gilmore | | |
| 28 | Archive History Transcript for George and Joanne Gilmore | | |
| 29 | Form 1120 for Gilmore & Monahan, P.A. - 2013 | | |
| 30 | Form 1120 for Gilmore & Monahan, P.A. - 2014 | | |
| 31 | Form 1120 for Gilmore & Monahan, P.A. - 2015 | | |
| 32 | Literal Transcript for Form 1120 for Gilmore & Monahan, P.A. - 2013 | | |
| 33 | Literal Transcript for Form 1120 for Gilmore & Monahan, P.A. - 2014 | | |

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---|---|---|---|
| 34 | Literal Transcript for Form 1120 for Gilmore & Monahan, P.A. - 2015 | | |
| 35 | Form 941 for Gilmore & Monahan, P.A. - First Quarter, 2016 | | |
| 36 | Form 941 for Gilmore & Monahan, P.A. - Second Quarter, 2016 | | |
| 37 | Literal Transcript for Form 941 for Gilmore & Monahan, P.A. - First Quarter, 2016 | | |
| 38 | Literal Transcript for Form 941 for Gilmore & Monahan, P.A. - Second Quarter, 2016 | | |
| 39 | Notice of Federal Tax Lien (NFTL) for Form 941 for Gilmore & Monahan, P.A. - First Quarter, 2016 | | |
| 40 | Notice of Federal Tax Lien (NFTL) for Form 941 for Gilmore & Monahan, P.A. - Second Quarter, 2016 | | |
| 41 | ICS History Transcript for Gilmore & Monahan, P.A. | | |
| 42 | Archive History Transcript for Gilmore & Monahan, P.A. | | |
| 43 | Form 1065 for George Gilmore & Thomas Monahan PTR - 2013 | | |
| 44 | Form 1065 for George Gilmore & Thomas Monahan PTR - 2014 | | |
| 45 | Form 1065 for George Gilmore & Thomas Monahan PTR - 2015 | | |
| 46 | Form 4549-A Income Tax Examination Changes | | |
| 60-A | IRS letter dated 5/23/11 to Gilmore & Monahan, P.A. signed for by George Gilmore with Notice 931 | | |
| 60-B | Publication 966 | | |

3

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 60-C | Publication 3151 | | |
| 61 | IRS letter dated 6/21/11 to Gilmore & Monahan, P.A. | | |
| 62-A | Summary of Taxpayer Contact 8/11/2011 | | |
| 62-B | Form 2481 | | |
| 62-C | Form 941-M | | |
| 63-A | IRs letter dated July 8, 2013 letter to George Gilmore and signed by Gilmore | | |
| 63-B | Publication 1 | | |
| 63-C | Publication 954 | | |
| 63-D | Publication 1660 | | |
| 64 | Summary of Taxpayer Contact | | |
| 65 | Summary of Taxpayer Contact dated 9/19/2014 | | |
| 66 | Summary of Taxpayer Contact dated 4/7/2015 | | |
| 67 | Letter from IRS to George and Joanne Gilmore dated 7/30/2015 | | |
| 68 | Summary of Taxpayer Contact dated 8/11/2015 | | |
| 69 | Summary of Taxpayer Contact dated 8/13/2015 | | |
| 70 | Summary of Taxpayer Contact dated 10/1/2015 | | |
| 71 | 4 page fax dated 10/19/15 with attachments | | |
| 72 | 1 page of notes | | |
| 73 | IRS Form 2287 | | |
| 74 | IRS Form 433-A | | |
| 75 | IRS Form 433-B | | |

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---|---|---|---|
| | **Other Tax Records** | | |
| 90 | Township of Toms River property tax records | | |
| | **Photographs** | | |
| 100 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 101 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 102 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 103 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 104 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 105 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 106 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 107 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 108 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 109 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 110 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 111 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 112 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 113 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 114 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 115 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 116 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 117 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 118 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 119 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 120 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 121 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 122 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 123 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 124 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 125 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 126 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 127 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 128 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 129 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| 130 | Photograph of 15 Cranmoor Drive, Toms River, NJ | X | X |
| | **Business records related to expenses** | | |
| 200 | March 10, 2009 Contract between O'Rorke and George Gilmore | X | X |
| 201 | O'Rorke Invoices for Gilmore | X | X |
| 202 | O'Rorke Payment Ledger 2011 | X | X |
| 203 | O'Rorke Payment Ledger 2012 | X | X |
| 204 | O'Rorke Payment Ledger 2014 | X | X |
| 205 | O'Rorke Payment Ledger 2015 | X | X |
| 206 | O'Rorke Payment Ledger 2016 | X | X |
| 207 | O'Rorke's 2010 Day Planner | X | X |

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|:----------:|:--------:|
| 208 | O'Rorke's 2011 Day Planner | X | X |
| 209 | O'Rorke's 2012 Day Planner | X | X |
| 210 | O'Rorke's 2013 Day Planner | X | X |
| 211 | O'Rorke's 2014 Day Planner | X | X |
| 212 | O'Rorke's 2015 Day Planner | X | X |
| 213 | O'Rorke's 2016 Day Planner | X | X |
| 300 | ACD Custom Granite records | X | X |
| 301 | All-Star Electric records | X | X |
| 301-A | All-Star Electric - invoices payments (2014-2016) | X | X |
| 302 | Alpen Antiques records | X | X |
| 303 | ASAP Pools records | X | X |
| 304 | Atlantic Plumbing records | X | X |
| 305 | Blue Water Pool records | X | X |
| 306 | Bradford's Antiques records | X | X |
| 306-A | Bradford's Antiques - invoices and list of transactions | X | X |
| 307 | By Nature Gallery records | X | X |
| 307-A | By Nature Gallery - invoices | X | X |
| 308 | Cerami Lawns records | X | X |
| 309 | Compass Ironworks records | X | X |
| 310 | Eagle Ridge Golf Club records | X | X |
| 311 | Erickson Woodworking records | X | X |

7

DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM

| Exhibit | Description | Identified | Admitted |
|---------|-------------|:----------:|:--------:|
| 312 | G Keener & Co. records | X | X |
| 313 | Global Care Services Inc. records | X | X |
| 314 | Greenstone Slate records | X | X |
| 315 | Hamari Design records | X | X |
| 315-A | Hamari Design - invoice dated July 9, 2014 | X | X |
| 315-B | Hamari Design - photo | X | X |
| 315-C | Hamari Design - photo | X | X |
| 315-D | Hamari Design - photo | X | X |
| 315-E | Hamari Design - photo | X | X |
| 315-F | Hamari Design - photo | X | X |
| 315-G | Hamari Design - photo | X | X |
| 316 | Hi-Fi Sales records | X | X |
| 317 | International Stone records | X | X |
| 317-A | International Stone - contract, sales records, payment | X | X |
| 318 | Katonah Architecture records | X | X |
| 318-A | Katonah Architecture - invoices | X | X |
| 319 | Mark Sauer Contracting records | X | X |
| 320 | Martin Visnick/Clickety Clack Toys records | X | X |
| 321 | Matthew Hatala records | X | X |
| 322 | Olde Good Things records | X | X |
| 323 | Owen Henry Records records | X | X |
| 324 | Piece Art Gallery records | X | X |

8

| Exhibit | Description | Identified | Admitted |
|---------|-------------|:----------:|:--------:|
| 325 | Riverton Custom Pool records | X | X |
| 325-A | Riverton Custom Pool – account report, receipts, contract dated Nov. 13, 2014 | X | X |
| 325-B | Riverton Custom Pool – contract emailed Jan. 31, 2014 | X | X |
| 326 | Scrimshaw Gallery records | X | X |
| 327 | Solaris Residence/Gemini Solaris records | X | X |
| 327-A | Solaris Residence Inn website records | X | X |
| 327-B | Solaris Residence Inn photographs | X | X |
| 327-C | Solaris Residence Inn video | X | X |
| 328 | Solinglass records | X | X |
| 329 | The Knox Galleries records | X | X |
| 330 | The Piano Exchange records | X | X |
| 331 | The Village at Camelback records | X | X |
| 332 | Toms River Heating records | X | X |
| 333 | Wallace & Sons records | X | X |
| | **Gilmore & Monahan, P.A. Records** | | |
| 400 | Gilmore & Monahan, P.A. General Ledger 2013 | | |
| 401 | Gilmore & Monahan, P.A. General Ledger 2014 | | |
| 402 | Gilmore & Monahan, P.A. General Ledger 2015 | | |
| 403 | Gilmore & Monahan, P.A. General Ledger through July 31, 2016 | | |
| 404 | Gilmore & Monahan, P.A. Trial Balance 2013 | | |

9

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 405 | Gilmore & Monahan, P.A. Trial Balance 2014 | | |
| 406 | Gilmore & Monahan, P.A. Trial Balance 2015 | | |
| 407 | Gilmore & Monahan, P.A. Trial Balance through July 31, 2016 | | |
| 408 | Gilmore & Monahan, P.A. Balance Sheet 2012 | | |
| 409 | Gilmore & Monahan, P.A. Balance Sheet 2013 | | |
| 410 | Gilmore & Monahan, P.A. Balance Sheet 2014 | | |
| 411 | Gilmore & Monahan, P.A. Balance Sheet 2015 | | |
| 412 | Gilmore & Monahan, P.A. Balance Sheet 2016 | | |
| 413 | 1240 GRG General Ledger | | |
| 414 | 1245 GRG General Ledger | | |
| 415 | 1250 TEM General Ledger | | |
| 416 | American Express credit card records related to account ending in 5-36007 (2013) | | |
| 417 | American Express credit card records related to account ending 5-36007 (2014) | | |
| 418 | American Express credit card records related to account ending 5-36007 (2015) | | |
| 419 | American Express credit card records related to account ending 5-36007 (2016 through July) | | |
| 420 | Gilmore & Monahan, P.A Income Statement period ending Dec. 31, 2013 | | |
| 421 | Gilmore & Monahan, P.A Income Statement period ending Dec. 31, 2014 | | |

