MARINO, TORTORELLA & BOYLE, P.C.

ATTORNEYS AT LAW

KEVIN H. MARINO
JOHN D. TORTORELLA
JOHN A. BOYLE

ROSEANN BASSLER DAL PRA*
EREZ J. DAVY*

PHILLIP S. PAVLICK

437 SOUTHERN BOULEVARD
CHATHAM, NEW JERSEY 07928-1488
TELEPHONE (973) 824-9300
FAX (973) 824-8425
www.khmarino.com

888 SEVENTH AVENUE, 9TH FLOOR
NEW YORK, NEW YORK 10019
TELEPHONE (212) 307-3700
FAX (212) 262-0050
e-mail: kmarino@khmarino.com
*OF COUNSEL

March 28, 2019

**VIA ECF**

Honorable Anne E. Thompson, U.S.D.J.
United States District Court
Clarkson S. Fisher Building
    & United States Courthouse
402 East State Street
Trenton, NJ 08625

> Re:    *United States v. George Gilmore*
>          *Crim. No. 19-029 (AET)*

Dear Judge Thompson:

Defendant, George Gilmore ("Gilmore"), respectfully submits this letter in response to the Government's motion in limine (1) to admit evidence of his history of non-compliance with tax reporting and payment obligations before 2013 and his use of law firm bank and credit card accounts for personal expenditures before 2014; (2) to preclude him from arguing or presenting evidence regarding possible administrative or civil remedies by the IRS instead of criminal prosecution; and (3) to preclude him from arguing or presenting evidence as to the Government's investigation of him for matters not charged in the Superseding Indictment.

As to the Government's first two arguments, Gilmore agrees that evidence of his decades-long interactions with the IRS over his failure to meet his tax obligations is relevant and does not intend to argue or present evidence that the IRS "could have, or should have, resolved this case using administrative or civil remedies, rather than criminal prosecution." (Motion at 7.) But, as explained during Tuesday's telephone conference, he does intend to argue and present evidence that, based on more than twenty years of interacting with the IRS with respect to his tax problems, he acted in the good-faith belief that as long as he paid his back taxes, including payroll taxes, with interest and penalties, the fact that he may have incorrectly reported some of the monies he received from his law firm, or failed to pay over all of his firm's payroll taxes in a timely fashion, would not expose him to criminal liability. Indeed, that is his entire defense. Third, Gilmore does not intend to argue that this is a vindictive prosecution.

All of the tax offenses charged in the Superseding Indictment require the Government to prove that Gilmore acted willfully. As the Third Circuit has explained, "'[w]illfulness' is the voluntary, intentional violation of a known legal duty." *United States v. McGill*, 964 F.2d 222, 237 (3d Cir. 1992). This "willfulness" element, common to all tax offenses, "requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Anne E. Thompson, U.S.D.J.
March 28, 2019—Page 2

that he voluntarily and intentionally violated that duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991); *accord United States v. Miller*, 595 F. App'x 166, 168 (3d Cir. 2014); *United States v. Stadtmauer*, 620 F.3d 238, 247 (3d Cir. 2010); *United States v. McKee*, 506 F.3d 225, 245 (3d Cir. 2007). Critically, a defendant's conduct is not willful if he "acted through negligence, mistake, accident, or due to a good faith misunderstanding of the requirements of the law." Third Circuit Model Criminal Jury Instructions, Instruction No. 6.26.7201-4. In all, "[t]he definition of 'willfully' in tax cases mandates the conclusion that a defendant cannot be found guilty if the jury concludes that the defendant honestly believed the tax laws did not make his or her conduct criminal, even if that belief was unreasonable." *Id.* at Comment (citing *Cheek*, 498 U.S. at 201-02).

In order to carry its burden, the Government must negate "a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws." *Cheek*, 498 U.S. at 202; *see also McGill*, 964 F.2d at 237 (same). Thus, if the Government fails to disprove that a defendant "'had a good faith belief that he was not violating the tax code, regardless of whether that belief was objectively reasonable,'" it has failed to establish that the defendant acted willfully. *United States v. Lynch*, 735 F. App'x 780, 788-89 (3d Cir. 2018) ("The burden remains on the Government to disprove the defendant's good faith."); *see also United States v. Schlosser*, 749 F. App'x 145, 146 (3d Cir. 2019) ("[I]f a jury believes that a defendant had a 'good-faith misunderstanding' about the law he disobeyed—even a misunderstanding that was not 'objectively reasonable'—then the Government has failed to carry its burden as to willfulness.").

