

U.S. Department of Justice
*United States Attorney*
*District of New Jersey*

| | |
|---|---|
| CAMDEN FEDERAL BUILDING & U.S. COURTHOUSE | 856/757-5026 |
| 401 Market Street, 4th Floor | Fax: 856/968-4917 |
| Post Office Box 2098 | Direct Dial: 856/968-4929 |
| Camden NJ  08101-2098 | |

April 8, 2019

Honorable Anne E. Thompson
Senior United States District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:    <u>United States v. George Gilmore, Cr. 19-029 (AET)</u>

Dear Judge Thompson:

      Please accept this letter brief in support of the Government's motion in limine regarding the anticipated testimony of defendant's "hybrid" lay/expert witness Richard V. Beeferman, CPA (1) to ensure that safeguards are imposed in the taking of such hybrid testimony, or, to exclude some or all of the testimony, if such safeguards are insufficient under Fed. R. Evid. 403 to prevent juror confusion or undue prejudice, and (2) to preclude Beeferman from testifying on the ultimate issues of defendant's mens rea in violation of Fed. R. Evid. 704(b).

> 1. ***The Court Must Either Impose Safeguards on Beeferman's Hybrid Testimony or Exclude Some or all of the Testimony if Such Safeguards are Insufficient to Counter the Risk of Juror Confusion or Undue Prejudice***

      Defendant seeks to have Richard V. Beeferman, CPA, testify as a "hybrid" expert and lay witness, according to his March 8, 2019 letter notifying the Government of his intent to call Beeferman (the "Beeferman Letter") (see attached). The Beeferman Letter identifies a non-exhaustive list of seven topics that Beeferman will address:

    (a)    The accounting systems and procedures used by Gilmore and the entities owned, in whole or part, by him (the "Gilmore Entities"), including Gilmore & Monahan, P.A. ("G&M");

    (b)    The tax code requirements for reporting personal and business income, the tax filing requirements for individuals and entities, and the IRS rules and regulations regarding false reporting of income (collectively, "Tax Rules and Regulations");

    (c)    Beeferman's conclusions, based on his review and analysis of the tax returns and other relevant records of Gilmore and the Gilmore Entities, that (i) Gilmore complied with relevant Tax Reporting Rules and

1

        Regulations during the relevant time period; (ii) any and all shareholder loans from G&M to Gilmore were not income for tax purposes, but rather bona fide loans; (iii) Gilmore and G&M properly accounted for and documented, both in G&M's records and in the appropriate tax returns, Gilmore's use of G&M's bank and credit card accounts for personal expenses; and (iv) Gilmore did not file false tax returns for calendar years 2013 and 2014;

    (d)    The procedures, devices, and methods available to the IRS for the collection of delinquent taxes ("Collection Procedures"), including (i) the manner in which the IRS typically employs those Collection Procedures; (ii) the extent to which the IRS used those Collection Procedures with respect to the taxes alleged in the Superseding Indictment to be delinquent and (iii) Beeferman's conclusion that the IRS could have collected all of Gilmore's allegedly delinquent taxes had it promptly and properly employed the Collection Procedures available to it;[1]

    (e)    The absence of any tax losses for calendar years 2013, 2014 and 2015 resulting from any action or inaction by Gilmore, including the alleged affirmative acts of evasion of tax payments set forth in the Superseding Indictment;

    (f)    The requirements for collecting, accounting for, and paying over payroll taxes, and the absence of any willful failure by Gilmore to comply with, or willfully attempt to avoid, those requirements; and

    (g)    Gilmore's personal expenditures during calendar years 2013, 2014, and 2015 that are not described in the Superseding Indictment.

Beeferman Letter at 1–2. But the Letter does not identify which opinions Beeferman will testify to as a lay witness, as opposed to as an expert witness. Because of that uncertainty, the Government sets forth the legal principles governing this unusual and discouraged form of testimony.