10

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 422 | Gilmore & Monahan, P.A Income Statement period ending Dec. 31, 2015 | | |
| 423 | Gilmore & Monahan, P.A Income Statement period ending July 31, 2016 | | |
| | **Koerner & Koerner Records** | | |
| 500 | Dec. 28, 2000 Letter to George Gilmore and Thomas Monahan | | |
| 501 | Oct. 3, 2002 Letter to George Gilmore | | |
| 502 | Dec. 9, 2002 Letter to George Gilmore | | |
| 503 | Letter to George Gilmore and Thomas Monahan dated September 15, 2003 | | |
| 504 | Letter to George Gilmore and Thomas Monahan with post it note (hand delivered July 28, 2004) | | |
| 505 | Letter to George Gilmore and Thomas Monahan dated Sep. 16, 2004 | | |
| 506 | Invoices | | |
| | **Withum Smith & Brown Records** | | |
| 600 | 2013 Gilmore & Monahan Trial Balance with AJE | | |
| 601 | 2014 Gilmore & Monahan Trial Balance with AJE | | |
| 602-A | 2015 Gilmore & Monahan Trial Balance with AJE | | |
| 602-B | 2015 Gilmore & Monahan Trial Balance with AJE | | |
| 603 | 2015 Gilmore & Monahan Trial Balance Combined Detail | | |
| 604 | 2013 Gilmore & Monahan Balance Sheet | | |
| 605 | 2014 Gilmore & Monahan Balance Sheet | | |

11

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 606 | 2015 Gilmore & Monahan Balance Sheet | | |
| 607 | Gilmore & Monahan General Ledger 2013 | | |
| 608 | Gilmore & Monahan General Ledger 2014 | | |
| 609 | Gilmore & Monahan General Ledger 2015 | | |
| 610 | Form 941 Materials 2016, First Quarter | | |
| 611 | Form 941 Materials 2016, Second Quarter | | |
| 612 | Email dated September 11, 2013 | | |
| 613 | Subpoena to Hutchins, Farrell, Meyer & Allison, P.A., and Withum Smith & Brown, PC and related emails confirming receipt | | |
| 614 | Withum Smith & Brown workpapers and IRS Internal Revenue Bulletin | | |
| | **Business Records (bank)** | | |
| 700 | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2013: signature card and monthly statements | | |
| 700-A | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2013: checks | | |
| 700-B | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2013: deposits | | |
| 700-C | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2013: wires | | |
| 701 | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2014: monthly statements | | |

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 701-A | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2014: checks | | |
| 701-B | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2014: deposits | | |
| 701-C | Check no. 1901 dated October 15, 2014 for $493,526 made payable to United States Treasury | | |
| 701-D | Ocean First Bank records related to George and Joanne Gilmore personal account ending -9574: checks from late November 2014 through January 2015 | | |
| 702 | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2015: monthly statements | | |
| 702-A | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2015: checks | | |
| 702-B | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2015: deposits | | |
| 702-C | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2016: monthly statements (with checks) | | |
| 702-D | Ocean First Bank records related to George and Joanne Gilmore personal checking account ending - 9574 for 2016: deposits | | |
| | | | |
| 703 | Ocean First Bank records related to Gilmore & Monahan, P.A. business account ending -3906 for 2013: signature card and monthly statements | | |

13

DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM

| Exhibit | Description | Identified | Admitted |
|---|---|---|---|
| 703-A | Ocean First Bank records related to Gilmore & Monahan, P.A. business account ending -3906 for 2013: checks | | |
| 703-B | Ocean First Bank records related to Gilmore & Monahan, P.A. business account ending -3906 for 2013: deposits | | |
| 703-C | Ocean First Bank records related to Gilmore & Monahan, P.A. business account ending -3906 for 2013: wires | | |
| 704 | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending -3906 for 2014: monthly statements | | |
| 704-A | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending -3906 for 2014: checks | | |
| 704-B | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending -3906 for 2014: deposits | | |
| 705 | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending -3906 for 2015: monthly statements and checks | | |
| 705-A | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending -3906 for 2015: checks only | | |
| 705-B | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending -3906 for 2015: bank checks | | |
| 705-C | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending -3906 for 2015: deposits | | |

14

DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 705-D | Ocean First Bank records related to Gilmore & Monahan, P.A. attorney business account ending - 3906 for 2015: wires | | |
| 706 | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3906 for 2016: monthly statements and checks | | |
| 706-A | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3906 for 2016: bank check | | |
| 706-B | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3906 for 2016: deposits | | |

| | | | |
|---------|-------------|------------|----------|
| 707 | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2013: signature card and statements | | |
| 707-A | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2013: signature card, monthly statements, checks | | |
| 707-B | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2013: deposits | | |
| 708 | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2014: monthly statements | | |
| 708-A | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2014: checks | | |
| 708-B | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2014: deposits | | |

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 708-C | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2014: wire | | |
| 709 | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2015: monthly statements with checks | | |
| 709-A | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2015: checks | | |
| 709-B | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2015: deposits | | |
| 710 | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2016: monthly statements with checks | | |
| 710-A | Ocean First Bank records related to Gilmore & Monahan, P.A. account ending -3922 for 2016: deposits | | |
| | | | |
| 711 | Ocean First Bank records related to JG Associates account ending -2809 for 2014 | | |
| 711-A | Ocean First Bank records related to JG Associates account ending -2809 for 2015 | | |
| 711-B | Ocean First Bank records related to JG Associates account ending -2809 for 2016 | | |
| | | | |
| 712 | Uniform Residential Loan Application Nov. 2014 | | |
| 713 | Uniform Residential Loan Application Jan. 2015 | | |
| 714 | Refinance Purpose Letter | | |

16

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 715 | HUD-1 Settlement Statement | | |
| 716 | Underwriter Summary | | |
| | | | |
| 800 | Bank of America account records relating to George Gilmore account ending -7614 for 2014-2016: monthly statements and checks | | |
| | | | |
| 900-A | JP Morgan Chase Bank account records relating to George Gilmore and Joanne Gilmore account ending -4426 for 2014-2016: signature card, account statements, checks, and deposits | | |
| 900-B | JP Morgan Chase Bank account records relating to JG Associates account ending -5620 for 2013-2014: signature card, account statements, checks, and deposits | | |
| | | | |
| 1000 | TD Bank records related to Gilmore & Monahan, P.A. account ending -0044: monthly statements | | |
| | | | |
| 1100 | Harmony Bank/Lakeland Bank records related to Gilmore & Monahan, P.A. account ending -6277 | | |
| 1100-A | Harmony Bank/Lakeland Bank records related to GRMS Associates account ending -1830 | | |
| 1100-B | Harmony Bank/Lakeland Bank records related to Gilmore & Monahan, P.A., account ending -0613 | | |
| 1100-C | Harmony Bank/Lakeland Bank records related to George and Joanne Gilmore account ending -0465 | | |
| | **Business Records (credit cards)** | | |

17

DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM

| Exhibit | Description | Identified | Admitted |
|---|---|---|---|
| 1200-A | American Express credit card records relating to George Gilmore account ending 8-01003 for 2013 | | |
| 1200-B | American Express credit card records relating to George Gilmore account ending 8-01003 for 2014 | | |
| 1200-C | American Express credit card records relating to George Gilmore account ending 8-01003 for 2015 | | |
| 1200-D | American Express credit card records relating to George Gilmore account ending 8-01003 for 2016 | | |
| 1300-A | American Express credit card records relating to George Gilmore account ending 3-31005 for 2013 | | |
| 1300-B | American Express credit card records relating to George Gilmore account ending 3-31005 for 2014 | | |
| 1300-C | American Express credit card records relating to George Gilmore account ending 3-31005 for 2015 | | |
| 1300-D | American Express credit card records relating to George Gilmore account ending 3-31005 for 2016 | | |
| 1400-A | American Express credit card records relating to George Gilmore account ending 3-62008 for 2013 | | |
| 1400-B | American Express credit card records relating to George Gilmore account ending 3-62008 for 2014 | | |
| 1400-C | American Express credit card records relating to George Gilmore account ending 3-62008 for 2015 | | |
| 1400-D | American Express credit card records relating to George Gilmore account ending 3-62008 for 2016 | | |
| 1500-A | American Express credit card records relating to Joanne Gilmore et al. accounts ending in 6-61000 and 6-62008 for 2013 | | |

18

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 1500-B | American Express credit card records relating to Joanne Gilmore et al. accounts ending in 6-62008 and 6-63006 for 2014 | | |
| 1500-C | American Express credit card records relating to Joanne Gilmore et al. accounts ending in 6-63006 for 2015 | | |
| 1500-D | American Express credit card records relating to Joanne Gilmore et al. accounts ending in 6-63006 for 2016 | | |
| 1600-A | American Express credit card records relating to George Gilmore and Gilmore & Monahan accounts ending in 5-36007 for 2013 | | |
| 1600-B | American Express credit card records relating to George Gilmore and Gilmore & Monahan accounts ending in 5-36007 for 2014 | | |
| 1600-C | American Express credit card records relating to George Gilmore and Gilmore & Monahan accounts ending in 5-36007 for 2015 | | |
| 1600-D | American Express credit card records relating to George Gilmore and Gilmore & Monahan accounts ending in 5-36007 for 2016 | | |
| 1700 | Diners Club credit card records relating to George Gilmore account ending -1825/-4440 for 2014-2016 | | |
| 1701 | Diners Club credit card records relating to George Gilmore account ending in -5760 for 2014-2016 | | |
| 1800 | Bank of America credit card records relating to George Gilmore account ending -4048/-8722 for 2014-2016 | | |
| 1801 | Bank of America credit card records relating to George Gilmore account ending -8731 for 2014-2016 | | |

19

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 1802 | Bank of America credit card records relating to George Gilmore and Denise Gilmore account ending -9797 for Nov. 2014-Dec. 2016 | | |
| 1900 | Chase (Slate) credit card records relating to George Gilmore account ending -8088 for 2014-2016 | | |
| 1901 | Chase (Slate) credit cards records relating to George Gilmore and Denise account ending -9846 for 2014-2016 | | |
| 1902 | Chase (Mileage Plus United) credit card records relating to Joanne Gilmore account ending -8532 for 2014-2016 | | |
| 1903 | Chase (Mileage Plus United) credit card records relating to Joanne Gilmore account ending -1514/-5039/ -7562 for 2014-2016 | | |
| 1904 | Chase credit card records relating to Joanne Gilmore account ending -7788 for 2014-Apr. 2015 | | |
| 2000 | Paypal records relating to George Gilmore account ending -4803 for 2014-2016 (includes screens) | | |
| 2100 | Banana Republic credit card records relating to Joanne Gilmore account ending -3922 for Dec 2014-Dec 2016 | | |
| 2200-A | Bloomingdales American Express credit card records relating to Joanne Gilmore account ending -0772 from 2014-2016 | | |
| 2200-B | Bloomingdales credit card records relating to Joanne Gilmore account ending -8821 from 2014-2016 | | |
| 2300-A | Macy's credit card records relating to Joanne Gilmore account ending -7483 from 2014-2016 | | |