Here, evidence of how the IRS treated Gilmore's (a) consistent practice of treating the firm's payment of certain personal expenses as shareholder loans rather than income, and (b) chronic tardiness in filing his personal and corporate tax returns and paying the tax due and owing will demonstrate that he had a good-faith belief that his conduct was not criminal in nature. Specifically, due to its non-compliance with tax payment and reporting requirements, G&M's payroll taxes were assigned to an IRS revenue officer in October 1997 and subject to close scrutiny that continued at least through July 2016. Similarly, Gilmore's personal income taxes were assigned to an IRS revenue officer for supervision from May 2012 through July 2016. Throughout that entire period, Gilmore interacted regularly and extensively with a stream of revenue officers. None of them ever questioned his practice of taking shareholder loans, and all of them worked cooperatively with him to resolve his frequent tax delinquencies and help him achieve future compliance with filing and payment requirements.

The statements, notices, and actions of the revenue officers supervising Gilmore and G&M confirm as much; the IRS agents with whom he dealt never questioned him about his shareholder loans, and consistently led him to believe that if he was delinquent in the payment of his taxes, including G&M's payroll taxes, he could satisfy his obligations to the IRS by paying his back taxes with interest and penalties without exposing himself to criminal prosecution. Gilmore will rely primarily on the Government's own exhibits to demonstrate his good-faith belief in that regard,

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Anne E. Thompson, U.S.D.J.
March 28, 2019—Page 3

including IRS transcripts detailing his interactions with revenue officers (*e.g.*, GX27, GX28, GX 41 and GX42), and the notices and correspondence those revenue officers provided to him (*e.g.*, GX63-A, GX63-B, GX63-C and GX63-D). Presumably, the IRS revenue officer the Government intends to call as a witness will rely on these same exhibits when testifying that, *inter alia*, Gilmore "has been delinquent with respect to accounting for and paying over payroll taxes for his law firm since approximately 1998 and . . . repeatedly was advised by the IRS of the civil and criminal penalties that could result from continued violations." (Motion at 3.) Gilmore must be permitted to argue that those same documents—and other evidence of his long and cooperative relationship with the IRS—prove that he did not know of the duties purportedly imposed by the statutes in question.

The Government relies heavily on the Third Circuit's decision in *United States v. DeMuro*, 677 F.3d 550 (3d Cir. 2012), in its attempt to block Gilmore from prosecuting his defense, but that case does not support its argument. In *DeMuro*, the defendants argued "that the District Court erred by excluding any testimony that the reason the negotiations between the IRS and the DeMuros ceased was that the IRS referred the case for criminal prosecution." 677 F. 3d at 565. According to the DeMuros, excluding such evidence left the jury free to speculate that they chose to stop negotiating with the IRS, and thus undermined their defense to willfulness. *Id.* Rejecting that argument, the Third Circuit held that such minimally probative evidence was properly excluded "because it opened the door to jury nullification, by inviting the jury to reason that the IRS should have continued to pursue the matter civilly rather than criminally." *Id.*

Unlike the DeMuros, Gilmore does not intend to argue or invite the jury to reason that the Government should have pursued this case civilly. And unlike the defendant in *United States v. Buras*, 633 F.2d 1356 (9th Cir. 1980), on which *DeMuro* relied, Gilmore does not intend to argue that he should be acquitted because the Government could have done so. *Id.* at 1360. This is a criminal tax case, in which the Government must prove that Gilmore acted with intent to do something he knew the law forbade, and Gilmore will defend it as such. His entire defense is that by allowing him to treat monies received from his law firm as shareholder loans without objection, and permitting him to amicably resolve his repeated failure to timely pay his taxes, including payroll taxes, for twenty years by simply paying back taxes with interest and penalties, the IRS misled him to believe that his behavior only exposed him to the threat of interest and penalties, not criminal prosecution. Based on that good-faith belief, Gilmore lacked the requisite intent to commit the charged tax offenses. That is his defense to those charges. Evidence of the IRS's long-standing acceptance of Gilmore's manner of accounting for the monies he received from his law firm, and its consistent willingness to resolve his tax deficiencies by accepting payment with interest and penalties, is powerful—indeed, critical—proof of his good faith. He cannot defend this case without it.

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Anne E. Thompson, U.S.D.J.
March 28, 2019—Page 4

Without apparent irony, the Government asks this Court for leave to itself introduce evidence of Gilmore's decades-long interactions with IRS revenue officers regarding his tax deficiencies to prove motive, intent, lack of mistake, etc., while simultaneously trying to prevent him from mounting a defense based on the same evidence. That request draws into sharp relief the inequity of the Government's attempt to prevent Gilmore from arguing that his long-term dealings with the IRS gave rise to his good-faith belief that taking shareholder loans from his law firm and paying his back taxes with interest and penalties was not a crime. The Government and Gilmore draw different conclusions from his long history dealing with the IRS. Each should be permitted to introduce evidence and argument to support those conclusions.

For the foregoing reasons, Gilmore should be permitted to introduce evidence regarding the manner in which IRS representatives interacted with him over a twenty-year period, and to argue that those interactions support his claim of good faith.

Thank you for your consideration of this submission.

Respectfully submitted,

Kevin H. Marino

cc:     Matthew Skahill, AUSA
        Jihee Suh, AUSA
        Thomas Koelbl, Esq.