    Courts have cautioned against the practice of permitting certain witnesses to testify as both lay and expert witnesses, *see United States v. Garrett*, 757 F.3d 560, 569 (7th Cir. 2014), but they grudgingly permit it if significant safeguards are taken to shield against the risks of juror confusion, prejudice and related concerns. *See* Fed. R. Evid. 403; *see, e.g., United States v. Jett*, 908 F.3d 252, 267 (7th Cir. 2018). Obviously, avoiding such testimony in the first place is the better (and safer) practice. *Garrett*, 757 F.3d at 569 (*citing United States v. Upton*, 512 F.3d 394, 401 (7th Cir. 2008)).

    There are "inherent dangers" in such dual-role testimony. *Jett*, 908 F.3d at 267. They include the risk that the jury may unduly credit the opinion testimony due to a "perception that the expert was privy to facts about the defendant not presented at trial" or the risk that jurors may "be smitten by an expert's 'aura of special reliability.'" *United States v. Cheek*, 740 F.3d 440, 447 (7th Cir. 2014) (*quoting United States v. York*, 572 F.3d 415, 425 (7th Cir. 2009)); *see also*

---

[1] This Court already granted the Government's in limine motion to preclude testimony about the matters in this category.

2

*Garrett*, 757 F.3d at 569 ("The heightened reliability that jurors often attach to expert testimony could easily lead a juror to believe that the [expert's] fact testimony must be reliable as well, and thereby elevate that testimony to a level of credibility that it would not otherwise enjoy.").

The risk of juror confusion is obvious. *Jett*, 908 F.3d at 267 (citing earlier Seventh Circuit cases); *see United States v. Vera*, 770 F.3d 1232, 1242 (9th Cir. 2014); *see also United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003) (permitting expert witness to provide lay testimony creates a risk of juror confusion and unfair prejudice under Rule 403). Thus, "[d]istrict judges must take precautions to avoid admitting this sort of confusing dual-role testimony." *Jett*, 908 F.3d at 268, as "the Federal Rules of Evidence and the Supreme Court place the responsibility upon the district courts to avoid falling into error by being vigilant gatekeepers of such expert testimony to ensure that it is reliable," *Dukagjini*, 326 F.3d at 56.[2] "A witness who careens from one type of testimony to the other makes that task particularly challenging," *Jett*, 908 F.3d at 269, for both courts and jurors alike.

The Fourth Circuit suggested employing certain safeguards when such mixed testimony is offered:

> Such safeguards might include requiring the witness to testify at different times, in each capacity; giving a cautionary instruction to the jury regarding the basis of the testimony; allowing for cross-examination by [opposing] counsel; establishing a proper foundation for the expertise; or having counsel ground the question in either fact or expertise while asking the question.

*United States v. Garcia*, 752 F.3d 382, 392 (4th Cir. 2014) (vacating narcotics convictions and remanding case based on district court's failure to maintain its gatekeeping responsibilities throughout hybrid witnesses' testimony). The key point is that before such testimony is allowed, the parties and the Court must understand what it entails and how it is intended to be presented to make clear when lay testimony is being offered and when expert testimony is being offered. *Jett*, 908 F.3d at 268. Jurors have to be afforded the opportunity to discern what they should evaluate based on the witness's personal knowledge (lay testimony, *see* Fed. R. Evid. 701) from what they should evaluate based on the witness's qualifications, training and methods (expert testimony, *see* Fed. R. Evid. 702). *Id.* at 269. Moreover, informing the jury about the differences in such testimony, including the proponent's laying clear and proper foundations for it, *id.* at 268, also is critical. *See Vera*, 770 F.3d at 1243. Last, providing clear instructions to the jury about both kinds of testimony also is required. *Jett*, 908 F.3d at 268; *see United States v. Dickens*, 748 F. App'x 31, 43 (6th Cir. 2018) (unpublished) (failure to provide a cautionary instruction would be a clear and obvious error); *United States v. Baptiste*, 596 F.3d 214, 225 (4th Cir. 2010) (where proponent's questioning and subsequent cross-examination failed to define line between expert and lay testimony of hybrid witness, court should have provided more guidance to jury to prevent juror confusion). The Court need not use the phrases "expert" or "lay" testimony to get its point across to the jury. "What is important is ensuring that the jury