20

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---|---|---|---|
| 2300-B | Macys credit card records relating to Joanne Gilmore account ending -3290 for 2014-2016 | | |
| 2400 | Nordstroms credit card records relating to Joanne Gilmore account ending -9583 for 2014-2016 | | |
| 2500 | Toys R Us credit card records relating to Joanne Gilmore account ending -3857 for 2014-2016 | | |
| 2600 | Williams Sonoma credit card records relating to Joanne Gilmore from 2014-2016 | | |
| | **Other Business Records** | | |
| 3000-A | Mortgage note Lyndon Enterprises | | |
| 3000-B | Mortgage dated October 27, 2013 | | |
| 3000-C | Documents produced by Lyndon Enterprises | | |
| 3000-D | Checks to Lyndon Enterprises (2014 and 2015) | | |
| 3000-E | Records related to loan from Joseph Giardina | | |
| 3001-A | Mortgage note between George and Joanne Gilmore and Lohman Associates (Oct. 2012) | | |
| 3001-B | Subordination agreement (Jan. 2015) and Mortgage related to Lohman Associates Pension Plan (Oct. 2012) | | |
| 3001-C | Mortgage note between George Gilmore and Thomas Monahan and Lohman Associates Pension Plan (July 2014) and mortgage note between George Gilmore and Joanne Gilmore and Lohman Associates Pension Plan (Sep. 2013) | | |
| 3001-D | Subordination agreement and mortgage (Jan. 2015) and mortgage related to Lohman Associates Pension Plan (Sep. 2013) | | |

| Exhibit | Description | Identified | Admitted |
|---|---|---|---|
| 3001-E | Mortgage notes relating to Lohman Associates Pension Plan (multiple) | | |
| 3001-F | Checks to Lohman Pension Plan | | |
| 3001-G | Ocean First bank record related to wire from Lohman Associates Pension Plan 10/18/12 | | |
| 3001-H | Ocean First bank record related to wire from Lohman Associates Pension Plan 10/4/13 | | |
| 3001-I | Ocean First bank record related to wire from Lohman Associates Pension Plan 12/27/13 | | |
| 3001-J | Records related to loan from Lohman Associates Pension Plan: expenditures | | |
| 3002-A | Checks from James Loundy and White Whale, LLC | | |
| 3002-B | $50,000 cashier's check | | |
| 3002-C | Check no. 139 from James Loundy for $150,000 dated Sep. 13, 2011 | | |
| 3002-D | Promissory note for $215,000 signed by George Gilmore relating to loan received on Sep. 13, 2011 | | |
| 3002-E | Promissory note for $220,000 signed by George Gilmore relating to loan received on Oct. 31, 2011 | | |
| 3002-F | Promissory note for $110,000 signed by George Gilmore relating to loan received on Jan. 31, 2012 | | |
| 3002-G | Check stubs relating to loan repayments to John Camera (2012) | | |
| 3002-H | Promissory note signed by George Gilmore as of March 15, 2012 | | |
| 3002-I | Checks to John Camera (interest payments) | | |

22

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 3002-J | Checks to John Camera (principal payments) - 2015 and 2016 | | |
| 3002-K | Checks to Joyce Camera (interest payments) | | |
| 3002-L | Check no. 4647 to Michael Loundy for $26,000 dated Apr. 30, 2012 | | |
| 3002-M | Check stubs and check relating to loan repayments to Michael Loundy | | |
| 3002-N | Note relating to assignment by John Camera of loan by George Gilmore to Michael Loundy | | |
| 3002-O | Check stubs and check relating to loan repayments to Michael Loundy (2014-2015) | | |
| 3002-P | Records related to loan from Loundy/Camera: expenditures | | |
| 3003-A | Check No. 10704 from Orlovsky, Grasso, Bolger, Mensching & Daley for $400,000 dated Aug. 14, 2007 | | |
| 3003-B | Checks to Dale and Carole Orlovsky | | |
| 3003-C | Promissory note between George and Joanne Gilmore and Dale and Carol Orlovksy | | |
| 3003-D | Records related to loan from Orlovsky: expenditures | | |
| 3004-A | Helensburg Ventures promissory note and mortgage | | |
| 3004-B | Helensburg Ventures records | | |
| 3004-C | Holly Christine Caruso Trust records | | |
| 3004-D | Intellisante Corp. records | | |
| 3004-E | Kerri Lyn Hutchins Trust records | | |
| 3004-F | Jean Marie Hutchins Trust records | | |

23

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---|---|---|---|
| 3005 | Checks from Robert Young to George Gilmore | | |
| 3006 | Records related to loan from Robert Stone | | |
| 3100 | Asset Appraisal Group appraisal records | | |
| 3200 | Weichert Financial Services records related to mortgage for 8 Grand Avenue, Toms River, NJ | | |
| 3300 | Chase Bank records related to mortgage for 490 Clinton Ave., Toms River, NJ | | |
| 3400 | Ocean First bank records related to mortgage for 15 Cranmoor Drive, Toms River, NJ | | |
| 3500 | Records related to payments to Robin Pucci for sale of 130 Cranmoor Drive, Toms River, NJ | | |
| 3600 | Bank of America records related to mortgage for Unit 160, Cluster 5, Tannersville PA | | |
| 3700 | John Hancock 401k retirement account records related to George and Joanne Gilmore | | |
| 3800 | Mass Mutual Financial Group records related to George Gilmore County of Ocean deferred compensation plan account | | |
| 3800-A | Audio recording call between Mass Mutual and George Gilmore | | |
| | **Other Business Records (telephone records)** | | |
| 3900 | Verizon Wireless records related to George Gilmore | | |
| 3900-A | Verizon Wireless historical call detail explanation form | | |
| | **Recordings** | | |
| 4000 | Recorded telephone call between Sean Waldron and George Gilmore (July 24, 2014) | | |

24

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---|---|---|---|
| | **Text Messages** | | |
| 4100 | Chart of text messages between Sean Waldron and George Gilmore | | |
| | **Summary Charts** | | |
| 5000-A | Total Taxes, Interest and Penalties Due and Owing by Defendant as of December 31, 2016 | | |
| 5000-B | Form 941s – Employer's Quarterly Federal Tax Return Information | | |
| 5000-C | Form 941 – Quarterly Trust Funds Due and Owing | | |
| 5001 | Categories of Defendant's Expenditures 2014 to 2016 (pie chart) | X | X |
| 5002 | Expenditures from 2014 to 2016: Construction and House Remodeling | X | X |
| 5002-A | Bank and credit card records related to Exhibit 5002 | X | X |
| 5003 | Expenditures from 2014 to 2016: Mortgages/Payments for Homes | X | X |
| 5003-A | Bank and credit card records related to Exhibit 5003 | X | X |
| 5004 | Expenditures from 2014 to 2016: Antiques/Artwork/Furnishings/Collectibles | X | X |
| 5004-A | Bank and credit card records related to Exhibit 5004 | X | X |
| 5005 | Expenditures from 2014 to 2016: Trains | X | X |
| 5005-A | Bank and credit card records related to Exhibit 5005 | X | X |
| 5006 | Expenditures from 2014 to 2016: Steinway piano | X | X |
| 5006-A | Bank records related to Ex. 5006 | X | X |
| 5007 | Expenditures from 2014 to 2016: Solaris Inn | X | X |

25

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 5007-A | Credit card statements related to Ex. 5007 | | |
| 5008 | Expenditures After Withdrawing Monies from 401(k) Accounts | X | X |
| 5009 | Debits Reflected on Law Firm's 1240 and 1245 Ledgers (by year) | | |
| 5010 | Law Firm's 1240 and 1245 Ledgers Combined with Running Balance (Jan. 2010 - July 2016) | | |
| 5010-A | 1240 Ledger (Loans-GRG) with Running Balance (Jan. 2010-July 2016) | | |
| 5010-B | 1245 Ledger (Loans – GRG (short term) with Running Balance (Jan. 2010-July 2016) | | |
| 5010-C | 1250 Ledger (Loans – TEM) with Running Balance (Jan. 2010-July 2016) | | |
| 5011 | Disbursements from Law Firm's Ocean First Bank Accounts Ending -3906 and -3922 for Mortgage Payments - 2014 to 2016 | | |
| 5011-A | Bank records related to Exhibit 5011 | | |
| 5012 | Payments from Law Firm's Bank Accounts to Pay Personal American Express Credit Card Bills – 2014 to 2016 | X | X |
| 5012-A | Bank and credit card records related to Exhibit 5012 | X | X |
| 5013 | Payments from Law Firm's Bank Accounts to Pay Personal Diners Club Credit Card Bills – 2014 to 2016 | X | X |
| 5013-A | Bank and credit card records related to Exhibit 5013 | X | X |
| 5014 | Payments from Law Firm's Bank Accounts to Pay Other Personal Credit Card Bills – 2014 to 2016 | X | X |
| 5014-A | Bank and credit card records related to Exhibit 5014 | X | X |

26

**DRAFT EXHIBIT LIST – AS OF 3/7/2019 2:46 PM**

| Exhibit | Description | Identified | Admitted |
|---------|-------------|------------|----------|
| 5015 | Computation of Additional Total Income Forms 1040 for Calendar Years 2013 and 2014<br><br>Computation of Additional Tax Due and Owing Forms 1040 for Calendar Years 2013 and 2014 | | |
| 5016 | Payments from Law Firm Bank Account ending - 3906 for Personal Credit Cards - January 1, 2016 to July 31, 2016 | X | X |
| 5016-A | Bank and credit card records related to Exhibit 5016 | X | X |
| 5017 | Expenditures related to Homes, Antiques, Art, Furnishings, Collectibles from Late Nov. 2014 through Jan. 2015 | X | X |
| 5017-A | Bank and credit card records related to Exhibit 5017 | X | X |
| 5018 | Earnings & Profits Computation | | |

27

# EXHIBIT C

RECEIVED

MAR 7 – 2019

AT 8:00 12:15 P M
WILLIAM T. WALSH
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. 19-029 (AET) |
| | : |
| | : 18 U.S.C. § 1014 |
| v. | : 18 U.S.C. § 2 |
| | : 26 U.S.C. §§ 7201, 7202 & 7206(1) |
| | : |
| GEORGE GILMORE | : |

### SUPERSEDING INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting in Trenton, charges:

### COUNT 1
### (Evasion of the Payment of Taxes Due and Owing – Calendar Years 2013, 2014, and 2015)

1.     At all times relevant to Count 1 of this Superseding Indictment, unless otherwise indicated:

a.     Defendant GEORGE GILMORE ("defendant GILMORE") was an attorney and partner of a law firm, Gilmore & Monahan, P.A. (the "law firm"), located in Toms River, New Jersey.

b.     As one of two equity partners and shareholders of the law firm, defendant GILMORE owned fifty percent of the stock of the law firm, which operated as a "C Corporation." Under the Internal Revenue Code, the profits of a C Corporation were taxed separately from its owners.

c.     Defendant GILMORE exercised primary control over the financial affairs of the law firm, which included, among other things, arranging the preparation and filing of the tax returns, paying taxes and creditors on behalf of the law firm, and determining his own compensation from the law firm. Defendant GILMORE also did not share full and complete

1

information about the law firm's financial transactions with other attorneys at the law firm, including the other equity partner.

        d.      The Internal Revenue Service ("IRS") was an agency of the United States within the Department of Treasury, responsible for administering and enforcing the tax laws of the United States.

        e.      A U.S. Individual Income Tax Return ("Form 1040") was the form filed by a taxpayer and used by the IRS to assess liability for personal income tax and eligibility for refunds.

        f.      A Form 1040 was required to be filed, and any tax liability was required to be paid, by on or about April 15 of each year for the preceding calendar year unless the taxpayer obtained an extension to file the tax return. A taxpayer who sought an extension to file a Form 1040 was required to pay the IRS an estimated tax payment when filing for the extension.