---

[2] An appellate court also would review admission of the two types of testimony somewhat differently—decisions to admit lay-opinion under Rule 701 are based on an abuse of discretion standard. For expert testimony, appellate courts review *de novo* whether the trial court applied Rule 702's framework properly, *see United States v. Parkhurst*, 865 F.3d 509, 514 (7th Cir.), *cert. denied*, 138 S. Ct. 525 (2017), and review for abuse of discretion decisions to admit or exclude the expert testimony, *id.*; *see United States v. Bennett*, 161 F.3d 171, 182 (3d Cir. 1998). That reinforces the need to ensure that the record of this testimony is clear.

3

understands that the testimony is different, and should be evaluated differently, from the [witness's] other testimony." *Jett*, 908 F.3d at 270.

Defining and enforcing these rules of engagement for Beeferman's hybrid expert/fact testimony is essential. The Beeferman Letter contains only a cursory reference to what Beeferman will rely on. In fact, the Beeferman Letter only refers to documents and not to anything else. And, the Beeferman Letter does not appear to identify what his lay testimony will be. This Court should address these issues prior to Beeferman's testifying to determine whether the above safeguards will sufficiently protect against the concerns raised above.

If this Court deems these safeguards inadequate, then it may exclude some or all of Beeferman's testimony under Rule 403. Under Rule 403, courts may exclude otherwise relevant evidence when "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Advisory Committee Note to Rule 403 states that "'[u]nfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, 1972 Ad. Comm. Notes. "When the probative value of evidence is tenuous, a relatively minor risk of substantial undue prejudice should counsel against admitting it." *United States v. Bailey*, 840 F.3d 99, 119 (3d Cir. 2016).

### 2. *The Court Should Preclude Beeferman from Testifying About Ultimate Issues Regarding Defendant's Mens Rea*

In addition to these concerns over hybrid testimony, Federal Rule of Evidence 704(b) prohibits Beeferman from testifying about certain ultimate issues in the case.

Rule 704(b) provides: "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or a defense. *Those matters are for the trier of fact alone*." (Emphasis added). *See United States v. Watson*, 260 F.3d 301, 310 (3d Cir. 2001) ("The defendant's intent is an ultimate issue of fact that the jury alone must decide."). "Rule 704 prohibits 'testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea.'" *United States v. Bennett*, 161 F.3d 171, 182-83 (3d Cir. 1998) (quoting *United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997)); *see also United States v. Breslin*, Crim. No. 96-202, 1997 WL 431011, at * 2-4 (E.D. Pa. July 15, 1997) (where defendant was charged with fraud in connection with an advanced fee scheme and defendant proffered expert testimony that defendant's conduct was distinguishable from conduct common to advanced fee schemes, district court excluded evidence under Rule 704(b) because it effectively opined on the ultimate issue of defendant's mens rea). Expert testimony may be admissible to support an inference or conclusion that the defendant did or did not have the mens rea at issue for that offense, "'so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.'" *Bennett*, 161 F.3d at 183 (*quoting Morales*, 108 F.3d at 1037). Rule 704(b) is violated when the examiner's question is "plainly designed to elicit the expert's testimony about the mental state of the defendant," or when the expert directly refers to defendant's "intent, mental state or mens rea." *Watson*, 260 F.3d at 309.