    2.      Since at least in or about 2005, instead of taking all of his compensation from the law firm in the form of a salary, from which taxes would have been withheld during the course of the calendar year, defendant GILMORE used the law firm bank accounts to pay for personal expenses and falsely classified those payments as "shareholder loans" in the law firm accounting records.

***Defendant Gilmore's Filing of Form 1040s Without Tax Payments***

    3.      On or about the dates set forth below, for calendar years 2013 through 2015, defendant GILMORE filed Forms 1040 on behalf of himself and his spouse for individual income taxes due and owing for each calendar year, declaring under penalty of perjury that he and his spouse owed the amount of taxes set forth below:

2

| Calendar Year | Approximate Date of Filing | Taxes Reported Due and Owing |
|---|---|---|
| 2013 | October 16, 2014 | $493,526 |
| 2014 | October 19, 2015 | $321,470 |
| 2015 | October 20, 2016 | $311,287 |

Each of the Form 1040s were filed on extension, meaning that defendant GILMORE was required both to pay an estimated tax when seeking the extension and to complete full payment of his taxes when filing the tax returns.

4. Despite admitting that he owed taxes for each of these years, defendant GILMORE made no estimated tax payments and failed to fully pay the federal individual income taxes that he owed. Rather than making tax payments to the IRS for these calendar years, from in or about January 2014 to in or about December 2016, defendant GILMORE spent over $2,500,000 on personal expenses, including, but not limited to, the following:

   a. over $380,000 for construction and remodeling of his homes, which included an infinity swimming pool, a pool cabana, and a slate roof, among other features;

   b. over $700,000 for mortgage and related expenses on five different real estate properties that defendant GILMORE owned or in which he had a financial interest;

   c. over $440,000 in antiques, artwork, furnishings, and collectibles, including animal tusks;

   d. over $20,000 on a Steinway piano;

   e. over $80,000 in collectible model trains; and

   f. over $80,000 for luxury accommodations in Vail, Colorado.

Defendant GILMORE also borrowed substantial amounts of money both in a personal capacity and on behalf of his law firm and, in approximately January 2015, defendant GILMORE obtained approximately $572,000 from Ocean First Bank N.A. from the cash-out portion of a home

3

mortgage loan that he refinanced. Defendant GILMORE did not spend any of the loaned amounts to pay his federal income taxes due and owing from 2013 through 2015 and made regular repayments of these loans instead of paying any of his tax debt to the IRS. By December 31, 2016, based on the taxes due and owing that defendant GILMORE reported on the Form 1040s for calendar years 2013 through 2015, he owed the IRS approximately $1,448,617.34 in total taxes, penalties, and interest for calendar years 2013 through 2015.

### *The Evasion of Payment Offense*

5.  From at least in or about January 1, 2014 to in or about December 31, 2016, in the District of New Jersey and elsewhere, defendant

### GEORGE GILMORE

did willfully attempt to evade and defeat the payment of the substantial income tax, interest, and penalties due and owing by him and his spouse to the IRS for calendar years 2013, 2014, and 2015, by committing the affirmative acts of tax evasion set forth below, among others:

a.  concealing his income and the existence of funds available to pay his outstanding tax liabilities by using his law firm bank and credit card accounts to pay for personal expenses and by using his law firm bank accounts to obtain cash;

b.  falsely classifying income that he received from the law firm as "shareholder loans";

c.  submitting a $493,526 check to the IRS for payment of his tax liability for calendar year 2013 drawn from a personal bank account with insufficient funds;

d.  making misrepresentations to the IRS, including false and misleading statements concerning his ability to pay and assurances of payment; and

e.  filing false tax returns that materially understated the true amount of income that defendant GILMORE received.

4

## *Defendant Gilmore Used the Law Firm Accounts to Pay Personal Expenses and Falsely Classified that Income as "Shareholder Loans"*

6.　　From in or about January 2014 to in or about December 2016, defendant

GILMORE used the law firm bank accounts to pay over $2,000,000 worth of personal expenses,

which included obtaining checks to cash and payments of defendant GILMORE's and defendant

GILMORE's family members' credit card bills. Instead of classifying payments from the law firm

for personal expenses as income payments to himself in the books and records of the law firm,

defendant GILMORE caused the payments to be classified falsely as "shareholder loans." The

purported shareholder loans did not have any promissory notes, loan documentation, and did not

accrue interest. Defendant GILMORE also did not inform the other equity partner and others at

the law firm about the extent of these purported loans. Defendant GILMORE falsely classified his

use of law firm monies to pay personal expenses as "shareholder loans" to conceal his true income

from the IRS and evade payment of his taxes.

## *Defendant Gilmore Submitted a $493,526 Check to the IRS Issued with Insufficient Funds*

7.　　On or about October 16, 2014, despite the fact that there was no more than $2,500

in defendant GILMORE's personal bank account at the time, defendant GILMORE sent the IRS a

check from that account in the amount of $493,526 as a purported payment for his 2013 taxes.

Defendant GILMORE's check bounced due to insufficient funds. Defendant GILMORE never re-

submitted any payment in lieu of the bounced check, even following a notification from the IRS

concerning the failed payment. During this same period, from in or about late November 2014—

after the IRS sent its notification concerning the bounced check—through in or about January

2015, defendant GILMORE spent over $80,000 on expenses related to antiques, artwork,

furnishings, collectibles, and his homes. Defendant GILMORE also paid over $25,000 in

5

mortgage and related expenses for five different real estate properties that he owned or in which he had a financial interest.

### *Defendant Gilmore's Misrepresentations to the IRS*

8.    From in or about November 2014 to in or about October 2015, having been notified that the IRS could file tax liens and levies for the outstanding tax liabilities, defendant GILMORE falsely represented to an IRS collections officer on multiple occasions that he would make partial payments to the IRS for his outstanding tax liability, but made none. During this same period, on multiple occasions, defendant GILMORE also represented to the IRS collections officer that he anticipated having funds to make partial payments, but failed to disclose material facts concerning his resources, including, but not limited to, his use of law firm funds to pay for personal expenses and other debts.

### *Defendant Gilmore Filed False Tax Returns*

9.    From in or about October 2014 to in or about October 2015, defendant GILMORE filed Forms 1040 each year that underreported to the IRS his actual income from the law firm. As set forth above in paragraph 6, defendant GILMORE used law firm monies to pay personal expenses and falsely classified these monies used for personal expenses as "shareholder loans." The income reported on each of the Forms 1040 for calendar years 2013 and 2014 included only a portion of the amount of law firm monies that defendant GILMORE used for personal expenses.

In violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

6

## COUNTS 2 and 3
## (Filing False Tax Returns – Forms 1040 for Calendar Years 2013 and 2014)

      1.      Paragraphs 1 to 4, 6, and 9 of Count 1 of this Superseding Indictment are realleged and incorporated herein.

      2.      On or about the dates set forth below, in the District of New Jersey and elsewhere, defendant

### GEORGE GILMORE

did willfully make and subscribe U.S. Individual Tax Returns, Forms 1040, for the calendar years set forth below, which were verified by written declarations that the returns were made under the penalties of perjury and which he did not believe to be true and correct as to material matters.  On these income tax returns, which were filed with the IRS on or about the dates set forth below, defendant GILMORE falsely reported total income amounts on the lines set forth below, when, as he then and there well knew, he had income in excess of the amounts reported on the tax returns.

| Count | Calendar Year | Approximate Date of Filing | False Item on Line 22 of Form 1040 |
|---|---|---|---|
| 2 | 2013 | October 16, 2014 | $1,647,003 |
| 3 | 2014 | October 19, 2015 | $1,315,342 |

      In violation of Title 26, United States Code, Section 7206(1) and Title 18, United States Code, Section 2.

7

## COUNTS 4 and 5
### (Failure to Collect, Account for, and Pay Over Payroll Taxes)

1.  Paragraphs 1a to 1c, 4, and 6 of Count 1 of this Superseding Indictment are realleged and incorporated herein.

2.  At all times relevant to Counts 4 and 5 of this Superseding Indictment:

    a.  Pursuant to the Internal Revenue Code and associated statutes and regulations, including the Federal Insurance Contributions Act ("FICA"), employers were required to withhold amounts from the gross salary or wages of their employees to cover individual income, Social Security and Medicare tax obligations. Employers were required to withhold these amounts to be held in trust on behalf of the United States and remit these withheld "trust fund" amounts ("payroll taxes") over to the IRS on a periodic basis, no later than the last day of the month following the end of the quarter.

    b.  Employers were required to prepare and file an Employer's Quarterly Federal Tax Return ("Form 941"), due on the last day of the month following the end of a quarter, setting forth the total amount of wages and other compensation subject to withholding, the total amount of payroll taxes withheld, and the total tax deposits made to the IRS. Pursuant to the Internal Revenue Code, any person having authority to exercise significant control over an employer's financial affairs was deemed responsible for collecting, accounting for, and paying over payroll taxes, regardless of whether the individual in fact exercised such control.

    c.  Defendant GILMORE exercised significant control over the law firm's financial affairs. Thus, defendant GILMORE was a person responsible for collecting trust fund taxes, accounting for those taxes by filing Forms 941 with the IRS, and paying over to the IRS those taxes for the employees of the law firm.

8

3.  For the tax quarters ending March 31, 2016 and June 30, 2016, the law firm withheld tax payments from its employees' paychecks and filed Forms 941 with the IRS, but defendant GILMORE failed to pay over in full the payroll taxes due to the IRS.