So, as the Third Circuit concluded in *Bennett*, it was entirely appropriate there for the district court to have excluded such ultimate-issue questions, like whether defendant's condition

4

(1) precluded him from forming the intent to defraud, or made it highly unlikely that he could form such intent; (2) made it unlikely that he could have engaged in such conduct designed to defraud; (3) precluded him from forming the intent to defraud individuals; (4) made it unlikely that he could defraud individuals and entities; (5) affected his ability to knowingly and willfully submit false statements to the IRS; and (6) made it unlikely that the defendant would knowingly and willfully submit false statements to the IRS. 161 F.3d at 183. As the *Bennett* Court recognized, such questioning was barred by Rule 704(b) because it required "the expert witness to state expressly whether [the defendant] possessed the requisite intent to commit the crimes charged in the indictment." *Id.*

It appears that at least a portion of Beeferman's testimony will focus on such ultimate issues regarding the questions of defendant's willfulness (which is an element of the first five counts of the Superseding Indictment, including the willful failure to truthfully account for and pay payroll taxes set forth in Counts 4 and 5). To take one example, the Beeferman Letter provides at category (f) on page 2 that Beeferman may provide testimony and evidence about "[t]he requirements for collecting, accounting for, and paying over payroll taxes, *and the absence of any willful failure by Gilmore to comply with, or willfully attempt to avoid, those requirements. . . .*" (Emphasis added). Any effort to testify about the ultimate issue of defendant's willfulness with respect to Counts 4 and 5, is foreclosed by Rule 704(b) and *Bennett*. Moreover, for the reasons briefed in connection with Dr. Simring, Mr. Beeferman should not be allowed to introduce ultimate issue testimony through hearsay statements of explanations Gilmore may have provided to him. And even though Rule 704(b) is addressed only to *expert* testimony on the ultimate issue of mens rea, the Third Circuit has found lay opinion testimony, offered under Rule 701, unhelpful as a matter of law where the witness, relying on the evidence already before the jury, simply acts as a "thirteenth juror" by opining that the defendant "must have" acted with the requisite mental state. *See United States v. Anderskow*, 88 F.3d 245, 250 (3d Cir. 1996). The converse holds true as well: Beeferman should not be permitted to usurp the role of the jury by opining as a lay witness that, based on all the evidence in the record, Gilmore lacked the mens rea required to convict.

## CONCLUSION

For the reasons stated above, the Court should (1) employ safeguards in taking Beeferman's hybrid expert/lay testimony, or exclude some or all of the testimony if such safeguards are insufficient under Rule 403 to prevent juror confusion or undue prejudice, and (2) preclude Beeferman from testifying on the ultimate issues of defendant's mens rea pursuant to Fed. R. Evid. 704(b).

Respectfully submitted,

RACHAEL A. HONIG
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

By: */s/ Matthew J. Skahill*
*/s/ Jihee G. Suh*
MATTHEW J. SKAHILL
JIHEE G. SUH
Assistant United States Attorneys

*/s/ Thomas F. Koelbl*
THOMAS F. KOELBL
Trial Attorney
U.S. Department of Justice – Tax Division

cc: Kevin H. Marino, Esq.

## MARINO, TORTORELLA & BOYLE, P.C.
### ATTORNEYS AT LAW

KEVIN H. MARINO
JOHN D. TORTORELLA
JOHN A. BOYLE
―――
ROSEANN BASSLER DAL PRA*
EREZ J. DAVY*
―――
PHILLIP S. PAVLICK

437 SOUTHERN BOULEVARD
CHATHAM, NEW JERSEY 07928-1488
TELEPHONE (973) 824-9300
FAX (973) 824-8425
www.khmarino.com

888 SEVENTH AVENUE, 9TH FLOOR
NEW YORK, NEW YORK 10019
TELEPHONE (212) 307-3700
FAX (212) 262-0050
e-mail: kmarino@khmarino.com
*OF COUNSEL

March 8, 2019

**VIA EMAIL AND FEDERAL EXPRESS**

Matthew J. Skahill
Attorney in Charge, Camden Branch
U.S. Attorney's Office
District of New Jersey
401 Market Street, 4th Floor
Camden, New Jersey 08101-2098

Jihee G. Suh
Assistant United States Attorney
U.S. Attorney's Office
District of New Jersey
970 Broad Street
Newark, New Jersey 07102

Re: *United States v. George Gilmore*
Crim. No. 19-029 (AET)

Dear Matt and Jihee:

Defendant, George Gilmore ("Gilmore"), hereby provides notice of his intention to call Richard V. Beeferman, CPA ("Beeferman"), of the accounting firm Beeferman Huber LLC, as a hybrid lay/expert witness at trial. A copy of Beeferman's curriculum vitae is attached as Exhibit A.