4.  Beginning on or about April 30, 2016 and continuing up to and including on or about July 31, 2016, in the District of New Jersey and elsewhere, defendant

### GEORGE GILMORE

did willfully fail to truthfully account for and pay over to the IRS all of the payroll taxes due and owing to the United States on behalf of Gilmore & Monahan, P.A., and its employees, for each of the following quarters, with each calendar quarter constituting a separate count of this Indictment:

| Count | Tax Quarter Ending | Approximate Date of Filing |
|-------|--------------------|----------------------------|
| 4     | March 31, 2016     | April 30, 2016             |
| 5     | June 30, 2016      | July 31, 2016              |

In violation of Title 26, United States Code, Section 7202 and Title 18, United States Code, Section 2.

9

## COUNT 6
## (False Statements in a Loan Application)

1.      Paragraph 1a of Count 1 of this Superseding Indictment is realleged and incorporated herein.

2.      At all times relevant to Count 6 of this Superseding Indictment:

a.      Ocean First Bank N.A. (the "Bank") was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation.

b.      To apply for a mortgage loan from the Bank, borrowers typically filled out a Uniform Residential Loan Application form ("URLA"). The Bank evaluated and relied upon representations contained in the URLA pertaining to the borrower's income, assets, liabilities, and credit eligibility, as well as other documents, in deciding whether to loan a particular borrower money for a mortgage.

c.      Section VI of the URLA required borrowers to list assets, liabilities, and pledged assets. Question f in Section VIII of the URLA asked borrowers: "Are you presently delinquent or in default of any Federal debt or any other loan, mortgage, financial obligation, bond or loan guarantee?" Section IX of the URLA contained an affirmation by the borrower, which included the following statement:

> the Information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this Information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq. . . . .

d.      Prior to making a mortgage loan, the Bank evaluated whether the borrower satisfied, among other things, income, credit eligibility, and down payment requirements to qualify

for the requested financing. The Bank performed its evaluation by reviewing the representations set forth in the URLA and related documents.

3.      On or about November 21, 2014, defendant GILMORE reviewed, signed, and submitted to the Bank, located in Toms River, New Jersey, a URLA to obtain refinancing of a mortgage loan for $1,500,000 with a "cash-out" provision that provided that defendant GILMORE would obtain cash from the mortgage loan.

4.      On or about January 22, 2015, defendant GILMORE reviewed, signed, and submitted to the Bank, located in Toms River, another URLA (the "January 2015 URLA") for the same mortgage loan of $1.5 million, updating his November 21, 2014 URLA.

5.      In or about January 2015, defendant GILMORE had outstanding liabilities that included unpaid federal personal income taxes due and owing for calendar year 2013 and outstanding loans that he had obtained from others.

6.      In Section VI of the January 2015 URLA, defendant GILMORE intentionally omitted his outstanding 2013 tax liabilities and personal loans.

7.      In Section VIII of the January 2015 URLA, defendant GILMORE falsely declared "no" in response to question f, which asked: "Are you presently delinquent or in default of any Federal debt or any other loan, mortgage, financial obligation, bond or loan guarantee?"

8.      In Section IX of the January 2015 URLA, defendant GILMORE falsely affirmed that the information provided therein, including his statements in Section VI and VIII, was true and correct as of January 22, 2015.

9.      Based on the January 2015 URLA and other information that defendant GILMORE submitted to the Bank related to his mortgage loan application, the Bank approved defendant

11

GILMORE's application for the loan and defendant GILMORE received approximately $572,000 from the cash out portion of the loan from the Bank.

10.     On or about January 22, 2015, in the District of New Jersey and elsewhere, defendant

### GEORGE GILMORE

knowingly made false statements for the purpose of influencing the actions of the Bank upon his application for the mortgage loan described in paragraphs 3 and 4 of Count 6 of this Indictment.

In violation of Title 18, United States Code, Section 1014 and Section 2.

RACHAEL A. HONIG
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

CASE NUMBER: 19- *029 (AET)*

## United States District Court
## District of New Jersey

### UNITED STATES OF AMERICA

v.

### GEORGE GILMORE

## SUPERSEDING INDICTMENT FOR

18 U.S.C. § 1014
18 U.S.C. § 2
26 U.S.C. §§ 7201, 7202 & 7206(1)

**RACHAEL A. HONIG**
*ATTORNEY FOR THE UNITED STATES*
*ACTING UNDER AUTHORITY CONFERRED BY 28 U.S.C. § 515*
*TRENTON, NEW JERSEY*

MATTHEW J. SKAHILL
JIHEE G. SUH
*ASSISTANT U.S. ATTORNEYS*

*856-968-4929*
*973-645-2836*

THOMAS F. KOELBL
*TRIAL ATTORNEY*
*UNITED STATES DEPARTMENT OF JUSTICE*
*TAX DIVISION*
*202-514-5891*

# EXHIBIT D

## Tax Offenses *(26 U.S.C. §§ 7201, 7203, 7206(1))*

6.26.7201      Tax Evasion - Elements of the Offense (26 U.S.C. § 7201)

6.26.7201-1    Tax Evasion - Tax Deficiency Defined

6.26.7201-2    Tax Evasion - Computation of Tax Deficiency

6.26.7201-3    Tax Evasion - Affirmative Attempt to Evade or Defeat Defined

6.26.7201-4    Tax Evasion - Willfully Defined (revised 2014)


6.26.7203      Failure to File a Tax Return - Elements of the Offense (26 U.S.C. § 7203)

6.26.7203-1    Failure to File a Tax Return - Requirement That a Return Be Filed

6.26.7203-2    Failure to File a Tax Return - Failure To File


6.26.7206      False Income Tax Return - Elements of the Offense (26 U.S.C. § 7206(1))

6.26.7206-1    False Income Tax Return - Making or Subscribing a Return Defined

6.26.7206-2    False Income Tax Return - Return Made Under Penalties of Perjury

6.26.7206-3    False Income Tax Return - Return Was Materially False

6.26.7206-4    False Income Tax Return - Defendant's Knowledge of Falsity

6.26.7206-5    False Income Tax Return - Unanimity as to Falsity

**6.26.7201      Tax Evasion - Elements of the Offense (26 U.S.C. § 7201)**

**Count** *(No.)* **of the indictment charges the defendant** *(name)* **with income tax evasion, which is a violation of federal law.**

**In order to find the defendant guilty of this offense, you must find that the government proved each of the following three elements beyond a reasonable doubt:**

**First:  That** *(name)* **had a substantial income tax deficiency;**

**Second: That** *(name)* **made an affirmative attempt to evade or defeat the** *(assessment) (payment)* **of the income tax; and**

**Third: That** *(name)* **acted willfully.**

**Comment**

Hon. Leonard Sand, John S. Siffert, Walter P. Loughlin, Steven A. Reiss & Nancy Batterman, Modern Federal Jury Instructions - Criminal Volumes 59-2 (Matthew Bender 2003) [hereinafter, Sand et al., supra]; Kevin F. O'Malley, Jay E. Grenig, & Hon. William C. Lee, 1A Federal Jury Practice and Instructions § 67.03 [hereinafter O'Malley et al., supra].

26 U.S.C. § 7201 provides:

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony . . . .

If the charge involves a tax other than the income tax, the instructions should be modified.

In *Sansone v. United States*, 380 U.S. 343 (1965), the Court stated:

[T]he elements of § 7201 are willfulness; the existence of a tax deficiency; and an affirmative act constituting an evasion or attempted evasion of the tax.

380 U.S. at 351 (citations omitted); *see also Boulware v. United States,* 128 S. Ct. 1168, 1173 n.2 (2008) (stating elements); *United States v. Voigt*, 89 F.3d 1050, 1089 (3d Cir. 1996) (stating elements); *United States v. Farnsworth*, 302 F. App'x. 110, 2008 WL 5174899 (3d Cir. 2008) (stating elements).  The deficiency must be substantial.  *See United States v. McKee*, 506 F.3d.

2

225, 235-36 (3d Cir. 2007).  In addition to this instruction, the court should also give Instructions 6.26.7201-1 (Tax Evasion - Tax Deficiency Defined), 6.26.7201-2 (Tax Evasion - Computation of Tax Deficiency), 6.26.7201-3 (Tax Evasion - Affirmative Attempt to Evade or Defeat Defined), and 6.26.7201-4 (Tax Evasion - Willfully Defined).

There are two types of tax evasion: evasion of assessment and evasion of payment.  This distinction may require further explanation to the jury in some cases.  The Third Circuit has explained:

> Section 7201 encompasses two kinds of affirmative behavior: the evasion of assessment and the evasion of payment.  Evasion of assessment cases are far more common.  The affirmative act requirement in such a case is satisfied, inter alia, with the filing of a false return.  *See, e.g., Sansone,* 380 U.S. at 351-52, 85 S. Ct. at 1010-11.  If the false filing is shown to be willful, the offense is complete with the filing.  *See id.*  Evasion of payment cases are rare, and the required affirmative act generally occurs after the filing, if there is a filing at all.  *United States v. Mal,* 942 F.2d 682, 687 (9th Cir. 1991) (evasion of payment "involves conduct designed to place assets beyond the government's reach after a tax liability has been assessed") (emphasis added). . . .

> Affirmative acts of evasion of payment include:  placing assets in the name of others; dealing in currency; causing receipts to be paid through and in the name of others; and causing debts to be paid through and in the name of others.  For example, in *Spies,* the petitioner "insisted that certain income be paid to him in cash, transferred it to his own bank by armored car, deposited it, not in his own name but in the names of others of his family, and kept inadequate and misleading records."  The Supreme Court found this evidence sufficient to sustain a finding of attempted evasion.  *Spies,* 317 U.S. at 499, 63 S. Ct. at 368 (emphasis added).  In *Conley,* the Court of Appeals for the Seventh Circuit affirmed a § 7201 conviction where the defendant placed assets in his sons' names, deposited his assets with others, dealt in currency, and paid creditors but not the government.

*United States v. McGill,* 964 F.2d 222, 230 (3d Cir. 1992) (emphasis omitted) (citing *United States v. Conley*, 826 F.2d 551, 557 (7th Cir. 1987)).  *See also United States v. Root*, 585 F.3d 145, 151-54 (3d Cir. 2009) (discussing distinction).

If a defendant is charged with tax evasion of either type and failed to file a tax return, the court may need to instruct the jury that the government must prove a tax assessment beyond a reasonable doubt.  When a defendant files a tax return, the return represents a self-assessment, so the issue does not arise.

According to Sand, the Third Circuit is alone in suggesting that evasion of payment and evasion of assessment are two separate offenses, a suggestion found only in dictum.  *See* Sand et al., supra, 59-3 (Comment).  In *United States v. Farnsworth*, 456 F.3d 394 (3d Cir. 2006), the Third Circuit raised a question concerning the elements of evasion of payment.  Denying the

government's petition for mandamus, the court held that the trial court "did not commit a clear error of law when it ruled that it would instruct the jury that the existence of an assessment is a prerequisite to a conviction for attempted evasion of payment under 26 U.S.C. § 7201." 456 F.3d at 401. The court noted that "[t]he only two Third Circuit opinions to discuss whether attempted evasion of payment requires an assessment have commented in dicta that it does." 456 F.3d at 401.