### TOPICS

The topics on which Beeferman may provide testimony and evidence include:

(a) The accounting systems and procedures used by Gilmore and the entities owned, in whole or part, by him (the "Gilmore Entities"), including Gilmore & Monahan, P.A. ("G&M");

(b) The tax code requirements for reporting personal and business income, the tax filing requirements for individuals and entities, and the IRS rules and regulations regarding false reporting of income (collectively, "Tax Rules and Regulations");

(c) Beeferman's conclusions, based on his review and analysis of the tax returns and other relevant records of Gilmore and the Gilmore Entities, that (i) Gilmore complied with relevant Tax Reporting Rules and Regulations during the relevant time period; (ii) any and all shareholder loans from G&M to Gilmore were not income for tax purposes, but rather bona fide loans; (iii) Gilmore and G&M properly accounted for and documented, both in G&M's records and in the appropriate tax returns, Gilmore's use of G&M's bank and credit card accounts for personal expenses; and (iv) Gilmore did not file false tax returns for calendar years 2013 and 2014;

(d) The procedures, devices, and methods available to the IRS for the collection of delinquent taxes ("Collection Procedures"), including (i) the manner in which the IRS typically employs those Collection Procedures; (ii) the extent to which the IRS used those Collection Procedures with respect to the taxes alleged in the Superseding Indictment to be delinquent;

**MARINO, TORTORELLA & BOYLE, P.C.**
ATTORNEYS AT LAW

Matthew J. Skahill, AUSA
Jihee G. Suh, AUSA
March 8, 2019—Page 2

and (iii) Beeferman's conclusion that the IRS could have collected all of Gilmore's allegedly delinquent taxes had it promptly and properly employed the Collection Procedures available to it;

(e) The absence of any tax losses for calendar years 2013, 2014 and 2015 resulting from any action or inaction by Gilmore, including the alleged affirmative acts of evasion of tax payments set forth in the Superseding Indictment;

(f) The requirements for collecting, accounting for, and paying over payroll taxes, and the absence of any willful failure by Gilmore to comply with, or willfully attempt to avoid, those requirements;

(g) Gilmore's personal expenditures during calendar years 2013, 2014, and 2015 that are not described in the Superseding Indictment.

Gilmore reserves the right to modify or add to the topics on which Beeferman may testify at trial.

**DOCUMENTS**

The documents of George & Joanne Gilmore and all Gilmore entities on which Beeferman will rely include:

Tax returns, including but not limited to individual, corporate, partnership and payroll;

Books and records, including but not limited to general ledgers, accounting software and other books of original entry;

Invoices and Bills;

Bank records, including but not limited to bank statements, cancelled checks, deposit slips;

Retirement account statements;

Loan application documents;

Loan documents;

Mortgages;

Correspondence and communications, including but not limited to emails and letters;

Discovery provided by the Government;

Internal Revenue Code;

Documents on IRS.GOV;

Tax research and cases (i.e., BNA, Ria Checkpoint);

Documents produced by defendant to the Government;

**MARINO, TORTORELLA & BOYLE, P.C.**
ATTORNEYS AT LAW

Matthew J. Skahill, AUSA
Jihee G. Suh, AUSA
March 8, 2019—Page 3

    Prior CPA firm work papers journal entries and other correspondence;

    Credit Card Statements;

    Bills and expenses of the defendant;

    Appraisals;

    Assets; and

    Liabilities.

    To the extent any of these documents are not already in the Government's possession, they will be produced by March 14, 2019. If you have any questions, please call me. Thank you.

                              Very truly yours,

                              Kevin H. Marino

cc:    Richard V. Beeferman, CPA
       John D. Tortorella, Esq.
       John A. Boyle, Esq.