In *Farnsworth*, the court discussed its dicta in *United States v. McGill*, 964 F.2d 222 (3d Cir. 1992), and *United States v. McLaughlin*, 126 F.3d 130 (3d Cir. 1997). In *McGill*, the court stated that "[e]vasion of payment cases are rare, and the required affirmative act generally occurs after the filing, if there is a filing at all" and cited a Seventh Circuit case as standing for the proposition that "evasion of payment 'involves conduct designed to place assets beyond the government's reach after a tax liability has been assessed.'" 964 F.2d at 230. In *McLaughlin*, the court stated that, "[h]ad the government charged the [defendants] with evasion of payment, it would have had to prove a valid assessment from which the [defendants] hid assets." 126 F.3d at 136 (citations omitted).

In *Farnsworth*, the court acknowledged that several other Courts of Appeals have determined that proof of an assessment is not necessary. 456 F.3d at 402. The court then concluded:

> Given this relevant precedent, we agree with the Government that the weight of authority favors its view that an assessment is not required to prove attempted evasion of payment under § 7201. In the end, however, in light of our own dicta in *McGill* and *McLaughlin*, and the general lack of clarity in this area of law, we cannot conclude that the District Court's proposed jury instruction was clearly erroneous.

456 F.3d at 403.

Ultimately, the district court did not instruct on assessment in Farnsworth's trial. Farnsworth then unsuccessfully challenged the resulting conviction. In *United States v. Farnsworth*, 302 F. App'x. 110, 2008 WL 5174899 (3d Cir. 2008), a non-precedential opinion, the Third Circuit explained that its earlier decision in *Farnsworth* addressed only the question of whether the proposed assessment instruction "constituted 'a clear error of law.'" Stressing the reservations the court had expressed in the first *Farnsworth* decision, the Third Circuit concluded that the trial court did not commit error by declining to instruct that an assessment is a necessary element of attempted evasion of payment.

Section 7203 is a lesser included offense under 26 U.S.C. § 7201. *McGill*, 964 F.2d at 231.

(Revised 11/2010)

4

**6.26.7201-1  Tax Evasion - Tax Deficiency Defined**

The first element that the government must prove beyond a reasonable doubt is that (*name*) **had a substantial tax deficiency due and owing, that is that** (*name*) **owed** (*a substantial federal income tax*) (*substantially more federal income tax than (he)(she) reported on (his)(her) tax return*) (*substantially more federal income tax than (he)(she) paid*) **for calendar year**(*s*) (*specify year(s)*)**.**

The government does not have to prove the exact amount that (*name*) **owed or that** (*name*) **evaded all of the taxes charged in the indictment.  The government is required to establish only that** (*name*) **owed a substantial amount of income tax during the year**(*s*) **in question, regardless whether it is more or less than the amount set forth in the indictment.**

**Comment**

Sand et al., supra, 59-4.

In *United States v. Burdick*, 221 F.2d 932, 934 (3d Cir. 1955), the Third Circuit explained "it is not necessary to prove evasion of the entire amount alleged in the indictment.  It is sufficient to prove that a substantial amount of tax liability has been willfully evaded."  *See United States v. McKee*, 506 F.3d. 225, 235-36 (3d Cir. 2007).  In *United States v. Wilson*, 601 F.2d 95, 99 (3d Cir. 1979), the Third Circuit stated that, where the government relies on proof that the defendant did not report income, the government does not have to prove the exact amount of the unreported income, but only that the defendant failed to report a substantial amount of income.

The court may want to consider providing the jury guidance in determining whether the amount of tax evaded was "substantial."  The Third Circuit has not defined the term in this context, nor have most of the other circuits.  *But see United States v. Nunan*, 236 F.2d 576, 585 (2d Cir. 1956).  In light of the limited case law on the meaning of "substantial" in this context, the court may instruct the jury to rely on the common meaning for the word "substantial."

Alternatively, the court may instruct the jury:

5

Whether the amount is "substantial" turns on whether under the surrounding circumstances the amount of the deficiency would be significant to an ordinary person.

**6.26.7201-2   Tax Evasion - Computation of Tax Deficiency**

In order to prove a tax deficiency in this case, the government has introduced evidence that *(name)* received income that was omitted from *(his)(her)* tax return, that is, *(describe the specific item of income or other evidence which is the basis for the allegation of evasion)*.

If you find, based on all the evidence, that the government has established beyond a reasonable doubt that *(name)* received income *(in addition to what (he)(she) reported on (his)(her) income tax return for the year in question)*, then you must decide whether there was a substantial tax due *(in addition to what was shown to be due on the return)(in addition to what (name) paid)*, as a result of *(name)*'s *(additional,)* unreported income.  In reaching your decision on this issue, you should consider, along with all the other evidence, the testimony introduced during the trial concerning the computation of *(name)*'s tax liability, when the alleged *(additional)* income was taken into account.

If you find, based on all the evidence, that the government has established beyond a reasonable doubt that *(name)* received *(additional)* income, and that there was a substantial tax due *(in addition to what was shown to be due on (his)(her) income tax return) (in addition to what (name) paid)*, as a result of this *(additional)* income, then this first element has been satisfied.

7

**Comment**

Sand et al., supra, 59-5.

This instruction addresses tax evasion based on unreported income. If the government relies on the proof that the defendant overstated deductions, the court should modify the instruction accordingly.

In *United States v. Smith*, 206 F.2d 905, 910 (3d Cir. 1953), the Third Circuit addressed the way in which the government established the defendant's tax deficiency. First, the court addressed the government's approach to establishing income:

> [T[he Government did not rely upon bald cash items and let it go at that. Whether the item was cash or a check, it was traced to its source and shown to be income within the legal sense of that term.

Second, the court addressed and rejected the defendant's argument that he was entitled to additional deductions and exemptions.

> Defendant filed no returns and refused to make his records available to the investigating revenue agents. Having reconstructed defendant's income from what material it could unearth, the Government showed substantial net income. Defendant complains, however, that he was not allowed exemptions for his wife and his two children, that he had certain bad debts, charitable contributions, and expenses which are deductible. The trouble is that there is no proof as to these matters or, where there are intimations in the record, the jury did not draw the inference which defendant seeks. The Government made out a case for the jury by showing substantial net income. Of course, defendant could controvert this evidence by testimony that he was entitled, under the law, to certain deductions which the Government did not allow him. The only testimony he introduced on this point was in attempting to establish certain business expenses. No one would doubt that the jury was not bound to believe the underlying facts upon which he says those deductions are based.

*Smith*, 206 F.2d at 910 (citations omitted). *See also United States v. Marabelles*, 724 F.2d 1374, 1383 (9th Cir. 1984) (noting defendant's burden to establish deductions).

In *Boulware v. United States*, 128 S. Ct. 1168 (2008), the Supreme Court rejected the argument that the defendant was required to present evidence of intent to treat a corporate distribution as a return of capital rather than income. The Court stated:

Sections §§ 301 and 316(a) [of Title 26] govern the tax consequences of

8

constructive distributions made by a corporation to a shareholder with respect to its stock. A defendant in a criminal tax case does not need to show a contemporaneous intent to treat diversions as returns of capital before relying on those sections to demonstrate no taxes are owed.

128 S. Ct. at 1182.

In certain cases, it may be appropriate to instruct that in determining the issue of the taxable income of the defendant, no distinction is made between income derived from lawful or unlawful sources.  *See* 2 Devitt, Blackmar & O'Malley, *Federal Jury Practice and Instructions* § 56.21 (4th ed. 1990).

(Revised 12/2009)

**6.26.7201-3   Tax Evasion - Affirmative Attempt to Evade or Defeat Defined**

The second element that the government must prove beyond a reasonable doubt is that *(name)* made an affirmative attempt to evade or defeat a tax.  The phrase "attempt to evade or defeat any tax" involves two things: first, the formation of an intent to evade or defeat a tax; and, second, willfully performing some act to accomplish the intent to evade or defeat that tax.

The government must first prove beyond a reasonable doubt that *(name)* knew and understood that during the calendar year*(s) (specify year(s))*, *(he)(she)* had a tax deficiency.  The government then must prove beyond a reasonable doubt that *(name)* intended to evade or defeat the tax due and that *(name)* also willfully did some affirmative act to try to accomplish this intent to evade or defeat that tax.

An affirmative act is an act done to mislead the government with respect to the amount of taxes due and owing for the year*(s)* in question or to conceal income to avoid the assessment or payment of a tax.  In this case, the government alleges in the indictment that *(name) (describe specific affirmative act(s) alleged in the indictment)*.  Even otherwise lawful or innocent conduct may constitute an affirmative act if you find that *(name)* acted with intent to conceal income or mislead the government.  An act likely to mislead the government or conceal funds satisfies this element.  *[However, failing to file a federal tax return, standing alone, is not an affirmative attempt to evade or defeat a tax.]*

*[The government needs only to prove one act to satisfy this element of the offense,*

10

*but you must unanimously agree on which (act was) (or acts were) committed.]*

**Comment**

O'Malley et al., supra, § 67.04, Sand et al., supra, 59-7.

The court should instruct on the unanimity requirement if the government alleges more than one affirmative act.  If the proof establishes that the defendant failed to file a tax return as required, the court should instruct that failure to file alone is not sufficient to establish an affirmative act.

This offense requires proof of an affirmative act to mislead or conceal.  A mere omission is not sufficient.  *See United States v. McKee*, 506 F.3d. 225, 235-36 (3d Cir. 2007); *United States v. McGill*, 964 F.2d 222 (3d Cir. 1992).  In *McGill*, the Third Circuit stated:

> [T]he failure of the taxpayer to report the opening of an account in his or her own name in his or her own locale cannot amount to an affirmative act of evasion. Omissions, including failures to report, do not satisfy the requirements of § 7201; the Government must prove a specific act to mislead or conceal.  McGill testified that he opened the account on the advice of counsel in response to IRS criticism for banking under the names of others.  There is no evidence that McGill concealed this new account from the IRS apart from the fact that he did not inform the IRS of its existence.

*McGill*, 964 F.2d at 233-234 (internal citation omitted).  Thus, failure to file a return does not violate the statute in the absence of proof of affirmative conduct to mislead or conceal.  *See United States v. Goodyear*, 649 F.2d 226, 228 (4th Cir. 1981).

In *Spies v. United States*, 317 U.S. 492, 499 (1943), the Court discussed the affirmative act requirement:

> Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation.  Nor would we by definition constrict the scope of the Congressional provision that it may be accomplished 'in any manner'.  By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal.  If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime.

11

The government does not need to introduce direct evidence of intent to evade payment of taxes in order to prove the affirmative act required by the statute.  Instead, intent can be inferred from the defendant's conduct, even from acts that are entirely consistent with innocent behavior.  *See United States v. Voigt*, 89 F.3d 1050, 1090 (3d Cir. 1996).  The affirmative act may be otherwise lawful or innocent conduct.  *See Voigt*, 89 F.3d at 1089 (concluding that acts such as defendant's "refusal to pay for a piece of jewelry in cash; his use of bizarre confidentiality agreements; and his maintenance of overseas bank accounts taken together, provided the jury with sufficient evidence from which it could infer that they were 'designed' to evade the payment of admitted tax deficiencies, even if such actions otherwise might constitute wholly innocent conduct . . . .").  Some courts have held that filing a false document with the IRS constituted an affirmative act under the statute.  *See, e.g.*, *United States v. King*, 126 F.3d 987, 990 (7th Cir. 1997) (holding conviction could rest on false W-4); *United States v. Robinson*, 974 F.2d 575 (5th Cir. 1992) (holding conviction could rest on false 1040 form even if it did not qualify as a "return").

An affirmative act may apply to the evasion of tax owed for more than one tax year.  Moreover, an indictment may also charge in one count a continuing series of affirmative acts designed to evade the payment of tax during multiple years.  Thus, in *United States v. Pollen,* 978 F.2d 78 (3d Cir. 1992), the Court upheld convictions on three 7201 counts which each charged a particular act of evasion, such as a transfer of funds, taken with the intent to evade the payment of tax for the same seven tax years.  In addition, the Court affirmed a conviction for an additional count which charged that, during a three-year period, the defendant engaged "in a continuous scheme and course of conduct to conceal assets from the IRS."  *Id.* at 82.  The scheme included the use of currency, money orders, and cashier's checks to buy assets and pay expenditures, and the use of nominees to conceal expenditures.  *Id.*  Thus, the appropriate unit of prosecution may be either a single affirmative act, or a course of conduct.  *Id.* at 84-85.

**6.26.7201-4   Tax Evasion - Willfully Defined**

The third element the government must prove beyond a reasonable doubt is that *(name)* acted willfully.  "Willfully" means a voluntary and intentional violation of a known legal duty.  *(Name)*'s conduct was not willful if *(he)(she)* acted through negligence, mistake, accident, or due to a good faith misunderstanding of the requirements of the law.  A good faith belief is one that is honestly and genuinely held.

*[This definition of "willfulness" applies to all of the tax offenses charged in this case.]*

*[However, mere disagreement with the law or belief that the tax laws are unconstitutional or otherwise invalid does not constitute a good faith misunderstanding of the requirements of the law; all persons have a duty to obey the law whether or not they agree with it.]*

**Comment**

*See Cheek v. United States*, 498 U.S. 192 (1991).  For model instructions on willfully and the good faith defense generally, *see* Instructions 5.05 (Willfully) and 5.07 (Good Faith Defense). Those instructions may be used, when appropriate under the circumstances of the case, to supplement this instruction.  However, caution should be exercised in giving Instruction 5.07 (Good Faith Defense) in tax cases. *See United States v. Basile*, 2014 WL 2937030 (3d Cir. 2014) (non-precedential), and discussion below.

In *Cheek*, the Court reaffirmed that "willfully" in federal tax statutes means "voluntary, intentional violation of a known legal duty" and therefore requires proof that the defendant had actual knowledge that the law imposed a legal duty and voluntarily and intentionally violated that duty.  498 U.S. at 201-02.  However, it is not necessary to define "willful" in terms of "evil motive" or "bad purpose."  *United States v. Pomponio*, 429 U.S. 10, 11-12 (1976).  The definition of "willfully" in tax cases mandates the conclusion that a defendant cannot be found guilty if the jury concludes that the defendant honestly believed the tax laws did not make his or

13

her conduct criminal, even if that belief was unreasonable.  *Cheek*, 498 U.S. at 201-02.  In *Cheek*, the Court reasoned that, because of the complexity of federal tax laws, citizens may honestly not realize their conduct is criminal and thus may innocently believe they are not violating the law.  If the jury finds that the defendant made a mistake about or was ignorant whether his or her conduct violated the law, then the jury must find that the government failed to meet its burden of proving willfulness beyond a reasonable doubt.  The mistake or ignorance need not be reasonable, as long as it is honest or genuine.  Of course, the jury can disbelieve the defendant's claim of mistake, find that it was not honestly or genuinely held, and therefore find that the defendant did act willfully.  *Cheek*, 498 U.S. at 201-02.  *See also United States v. Evans*, 356 F. App'x. 580 (3d Cir. 2009) (non-precedential).

        The Third Circuit case law tracks that of the Supreme Court.  *See also United States v. Stadtmauer,* 629 F.3d 238 (3d Cir. 2010) (noting requirement that government prove the defendant voluntarily and intentionally violated a known legal duty and holding that willful blindness instruction should not be given on question of willful violation of legal duty);  *United States v. Evans*, 356 F. App'x. 580 (3d Cir. 2009) (non-precedential) (holding that willfulness instruction adequately covered good faith and allowed defendant to argue his theory of the case); *United States v. DePaoli*, 41 F. App'x. 543 (3d Cir. 2002) (holding that instructions in tax evasion case properly conveyed good faith defense and did not lead jury to apply requirement that good faith belief be objectively reasonable); *see also United States v. Moses*, 148 F.3d 277, 283 (3d Cir. 1998) (discussing "willfully" requirement in failure to file case); *United States v. Greenlee*, 517 F.2d 899 (3d Cir. 1975) (same).  The definition of "willfully" is the same for all tax offenses.  *Pomponio*, 429 U.S. at 12.  In *United States v. Basile*, 2014 WL 2937030 (3d Cir. 2014) (non-precedential), the Third Circuit rejected the defendants' argument that the following instruction permitted the jury to reject their claim of good faith if the jury found it to be unreasonable:

        *A belief need not be objectively reasonable to be held in good faith*; nevertheless, you may consider whether the Defendant's stated belief about the tax statutes was reasonable as a factor in deciding whether the belief was honestly or genuinely held.

The Third Circuit held that this instruction accurately stated the law.  Language from Instruction 5.07 (Good Faith Defense) may not be appropriate in tax cases.  *United States v. Basile*, 2014 WL 2937030 (3d Cir. 2014) (non-precedential).  In *Basile*, the court emphasized that, in tax cases, a good faith defense can rest on ignorance of or a mistake concerning the law. *Basile*, 2014 WL 2937030 (citing *Cheek*).

        Disagreement with the law does not amount to good faith.  *Cheek*, 498 U.S. at 206; *United States v. Simkanin,* 420 F.3d 397, 404-12 (5th Cir. 2005).  An instruction to this effect should be given in appropriate cases.

        In some cases, the judge may choose to instruct the jury specifically that the defendant's claim that the tax laws are invalid, unconstitutional, or inapplicable is incorrect as a matter of

14

law.

(Revised 2014)

**6.26.7203      Failure to File a Tax Return - Elements of the Offense (26 U.S.C. § 7203)**

**Count** *(No.)* **of the indictment charges the defendant** *(name)* **with willfully failing to file tax returns in the years** *(year number)* **through** *(year number)***, which is a violation of federal law.**

**In order to find the defendant guilty of this offense, you must find that the government proved each of the following three elements beyond a reasonable doubt:**

**First: That** *(name)* **was required to file an income tax return;**

**Second: That** *(name)* **did not file a tax return at or before the time required by law or regulation;**

**Third: That** *(name)***'s failure to file was willful.**

**Comment**

26 U.S.C. § 7203 provides:

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor . . . .  In the case of a willful violation of any provision of section 6050I, the first sentence of this section shall be applied by substituting "felony" for "misdemeanor" and "5 years" for "1 year".

The court should also give Instructions 6.26.7203-1 (Failure to File a Tax Return - Requirement That a Return Be Filed), 6.26.7203-2 (Failure to File a Tax Return - Failure To File), and 6.26.7201-4 (Tax Evasion - Willfully Defined).  If the defendant is charged with failing to pay tax or estimated tax, keep records, or supply information, the instruction should be modified.

§ 6050I (a) provides:

Cash receipts of more than $10,000.--Any person--

16

> (1) who is engaged in a trade or business, and
> (2) who, in the course of such trade or business, receives more than $10,000 in
> cash in 1 transaction (or 2 or more related transactions),
> shall make the return described in subsection (b) with respect to such transaction
> (or related transactions) at such time as the Secretary may by regulations
> prescribe.

If the government alleges a violation of § 6050I, the court should modify the instruction to clarify that the first element requires proof of receipt in trade or business of more than $10,000 in a single transaction or related transactions.

In *United States v. McGill*, 964 F.2d 222 (3d Cir. 1992), the Third Circuit distinguished between tax evasion in violation of § 7201 and willful failure to file under § 7203:

> Merely failing to pay assessed taxes, without more, however, does not constitute
> evasion of payment, though it may satisfy the requirements for the willful failure
> to pay taxes under § 7203.  Only affirmatively evasive acts - acts intending to
> conceal - are punishable under § 7201.

*McGill*, 964 F.2d at 231 (citation omitted).  A defendant need not take affirmative action to be convicted under § 7203.  Section 7203 is a lesser included offense under 26 U.S.C. § 7201. *McGill*, 964 F.2d at 231.

In *United States v. Street*, 370 F. App'x. 343 (3d Cir. 2010) (non-precedential), the Third Circuit rejected the argument that the defendant had not violated the statute because his accountant had "made" the returns, although the defendant had not then filed them.  The court quoted the Seventh Circuit's explanation that "[m]aking a tax return is a term of art for the combination of completing and filing; any accountant or lawyer would have told [the defendant] so, had he asked." *United States v. Dunkel*, 900 F.2d 105, 108 (7th Cir.1990), vacated on other grounds, 498 U.S. 1043, 111 S.Ct. 747, 112 L.Ed.2d 768 (1991).

In *United States v. Siceloff*, 451 Fed. App'x. 183 (3d Cir. 2011) (non-precedential), the Third Circuit held that the prosecution need not prove that the IRS had assessed the tax owed by the defendant in order to prove a violation of this statute.

(Revised 10/2012)

**6.26.7203-1   Failure to File a Tax Return - Requirement That a Return Be Filed**

The first element that the government must establish beyond a reasonable doubt is that *(name)* was required to file an income tax return for the tax year*(s)* in question.

During the relevant tax year, *(specify year)*, the law of the United States required that anyone having a gross income of *(specify amount)* or more during a tax year was required to file an income tax return, regardless of whether a tax was due for that year.  Therefore, the government must establish, beyond a reasonable doubt, that *(name)*'s gross income for the calendar year ending December 31, *(specify year)*, was more than *(specify amount)*.

**Comment**

Sand et al., supra, 59-15.

If an issue arises concerning whether certain amounts should be included in gross income, the court should instruct on that question.  O'Malley includes the following language:

A person is required to file a federal income tax return for any calendar year in which [he] [she] has gross income in excess of $ _____ . Gross income means the total of all income received before making any deductions allowed by law. Gross income includes the following: (1) Compensation for services, including fees, commissions and similar items; (2) Gross income derived from business; (3) Gains derived from dealings in property; (4) Interest; (5) Rents; (6) Royalties; (7) Dividends; (8) Alimony and separate maintenance payments; (9) Annuities; (10) Income from life insurance and endowment contracts; (11) Pensions; (12) Income from discharge of indebtedness; (13) Distributive share of partnership gross income; (14) Income in respect of a decedent; and (15) Income from an interest in an estate or trust.

O'Malley § 67.12.  The Eleventh Circuit includes the following language in its instruction on tax evasion:

18

Federal income taxes are levied upon income derived from compensation for personal services of every kind and in whatever form paid, whether as wages, commissions, or money earned for performing services. The tax is also levied upon profits earned from any business, regardless of its nature, and from interest, dividends, rents and the like. The income tax also applies to any gain derived from the sale of a capital asset. In short, the term "gross income" means all income from whatever source unless it is specifically excluded by law.

On the other hand, the law does provide that funds acquired from certain sources are not subject to the income tax. The most common non-taxable sources are loans, gifts, inheritances, the proceeds of insurance policies, and funds derived from the sale of an asset to the extent those funds equal the cost of the asset.

*See* Eleventh Circuit § 93.1.

19

### 6.26.7203-2   Failure to File a Tax Return - Failure To File

The second element that the government must establish beyond a reasonable doubt is that *(name)* failed to file an income tax return for the tax year*(s)* in question at or before the time required.

An individual taxpayer who must file an income tax return is required to file *(his)(her)* return on or before April 15 of the year following the taxable year in question.  Therefore, in order to satisfy this second element, the government must prove beyond a reasonable doubt that *(name)* failed to file *(his)(her)* income tax return*(s)* on or before April 15, *(specify year(s))*.

### Comment

Sand et al., *supra*, 59-16.

If the date for filing taxes was extended later than April 15 in one of the tax years involved, the instruction should be modified accordingly.

20

**6.26.7206    False Income Tax Return - Elements of the Offense (26 U.S.C. § 7206(1))**

**Count** *(No.)* **of the indictment charges the defendant** *(name)* **with filing a false tax return** *(statement) (document)***, which is a violation of federal law.**

**In order to find the defendant guilty of this offense, you must find that the government proved each of the following four elements beyond a reasonable doubt:**

**First: That** *(name)* **made and subscribed and filed an income tax return** *(statement) (document)***;**

**Second: That the tax return** *(statement) (document) [(contained) (is verified by)]* **a written declaration that it was made under the penalties of perjury;**

**Third: That the return was false regarding a material matter;**

**Fourth: That** *(name)* **did not believe the return** *(statement) (document)* **was true and correct as to that material matter; and**

**Fifth: That** *(name)* **acted willfully.**

**Comment**

26 U.S.C. § 7206(1) provides that any person who

Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter

shall be guilty of a felony.

The court should also give Instructions 6.26.7206-1 (False Income Tax Return - Making or Subscribing a Return Defined), 6.26.7206-2 (False Income Tax Return - Return Made Under Penalties of Perjury), 6.26.7206-3 (False Income Tax Return - Return Was Materially False), 6.26.7206-4 (False Income Tax Return - Defendant's  Knowledge of Falsity), and, if appropriate,

21

6.26.7206-5 (False Income Tax Return - Unanimity as to Falsity).

In *United States v. Gollapudi*, 130 F.3d 66, 71-72 (3d Cir. 1997), the Third Circuit stated that in order to convict the defendant under this section:

> [T]he government had to prove that (1) defendant made and subscribed a return which was false as to a material matter; (2) the return contained a written declaration that it was made under the penalties of perjury; (3) defendant did not believe the return was true and correct as to every material matter; and (4) defendant falsely subscribed to the return willfully, with the specific intent to violate the law.

As indicated, the offense requires specific intent. As a result, the court must also instruct on willfully. *See* 6.26.7201-4 (Tax Evasion - Willfully Defined). The court may give a willful blindness instruction addressing the defendant's knowledge of the falsity of the information. See 6.26.7206-4 (False Income Tax Return - Defendant's Knowledge of Falsity).  However, the court should not give an instruction that suggests that willful blindness will satisfy the requirement that the defendant had specific intent to violate the law. *See United States v. Stadtmauer,* 629 F.3d 238 (3d Cir. 2010).

The existence of a tax deficiency or loss to the government is not an element of the offense.  *United States v. Olgin*, 745 F.2d 263, 272 (3d Cir. 1984).

In *Gollapudi*, the defendant argued unsuccessfully that "the literal truth of the information on a tax return is a complete defense, even if the response on the return was highly misleading."  130 F.3d at 72.  The Third Circuit concluded nevertheless that

> there was ample evidence for the District Court to find that Gollapudi filed a false statement. First, an IRS agent testified that Gollapudi admitted that he prepared and signed the W-2 forms and that they were false. Additionally, although Gollapudi presented evidence that the withholding amounts were true based on his "gross up" method, the District Court found this theory to be without merit based on the testimony of another IRS agent who demonstrated that no withholding was actually made. Moreover, it was established that the alleged withholding was never submitted to the IRS, but rather, was maintained in Gollapudi's corporate checking account. . . .  [H]e misstated the amount of his withholdings. Despite the fact that he understood his obligations, he submitted a form which he did not believe was true and accurate as to every material matter.

130 F.3d at 72 (citation omitted).

(Revised 11/2010)

**6.26.7206-1   False Income Tax Return - Making or Subscribing a Return Defined**

The first element that the government must prove beyond a reasonable doubt is that *(name)* **made and subscribed and filed a tax return** *(statement) (document)***.**

A tax return is made and subscribed to at the time it is signed.  A tax return is filed at the time it is delivered to the Internal Revenue Service.

**Comment**

Sand et al., supra, 59-21.

**6.26.7206-2   False Income Tax Return - Return Made Under Penalties of Perjury**

The second element that the government must prove beyond a reasonable doubt is that the return *(statement) (document) [(contained) (was verified by)]* a written declaration that it was made under penalty of perjury.

To satisfy this element, the government must prove that on its face the return *(statement) (document)* contained a statement indicating that the return was made under penalty of perjury.

**Comment**

Sand et al., supra, 59-22.

24

**6.26.7206-3   False Income Tax Return - Return Was Materially False**

The third element that the government must prove beyond a reasonable doubt is that the return was false regarding a material matter.

An income tax return may be false not only by reason of understatement of income, but also because of an overstatement of lawful deductions or because deductible expenses are mischaracterized on the return.

The false statement in the return must be material.  This means that it must be essential to an accurate determination of *(name)*'s tax liability.  However, the government does not need to prove the existence of a tax deficiency or loss to the government.

**Comment**

Sand et al., supra, 59-23.

The question of materiality is for the jury.  *See Neder v. United States*, 527 U.S. 1, 119 (1999); *United States v. Gaudin*, 515 U.S. 506, 509 (1995).  The Eighth Circuit has held that for prosecutions under 26 U.S.C. § 7206(2), the government must establish that the return contained untrue information and that the defendant knew that the information was false.  *See United States v. Holecek*, 739 F.2d 331, 335 (8th Cir. 1984).

25

**6.26.7206-4   False Income Tax Return - Defendant's Knowledge of Falsity**

The fourth element that the government must prove beyond a reasonable doubt is that *(name)* **did not believe the return** *(statement)* *(document)* **was true and correct as to that material matter.**

Whether *(name)* **did not believe the return to be true and correct as to that material matter may be proven by** *(name)***'s conduct and by all of the facts and circumstances surrounding the case.**

**Comment**

Sand et al., supra, 59-23.

The government must establish not only that the return contained untrue information but also that the defendant knew that the information was false. *See United States v. Holecek*, 739 F.2d 331, 335 (8th Cir. 1984).

In *United States v. Stadtmauer*, 629 F.3d 238 (3d Cir. 2010), the Third Circuit approved the following willful blindness instruction addressed to the knowledge requirement:

The element of knowledge on the part of the defendant may be satisfied by inferences drawn from proof that the defendant closed his eyes to what would otherwise have been obvious to the defendant. A finding beyond a reasonable doubt of a conscious purpose by the defendant to avoid knowledge that the tax returns at issue were false or fraudulent as to a material matter would permit an inference that he had such knowledge.

Stated another way, the defendant's knowledge of a fact or circumstance may be inferred from his willful blindness to the existence of that fact and circumstance.

No one can avoid responsibility for a crime by deliberately ignoring what is obvious. Thus, you may find that the defendant knew that the tax returns at issue were false or fraudulent as to a material fact based on evidence that you find exists that proves beyond a reasonable doubt that the defendant was aware of a high probability that the tax returns at issue were false or fraudulent as to a material matter; and two, that defendant consciously and deliberately tried to avoid learning about this fact or circumstance.

26

Reviewing the instruction, the Third Circuit concluded that the jury would understand it as applying both to the defendant's knowledge of the facts and to his knowledge of the law but not to the issue of specific intent and that it was therefore a correct statement of the law.

(Revised 11/2010)

27

**6.26.7206-5   False Income Tax Return - Unanimity as to Falsity**

The indictment charges that *(name)*'s income tax returns were materially false in at least one of several respects, that is *(specify alleged falsities)*.

The government is not required to prove that all of the items alleged are materially false: proof that a single item is materially false is sufficient.  However, each of you must agree with each of the other jurors that the same item is materially false.  Unless you unanimously agree that the government has proved the same item was materially false beyond a reasonable doubt, you must find the defendant not guilty.

**Comment**

This instruction should be given if the government alleges more than one theory of falsity.  In such a case, proof of any one material falsity will support conviction.  *See United States v. Broscoe*, 65 F.3d 576, 588 (7th Cir. 1995); *United States v. Null*, 415 F.2d 1178, 1181 (4th Cir. 1969).  But the jury must unanimously agree as to at least one material falsity in order to convict.  *See United States v. Ryan*, 828 F.2d 1019, 1020 (3d Cir. 1987) (discussing unanimity requirement in conviction for making false statement to federally insured bank under 18 U.S.C. § 1014).